**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **PENNSYLVANIA HIGHER EDUCATION** | : | |
| **ASSISTANCE AGENCY,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **NO.** 18-cv-1114 |
| | : | |
| **v.** | : | |
| | : | |
| **JORGE L. PEREZ, in his official capacity as** | : | |
| **Commissioner of the Connecticut Department of** | : | |
| **Banking,** | : | |
| | : | |
| **the CONNECTICUT DEPARTMENT OF** | : | |
| **BANKING,** | : | |
| | : | |
| **BETSY DEVOS, in her official capacity as** | : | |
| **Secretary of the United States Department of** | : | |
| **Education,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **the UNITED STATES DEPARTMENT OF** | : | |
| **EDUCATION,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Pennsylvania Higher Education Assistance Agency ("PHEAA"), by and through

its undersigned attorneys, brings this complaint against Defendants the Connecticut Department

of Banking (the "Connecticut DOB"), the United States Department of Education ("ED"), and

their agency heads.  Simply stated, the Connecticut DOB demands that PHEAA, a student loan

servicer, produce confidential documents and data pertaining to federal student loan borrowers—

information which belongs to the federal government and to which PHEAA has access only due

to its status as a federal contractor.  The Connecticut DOB contends that PHEAA's failure to

produce these documents will violate state law.  ED, however, contends that if PHEAA *does*

produce the documents to the Connecticut DOB, it will be in violation of both federal law and its Servicing Contract with ED, and on that basis has directed PHEAA not to comply with the Connecticut DOB's demand.  Thus, PHEAA finds itself caught squarely in the middle of conflicting demands by the Connecticut DOB and ED concerning conflicting state and federal law.  For a declaration of the rights and other legal relations of the parties, and all additional necessary and proper relief, including permanent injunctive relief, PHEAA brings this action against (1) Jorge L. Perez (the "Commissioner"), in his official capacity as Commissioner of the Connecticut DOB, (2) the Connecticut DOB (together with Commissioner Perez, the "State Defendants"), (3) Betsy DeVos (the "Secretary"), in her official capacity as Secretary of ED, and (4) ED (together with Secretary DeVos, the "Federal Defendants").  In support thereof, PHEAA alleges as follows:

## NATURE OF ACTION

1.      This action is intended to preserve and secure PHEAA's ability to service federal student loans in the State of Connecticut pursuant to applicable law and PHEAA's contractual obligations to ED.

2.      PHEAA, as a student loan servicer that contracts with ED to service federal student loans under the William D. Ford Federal Direct Loan Program, 20 U.S.C. § 1087a *et seq.* ("Direct Loans," or the "Direct Loan Program"), has access to—but does not own or control—voluminous records containing personal identifying information of individual federal student loan borrowers.

3.      The Connecticut DOB, citing provisions of Connecticut law purportedly requiring production of books and records by holders of licenses to service student loans upon request, has demanded that PHEAA, as a licensee, produce records containing the personal identifying information of federal student loan borrowers.  These records belong to ED, which has expressly

prohibited PHEAA from disclosing such records to the Connecticut DOB.  PHEAA has

complied with ED's directive.  ED has further directed that any requests for its records must be

addressed to ED itself.  ED has refused to produce the documents to the Connecticut DOB

directly.

4.      The live controversy presented by this dispute is whether PHEAA must comply

with an existing demand from the Connecticut DOB to disclose the federal student loan borrower

documents at issue, or an existing demand from ED prohibiting the disclosure of those

documents.  The true parties in interest are the Connecticut DOB and ED, whose contrary

interpretations of applicable law have left PHEAA caught "between the Scylla of intentionally

flouting state law and the Charybdis" of disregarding an express directive by ED based on

federal law.  *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).  PHEAA therefore requests that this

Court declare whether the relevant Connecticut statutes are preempted by federal law.

5.      Further, PHEAA asks that this Court enter permanent injunctive relief against the

State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure

compliance with the Court's declaration as to the applicability of state and federal law.

## PARTIES

6.      Plaintiff PHEAA is a statutorily created instrumentality of the Commonwealth of

Pennsylvania with headquarters located at 1200 North 7th Street, Harrisburg, Pennsylvania

17102.  PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body

corporate and politic constituting a public corporation and government instrumentality."  24 Pa.

Stat. § 5101.  PHEAA conducts a variety of operations in the student loan industry, including,

but not limited to, acting as:  (1) a servicer of private student loans; (2) a servicer and/or

guarantor of federal student loans issued by private lenders under the Federal Family Education

Loan Program; and (3) a servicer of federal student loans issued by ED under the Direct Loan Program.

7.      Defendant Jorge L. Perez is the Commissioner of the Connecticut Department of Banking.

8.      Defendant the Connecticut Department of Banking is an agency of the State of Connecticut with headquarters located at 260 Constitution Plaza, Hartford, Connecticut 06103.

9.      Defendant Betsy DeVos is the Secretary of the United States Department of Education.

10.      Defendant the United States Department of Education is an agency of the United States government with headquarters located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 2201 in that the Complaint asserts claims arising under the Constitution and laws of the United States, and seeks a declaration of rights and other legal relations under the Constitution and laws of the United States.

12.      The United States has consented to suit for non-monetary relief against a federal agency or officer thereof based on "a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  5 U.S.C. § 702. *See also Bowen v. Massachusetts*, 487 U.S. 879, 891–93 (1988); *Sharkey v. Quarantillo*, 541 F.3d 75, 91 (2d Cir. 2008).  Further, "[i]n the performance of, and with respect to, the functions, powers, and duties, vested in [her] by [20 U.S.C. Part B], the Secretary [of ED] may . . . sue and be sued . . . in any district court of the United States . . . ."  20 U.S.C. § 1082(a)(2).

4

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the State Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

*ED's Administration of Federal Student Loans*

14.     Under the Higher Education Act ("HEA"), Pub. L. No. 89-329, 79 Stat. 1219 (1965), and related statutes and regulations, ED has the authority to issue a variety of federal loans and grants to student borrowers.  Specifically relevant here are Direct Loans, which are provided by the federal government directly to eligible student borrowers, and benefits awarded to Direct Loan borrowers under the Public Service Loan Forgiveness ("PSLF") Program, 20 U.S.C. § 1070 *et seq.*

15.     ED, rather than self-service the Direct Loans it issues, contracts with third-party servicers such as PHEAA to perform that function.  20 U.S.C. § 1087f(a).

16.     Every aspect of the servicing of such loans is highly regulated by ED, including administration of loan repayment generally (34 C.F.R. § 685.208), income-based or income-contingent repayment plans (*id.* § 685.209), deferments and forbearances (*id.* §§ 685.204–205), and borrower benefits such as the PSLF Program (*id.* § 685.219).

17.     In 2009, PHEAA was selected through a competitive process by ED to service federal loans on a national basis.  ED's servicing contract (the "Contract," attached as Exhibit A), which was renewed in 2014, governs PHEAA's servicing of loans owned by ED.

18.     In addition to requiring that PHEAA "meet all statutory and legislative requirements," Ex. A, Att. A-1, at 3, the Contract specifies 124 enumerated obligations for the servicer, many with dozens of sub-requirements, *id.* at 3–18.  ED monitors PHEAA's performance under the Contract through annual audits, program compliance reviews, and

quarterly monitoring reviews of PHEAA's loan servicing practices; PHEAA, in turn, is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed." *Id.* at 7.  PHEAA is not paid for loans "not being serviced in compliance with the Requirements, Policy and Procedures for servicing federally held debt due to the fault of the servicer . . . ." *Id.*, B.13.L.

19.     The Contract also requires PHEAA to comply with strict records management requirements, which require PHEAA to, *inter alia*, "comply with Federal and [ED] records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974." *Id.*, at Att. A-2, at 11–12.

20.     The Privacy Act of 1974 provides, among other things, that federal contractors who operate a federal system of records, such as PHEAA, are considered employees of a federal agency for purposes of applicability of the Privacy Act's criminal penalties for prohibited disclosure of protected records.  *See* 5 U.S.C. § 552a(i), (m).

21.     Despite these significant contractual responsibilities to ED, PHEAA remains a third-party loan servicer of ED and is not itself a party to the underlying loan contracts between ED and its borrowers.

*The Connecticut DOB Demands Production of Federal Student Loan Records from PHEAA*

22.     PHEAA currently services federal and private student loans for approximately 100,000 borrowers residing in the State of Connecticut.  Of this total amount, approximately 80,000 borrowers have federal student loans owned by ED.

23.     On May 1, 2017, PHEAA applied for a license from the Connecticut DOB to act as a student loan servicer in Connecticut, pursuant to Conn. Gen. Stat. § 36a-847(b).  PHEAA's application was approved on June 30, 2017.

24.     To maintain its license with Connecticut, PHEAA must "comply with all applicable federal laws and regulations relating to student loan servicing . . . and the regulations promulgated thereunder."  Conn. Gen. Stat. § 36a-853.  A servicer's "violation of any such federal law or regulation shall be deemed a violation of this section and a basis upon which the [C]ommissioner may take enforcement action pursuant to section 36a-852."  *Id.*

25.     On November 3, 2017, PHEAA received, via email, a letter from the Connecticut DOB informing PHEAA that it proposed to conduct a limited scope examination of PHEAA in order to "review[] all accounts transferred to [PHEAA] for the months of August, September and October, 2017 as a result of the [PSLF] [P]rogram."

26.     The Connecticut DOB's November 3, 2017 letter included a "Student Loan Servicer Management Questionnaire and Information Request" (the "Request") directed to PHEAA.

27.     The Request sought, *inter alia*, PHEAA's policies and procedures related to administering the PSLF Program, and also borrower-specific information, including certain borrower complaints.

28.     PHEAA responded to the Request, via email, on November 7, 2017, seeking clarification as to the scope of both the proposed examination and the Request.

29.     That same day, by email, the Connecticut DOB responded to PHEAA by limiting the scope of the Request in several ways—for example, the Connecticut DOB limited its request for borrower complaints to "a list of CT [complaints] either filed directly with you, through the US Dept of Education, CFPB or any other entity starting 1/1/17 through October 31, 2017 regarding PSLF transfers."

30.     Also on November 7, 2017, PHEAA received via email an express directive from ED's Office of Federal Student Aid ("FSA") advising that PHEAA was prohibited under federal law from releasing any data or documentation related to PSLF to the Connecticut DOB.

31.     On November 9, 2017, PHEAA sought additional clarification from the Connecticut DOB by email.  PHEAA also requested information from the Connecticut DOB regarding the logistics of producing the documents and information requested.

32.     Also that same day, PHEAA communicated ED's November 7 position to the Connecticut DOB, and provided contact information for FSA officials to whom the Connecticut DOB could direct any further request for production of federal documents.

33.     On January 11, 2018, PHEAA was advised by the Associate Examiner at the Connecticut DOB that a telephone conference between FSA and the Connecticut DOB occurred that morning, during which the Connecticut DOB agreed to issue a direct request to FSA for documents and data owned by FSA and encompassed in the Request.

34.     Also on January 11, 2018, the Connecticut DOB informed PHEAA that it would issue a direct request to FSA for the FSA-owned records that the Connecticut DOB had previously sought from PHEAA.

35.     In a letter to the Connecticut DOB that same day, PHEAA memorialized the aforementioned conversation and stated that PHEAA would "not be providing any responsive documents [or] data that are specific to FSA."  Accompanying that letter, PHEAA fully produced to the Connecticut DOB certain responses to the Request not implicating the federal prohibition on disclosure of ED's documents, along with all non-FSA-owned responsive documents and data.

36.     Upon information and belief, on January 12, 2018, the Connecticut DOB requested from FSA access to certain records pertaining to federal student loans that PHEAA services for FSA.

37.     PHEAA received no response from the Connecticut DOB to its January 11, 2018 letter or its accompanying production of information and documents until more than two months later, on March 21, 2018.

38.     On March 21, 2018, PHEAA received a letter from the Connecticut DOB "formally convey[ing] [their] concerns related to [the proposed] examination [of PHEAA] and [to] provide PHEAA with an opportunity to show compliance with all lawful requirements for the retention of its student loan servicer license in Connecticut pursuant to Section 4-182(c) of the Connecticut General Statutes."

39.     The March 21 letter represented the first time the Connecticut DOB asserted that PHEAA had failed to produce "numerous" records sought in the Request in violation of several provisions of Connecticut law (collectively, the "Connecticut Disclosure Statutes"), including:

(a)     Conn. Gen. Stat. § 36a-17, which provides, in pertinent part:

(c) For the purpose of any . . . examination . . . under this title the commissioner may . . . require the production of any records which the commissioner deems relevant or material. . . .

(d) Any person who is the subject of any such . . . examination . . . shall make its records available to the commissioner in readable form; provide personnel and equipment necessary, including, but not limited to, assistance in the analysis of computer-generated records; provide copies or computer printouts of records when so requested; . . . furnish unrestricted access to all areas of its principal place of business or wherever records may be located; and otherwise cooperate with the commissioner.

(b)     Conn. Gen. Stat. § 36a-849, which provides, in pertinent part:

(a) Each student loan servicer licensee shall maintain adequate records of each student education loan transaction for not less than two years following the final payment on such student education loan or the assignment of such student

education loan, whichever occurs first, or such longer period as may be required by any other provision of law.

(b) If requested by the commissioner, each student loan servicer licensee shall make such records available or send such records to the commissioner by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt, not later than five business days after requested by the commissioner to do so.  Upon request, the commissioner may grant a licensee additional time to make such records available or send the records to the commissioner.

(c)      Conn. Gen. Stat. § 36a-851, which provides, in pertinent part:

(a) In addition to any authority provided under this title, the Banking Commissioner shall have the authority to conduct investigations and examinations as follows:

(1) For purposes of . . . general or specific inquiry or investigation to determine compliance with sections 36a-846 to 36a-854, inclusive, the commissioner may access, receive and use any books, accounts, records, files, documents, information or evidence including, but not limited to, . . . (C) any other documents, information or evidence the commissioner deems relevant to the inquiry or investigation regardless of the location, possession, control or custody of such documents, information or evidence.

40.      The March 21 letter stated that PHEAA's failure to produce the requested records

**"constitute[s] grounds to revoke PHEAA's student loan servicer license in Connecticut**

pursuant to Sections 36a-852 and 36a-51 of the Connecticut General Statutes and forms a basis

to take other administrative action as the Commissioner deems appropriate, including, but not

limited to, initiation of proceedings to order PHEAA to cease and desist and impose a civil

penalty on PHEAA of up to $100,000 per violation."  (emphasis added).

41.      The letter concluded by stating that "[p]ursuant to Sections 4-182(c) and 36a-52

[of the Connecticut General Statutes], you are being given an opportunity to show compliance

with all lawful requirements for the retention of your student loan servicer license.  You must

respond . . . in writing no later than **April 4, 2018**.  If no written response is received by that date

or if the [State Defendants] find[] any such response to be insufficient, the [State Defendants] may issue an administrative action against your license."

42.     On March 26, 2018, ED's Office of the General Counsel denied the Connecticut DOB's January 12, 2018 request for access to certain FSA records pertaining to student loan borrowers serviced by PHEAA.  ED's letter permitted the Connecticut DOB to submit a new request to FSA if that request specified alternate grounds to justify its request.

43.     On April 2, 2018, Linda J. Randby, Esq., PHEAA's Interim Senior Vice President of Legal and Compliance Services, received a letter from FSA.  The State Defendants were copied on the letter.

44.     The April 2 FSA letter referenced the Connecticut DOB's March 21 letter to PHEAA requesting records, and stated that the records requested by the Connecticut DOB **"belong to the federal government and PHEAA is prohibited from releasing them under its contract with [ED]."** (emphasis added).  The April 2 FSA letter further stated that "[a] state agency does not have the authority to prohibit PHEAA from servicing federal student loans when the federal government has specifically authorized it to do so."

45.     The April 2 FSA letter concluded by stating that ED "would be willing to discuss with the [Connecticut DOB] the requirements of PHEAA's contract, so that the [Connecticut DOB] may avoid imposing requirements on PHEAA that conflict with federal law."

46.     On April 2, 2018, representatives from PHEAA participated in a telephone conference with representatives from the Connecticut DOB.  During the call, the Connecticut DOB informed PHEAA that it would not rescind its demand that PHEAA provide an explanation for its alleged non-compliance with the Connecticut Disclosure Statutes.

47.     On June 28, 2018, the Connecticut DOB agreed, while the instant litigation is pending and in the absence of a material change in applicable law or facts, to refrain from pursuing a suspension of PHEAA's license to service student loans in Connecticut based on the alleged violations detailed in its March 21 letter or substantively similar alleged violations based on substantively similar past or future conduct.

*ED Memorandum on Records and Data*

48.     ED, through Patrick A. Bradfield, the Director of Federal Student Aid Acquisitions, released a public memorandum on December 27, 2017, regarding ownership of and access to ED records and data (the "ED Memorandum").

49.     In the ED Memorandum, ED explains that FSA "maintains individually identifying information regarding the application for, distribution of, and repayment and collection of federal student loans and grants authorized pursuant to Title IV of [the HEA]."  The ED Memorandum observes that this information is protected by the Privacy Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a, which provides for criminal and civil penalties for the prohibited disclosure of protected records by agency employees.

50.     As noted above, the Privacy Act also provides that federal contractors who operate a federal system of records, such as PHEAA, are considered employees of a federal agency for purposes of applicability of the Privacy Act's criminal penalties for prohibited disclosure of protected records.  *See* 5 U.S.C. § 552a(i), (m).

51.     The ED Memorandum further states that "[a]ll records maintained in any Department systems of records to which the Department provides its contractors access remain at all times records of the Department, not records of a contractor."  The ED Memorandum also states that "[a]ny request from any third party for Department records to which a contractor has

access must be made directly to the Department, where it will be evaluated for compliance with the requirements of the Privacy Act . . . ."

52.     During the first week of January 2018, PHEAA shared the ED Memorandum with the Connecticut DOB.

*ED Notice Regarding Federal Preemption and State Regulation of Student Loan Servicers*

53.     ED later published a notice entitled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers" (the "Preemption Notice").  *See* 83 Fed. Reg. 10619 (dated Mar. 12, 2018).

54.     In the Preemption Notice, ED explains that certain state requirements imposed on student loan servicers, including state regulations requiring licensure of servicers performing work for ED, conflict with ED's power to select contractors and to determine whether contractors are in compliance with federal law.  *Id.* at 10620 ("A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.") (quoting *Sperry v. Florida*, 373 U.S. 379, 385 (1963) (quoting *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 190 (1956))).

55.     ED further explains in the Preemption Notice that such requirements undermine the "clear command for uniformity" in the HEA with respect to the Direct Loan Program, and that where "the Federal interest requires a uniform rule, the entire body of State law applicable to the area conflicts and is replaced by Federal rules." 83 Fed. Reg. at 10621 (citing *Boyle v. United Tech. Corp.*, 487 U.S. 500, 508 (1988)).

13

56.     The Preemption Notice thus concludes that federal law preempts state regulation of loan servicers that conflict with federal statutes, federal regulations, federal contracts, and congressional objectives.  *Id.* at 10621.

## CLAIMS FOR RELIEF

### COUNT ONE
### DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 *et seq.*
### (FIELD PREEMPTION)
**(All Defendants)**

57.     Paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

58.     The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

59.     Declaratory relief is appropriate "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971).

60.     An actual and justiciable controversy presently exists concerning whether the Connecticut Disclosure Statutes are preempted by federal law under a theory of field preemption.

61.     The Supremacy Clause of the U.S. Constitution states that "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.

62.     Field preemption occurs where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority."

*Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991) (internal quotation marks omitted) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

63.     "[S]tate laws can be pre-empted by federal regulations as well as by federal statutes." *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (citation omitted).  "Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986).

64.     In its Preemption Notice, ED opined that the federal interest in the Direct Loan Program is so dominant as to "preclude State regulation, either of borrowers or servicers."  83 Fed. Reg. at 10621.  The federal interest includes Congress's goals of uniformity and ease of administration for the Direct Loan Program, and ED's interest in regulating "liability of contractors performing their obligations under contracts with the Federal government . . . ."  *Id.*

65.     A declaration as to the legality and enforceability of the Connecticut Disclosure Statutes is needed to clarify and settle PHEAA's obligation to produce the records at issue, and will afford relief to PHEAA from the uncertainty, insecurity, and controversy caused by the conflicting state and federal governmental directives giving rise to this proceeding.

66.     Therefore, PHEAA is entitled to a judicial determination pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 as to whether (1) federal law preempts the Connecticut Disclosure Statutes under a theory of field preemption; (2) the State Defendants have the power and authority to enforce the Connecticut Disclosure Statutes and to revoke PHEAA's license to service student loans because of its inability to produce the documents sought by the State Defendants; and (3) the Federal Defendants have the power and authority to direct PHEAA not

to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes.

67.    PHEAA is further entitled to permanent injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law.

**COUNT TWO**
**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 *et seq.***
**(CONFLICT PREEMPTION)**
**(All Defendants)**

68.    Paragraphs 1 through 67 are incorporated by reference as if fully set forth herein.

69.    An actual and justiciable controversy presently exists concerning whether the Connecticut Disclosure Statutes are preempted by federal law under a theory of conflict preemption.

70.    Conflict preemption occurs when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("'[T]he purpose of Congress is the ultimate touch-stone' in every pre-emption case.") (quoting *Cipollone v. Liggett Group*, 505 U.S. 504, 516 (1992)).  An obstacle occurs when a state law would directly conflict with federal law or would "undermine [its] goals and policies." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 477–78 (1989).

71.    In determining whether a conflict exists, the Court must give weight to an agency's determination of Congressional objectives.  *See Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996) ("Because Congress has delegated to the Secretary its authority to implement the provisions of the HEA, the Secretary is uniquely qualified to

determine whether a particular form of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, . . . and therefore, whether it should be preempted.") (alteration in original) (internal quotation marks omitted) (quoting *Medtronic*, 518 U.S. at 496).

72.     In its Preemption Notice, ED provided a non-exhaustive list of examples of state laws and regulations covering the Direct Loan Program that conflict with the HEA.  That list included state laws requiring licensees, among other things, to submit to investigations and audits by state authorities, as well as state laws that undermine Congress's goal of saving taxpayer dollars in administering the Direct Loan Program, such as through disclosure and annual reporting requirements.  83 Fed. Reg. at 10620–21.

73.     Here, the Connecticut Disclosure Statutes purport to require servicers to make records available to the State Defendants, in some circumstances within five business days after the Commissioner's official request.  Federal law, as explained in the ED Memorandum, prohibits PHEAA from providing student loan records directly to the State Defendants.

74.     In other words, it is impossible for PHEAA to comply with both federal and state law.  *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (explaining that under conflict preemption, "a federal statute implicitly overrides state law . . . when state law is in actual conflict with federal law" when it is "impossible for a private party to comply with both state and federal requirements") (quoting *English Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)).

75.     A declaration as to the legality and enforceability of the Connecticut Disclosure Statutes is needed to clarify and settle PHEAA's obligation to produce the records at issue, and will afford relief to PHEAA from the uncertainty, insecurity, and controversy caused by the conflicting state and federal governmental directives giving rise to this proceeding.

76.     Therefore, PHEAA is entitled to a judicial determination pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 as to whether (1) federal law preempts the Connecticut Disclosure Statutes under a theory of conflict preemption; (2) the State Defendants have the power and authority to enforce the Connecticut Disclosure Statutes and to revoke PHEAA's license to service student loans because of its inability to produce the documents sought by the State Defendants; and (3) the Federal Defendants have the power and authority to direct PHEAA not to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes.

77.     PHEAA is further entitled to permanent injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law.

## COUNT THREE
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 *et seq.*
## (EXPRESS PREEMPTION)
### (All Defendants)

78.     Paragraphs 1 through 77 are incorporated by reference as if fully set forth herein.

79.     An actual and justiciable controversy presently exists concerning whether the Connecticut Disclosure Statutes are preempted by federal law under a theory of express preemption.

80.     Express preemption occurs where Congress indicates its intent to displace state law through express language in a provision. *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010).

81.     The HEA includes an express preemption provision in 20 U.S.C. § 1098g, which states that "[l]oans made, insured, or guaranteed pursuant to a program authorized by [T]itle IV of the [HEA] shall not be subject to any disclosure requirements of any State law."

18

82.     Direct Loans fall within Title IV of the HEA and thus are subject to the express preemption provision in 20 U.S.C. § 1098g.  *See Chae*, 593 F.3d at 942.

83.     The Connecticut Disclosure Statutes purport to subject loans made under Title IV of the HEA to disclosure requirements under state law.  As a result, 20 U.S.C. § 1098g of the HEA expressly preempts the Connecticut Disclosure Statutes.

84.     A declaration as to the legality and enforceability of the Connecticut Disclosure Statutes is needed to clarify and settle PHEAA's obligation to produce the records at issue, and will afford relief to PHEAA from the uncertainty, insecurity, and controversy caused by the conflicting state and federal governmental directives giving rise to this proceeding.

85.     Therefore, PHEAA is entitled to a judicial determination pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 as to whether (1) federal law preempts the Connecticut Disclosure Statutes under a theory of express preemption; (2) the State Defendants have the power and authority to enforce the Connecticut Disclosure Statutes and to revoke PHEAA's license to service student loans because of its inability to produce the documents sought by the State Defendants; and (3) the Federal Defendants have the power and authority to direct PHEAA not to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes.

86.     PHEAA is further entitled to permanent injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law.

## PRAYER FOR RELIEF

WHEREFORE, PHEAA demands:

(a)     A declaratory judgment that federal law preempts the Connecticut Disclosure Statutes under which the State Defendants threaten to revoke PHEAA's license to service student loans in Connecticut or, in the alternative, that the Federal Defendants may not withhold their consent to permit PHEAA to respond to the State Defendants' document and information requests;

(b)     Permanent injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law; and

(c)     Such other relief as the Court deems just and proper.

Dated:  July 2, 2018                    By:     /s/ David A. Schulz_____
                                                David A. Schulz (CT #439467)
                                                  schulzd@ballardspahr.com
                                                **BALLARD SPAHR LLP**
                                                1675 Broadway, 19th Floor
                                                New York, NY 10019
                                                Telephone: (212) 850-6103
                                                Facsimile: (212) 223-1942

                                                John C. Grugan
                                                  (*pro hac vice* pending)
                                                  gruganj@ballardspahr.com
                                                Burt M. Rublin
                                                  (*pro hac vice* pending)
                                                  rublinb@ballardspahr.com
                                                Thomas F. Burke
                                                  (*pro hac vice* pending)
                                                  burket@ballardspahr.com
                                                Eleanor Bradley Huyett
                                                  (*pro hac vice* pending)
                                                  bradleyem@ballardspahr.com
                                                **BALLARD SPAHR LLP**
                                                1735 Market Street, 51st Floor
                                                Philadelphia, PA 19103
                                                Telephone: (215) 665-8500

Facsimile: (215) 864-8999

*Attorneys for Plaintiff Pennsylvania Higher Education Assistance Agency*