IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,<br><br>    Plaintiff,<br><br>    v.<br><br>JORGE L. PEREZ, in his official capacity as Commissioner of the Connecticut Department of Banking,<br><br>CONNECTICUT DEPARTMENT OF BANKING,<br><br>BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>    and<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    Defendants. | Civil Action No. 3:18-cv-1114 (MPS) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
FEDERAL DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

    This case is a dispute between Plaintiff, Pennsylvania Higher Education Assistance Agency (PHEAA), and the State of Connecticut about the validity of Connecticut laws. PHEAA claims that the Connecticut laws injure it, correctly argues that the Connecticut laws are preempted by federal law, and seeks declaratory and injunctive relief from the Connecticut laws. However, PHEAA overreaches in also suing the United States

1

Department of Education and its Secretary, Betsy DeVos (collectively, "Education"). First, although Education is named as a defendant, PHEAA does not actually state a cause of action against Education, or identify any theory on which the hypothetical actions it claims Education might take would be improper. Second, any Administrative Procedure Act (APA) claim that PHEAA could state would fail because PHEAA has an adequate alternative remedy and identifies no final agency action. Third, PHEAA lacks standing to bring any claims against Education because its concerns about future enforcement by Education are entirely speculative and would rely on a series of hypotheticals, including the survival of Connecticut's laws in the preemption debate, a release of information by PHEAA, and Education electing to take enforcement action against PHEAA. Finally, to the extent that PHEAA seeks an interpretation of or alteration to its contract with Education, this suit is not a proper vehicle. Education is thus not a proper defendant in this dispute between PHEAA and Connecticut about whether Connecticut law is preempted by federal law, and should be dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Connecticut laws at the center of this case regulate student loan servicers that service the loans of Connecticut borrowers. *See generally* Conn. Gen. Stat. Ann. § 36a-847, *as amended*, Conn. Legis. Serv. P.A. 18-173 (H.B. 5490) (West 2018). Unless an exception applies, servicers must obtain a license from the Connecticut Department of Banking. Conn. Gen. Stat. Ann. § 36a-847(a), *as amended*, Conn. Legis. Serv. P.A. 18-173 (H.B. 5490) (West 2018). Licensed servicers must comply with various provisions, including making records available to the Connecticut Department of Banking. Conn. Gen.

Stat. Ann. § 36a-849, 36a-851 (West 2016).  PHEAA challenges several of these provisions, which it identifies as the "Connecticut Disclosure Statutes."  Compl. ¶ 39.

PHEAA is a student loan servicer.  As provided for by the Higher Education Act, 20 U.S.C. § 1087 *et seq.*, Education contracts with third-party servicers, including PHEAA, to service federal student loans.  Compl. ¶¶ 15-17.  PHEAA alleges that it services student loans in Connecticut, Compl. ¶¶ 6, 22, and is licensed as a servicer by Connecticut, Compl. ¶ 23.

PHEAA brought suit against the Connecticut Department of Banking, its director (collectively, "Connecticut Defendants"), and Education.  According to the Complaint, Connecticut requested information from PHEAA pursuant to the Connecticut Disclosure Statutes.  Compl. ¶¶ 25-27. In accordance with federal law and its contract with Education, PHEAA refused to disclose the information absent authorization from Education.  Compl. ¶¶ 28-35; *see also* Compl. ¶¶ 43-44 (stating that Education's office of Federal Student Aid sent a letter to PHEAA and the Connecticut Defendants reiterating that the requested records belong to the federal government, and that PHEAA's contract prohibited PHEAA from releasing the records without authorization from the federal government).  The Connecticut Defendants threatened to revoke PHEAA's license and take other action based on PHEAA's refusal to disclose the information.  Compl. ¶¶ 38-41.

PHEAA contends that the Connecticut Disclosure Statutes are preempted by federal law through field preemption, Compl. ¶¶ 57-67; conflict preemption, Compl. ¶¶ 68-77; and express preemption, Compl. ¶¶ 78-86.  *See also* Compl. ¶¶ 53-56 (discussing Education's "Preemption Notice" addressing state regulation of federal student loan servicers).

PHEAA raises three claims, each styled as a request for "Declaratory Judgment Pursuant to 28 U.S.C. § 2201 *et. seq*." Compl. at 14, 16, 18. Claim one argues that federal law has preempted the field in which the Connecticut Disclosure Statutes seek to operate. Compl. ¶¶ 57-65. Claim two contends that conflicts with federal law preempt the Connecticut Disclosure Statutes. Compl. ¶¶ 68-75. Claim three asserts that express preemption bars the Connecticut Disclosure Statutes. Compl. ¶¶ 78-84. In each of these claims PHEAA also recites that it is "entitled to a judicial determination . . . as to whether . . . the Federal Defendants have the power and authority to direct PHEAA not to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes." Compl. ¶¶ 66, 76, 85.

## ARGUMENT

PHEAA's main request for relief—that this Court "declare whether the relevant Connecticut statutes are preempted by federal law," Compl. ¶ 4—does not run against Education or otherwise require Education's participation as a defendant. Although PHEAA characterizes the "live controversy" as "whether PHEAA must comply with an existing demand from the Connecticut DOB . . . or an existing demand from [Education]," Compl. ¶ 4, that choice is entirely one-sided. PHEAA fails to identify a cause of action against Education or provide any explanation as to why this Court should release it from its acknowledged duties under its contract. In contrast, PHEAA offers many well-founded reasons as to why it need not comply with the Connecticut Disclosure Statutes, which are preempted by a variety of sources of federal law. Education must therefore be dropped from this case pursuant to Rules 12(b)(1) and 12(b)(6) because PHEAA identifies no cause

4

of action for its claims against Education, could not raise an APA claim, and lacks standing. *Cf.* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

I. **The Primary Relief that PHEAA Seeks—a Finding that the Connecticut Disclosure Statutes are Preempted—Does Not Run Against Education or Require Education's Participation.**

PHEAA may obtain all of the relief that it seeks through a ruling by this Court that the Connecticut Disclosure Statutes are preempted. Such a ruling would not run against Education at all, and there is no reason that Education's participation as a defendant would be necessary. *Cf. Otero v. N.Y.C. Hous. Auth.*, 484 F.2d 1122, 1130 n.11 (2d Cir. 1973) (noting that where "full relief could be afforded plaintiffs through an injunction against the [state defendant], and no claim was made of affirmative discriminatory action on HUD's part, the complaint against the federal defendants should be dismissed."). In the ordinary course, a private party contending that federal law preempts state law simply brings suit against the relevant state officials or agencies; the presence of a federal party is not required. *See, e.g.*, *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288 (2016) (utility companies sued state officials, arguing that the Federal Power Act preempted state regulatory programs; the United States opted to participate as *amicus curiae*); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (nonprofit sued state officials, arguing that federal sanctions on Burma preempted the state's law regulating commerce with Burma); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) (trade association sued state agency, arguing that the Occupational Safety and Health Act preempted state licensing schemes for certain laborers).

The federal government may wish to provide its views on the preemption question, but it can do so by filing a Statement of Interest without participating as a party, as it often

does. *See* 28 U.S.C. § 517 ("The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.").

Indeed, the United States recently filed a Statement of Interest in a similar case involving analogous provisions of D.C. law. Statement of Interest of the United States (D.C. Statement of Interest) at 10-14, *Student Loan Servicing Ass'n v. Taylor*, No. 18-cv-640 (D.D.C. Aug. 24, 2018), ECF No. 20. As it did there, the government would likely argue here that Connecticut's regulation of federal student loan servicing violates the Supremacy Clause, seeks to regulate areas "involving uniquely federal interests," and impedes the accomplishment and execution of the full purposes and objectives of federal law. U.S. Const. art. VI, cl. 2; *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 507 (1988). It is well established that states may not attempt to control the federal government's selection of contractors through the imposition of a licensing requirement. *Compare* Conn. Gen. Stat. Ann. § 36a-847, *as amended*, Conn. Legis. Serv. P.A. 18-173 (H.B. 5490) (West 2018) (requiring that student loan servicers obtain a state license and meet various eligibility requirements), *with Sperry v. Florida ex rel. The Fla. Bar*, 373 U.S. 379, 385 (1963) ("State[s] may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.'" (quoting *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (footnotes omitted))). In addition, the Connecticut

Disclosure Statutes purport to require servicers to release information that federal law and Education's contracts require be kept confidential absent authorization from Education. *See generally* Conn. Gen. Stat. Ann. § 36a-17, *as amended*, Conn. Legis. Serv. P.A. 18-173 (H.B. 5490) (West 2018) (requiring disclosures in accordance with Connecticut's investigations); *cf.* D.C. Statement of Interest at 18-22 (addressing similar provisions of D.C. law).

The Court can consider such arguments from the government, as well as arguments made by PHEAA and Connecticut, and rule on the preemption question, all without Education being in the case as a defendant. Given the lack of viable claims asserted against Education, that is the proper course.

## II.     **PHEAA's Purported Claims Against Education Fail for Several Reasons.**

In addition to the main thrust of its arguments against Connecticut, PHEAA purports to raise all three of its claims against Education. Although PHEAA's claims are subtitled "Field Preemption," "Conflict Preemption," and "Express Preemption," PHEAA does not appear to argue that any action by Education is preempted by either field, conflict, or express preemption. Compl. at 14, 16, 18. Instead, PHEAA recites three times that it is "entitled to a judicial determination . . . as to whether . . . the Federal Defendants have the power and authority to direct PHEAA not to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes." Compl. ¶¶ 66, 76, 85. This statement suffers from many flaws, chief among them that it identifies no cause of action or reason to believe that any action by Education would be wrongful.

A. <u>PHEAA Fails to Identify a Cause of Action for Its Claims Against Education</u>

The claims against Education should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), because PHEAA fails to set forth a valid legal cause of action against Education.  "'Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies."' . . . A necessary prerequisite to the exercise of judicial power, then, is the presence before a court of a claim of substantive right.  In other words, the plaintiff's complaint must allege a substantive claim that triggers the court's adjudicative function." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (quoting *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).  Absent a substantive legal claim set forth in the Complaint, this Court lacks subject matter jurisdiction over the action.

PHEAA purports to set forth three legal claims against Education and Connecticut for "Declaratory Judgment."  Compl. at 14, 16, 18.  As to Connecticut, PHEAA explains at length how the Connecticut Disclosure Statutes are preempted by federal law.  Yet as to Education, PHEAA does not articulate in any way how the actions it believes Education will take would be wrongful, improper, or in violation of any law.  The Declaratory Judgment Act, 28 U.S.C. § 2201, does not by itself provide a basis for judicial review, but instead merely expands the remedies available in an otherwise proper civil action.  As the Supreme Court has said, the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).  The Second Circuit has reiterated that the Declaratory Judgment Act does not "provide an independent cause of action.  Its operation is procedural only—to provide a form of relief previously

8

unavailable." *In re Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *see also Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) (same); *Warner-Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184, 186-87 (2d Cir. 1977) ("The Declaratory Judgment Act . . . does not independently create federal jurisdiction.").

Courts in this circuit uniformly hold that a legal claim for declaratory judgment does not constitute a valid "independent cause of action," and that such purported claims must be dismissed. *See Inclusion First, LLC v. Macy*, No. 3:14-CV-1786, 2015 WL 8476329, at *8 (D. Conn. Sept. 23, 2015); *see also Vaden v. Connecticut*, 557 F. Supp. 2d 279, 283 (D. Conn. 2008) (dismissing a claim for "declaratory relief under the Declaratory Judgment Act" because the claim is "not predicated on any underlying cause of action"); *KM Enterprises, Inc. v. McDonald*, No. 11-CV-5098, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012) (dismissing "cause of action for declaratory relief" because "Plaintiff has no independent substantive claim of a right to this relief").[1]  Here, the only legal claims set forth in the Complaint are for "declaratory judgment," and PHEAA thus fails to provide a cause of action against Education over which this Court could exercise subject matter

---

[1] *KM Enterprises* and *Inclusion First* dismissed claims for declaratory relief for failure to state a claim pursuant to Rule 12(b)(6).  Here, of course, PHEAA also fails to state a claim against Education because PHEAA has not pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "However, granting a dismissal for failure to state a claim upon which relief can be granted presupposes that there is some claim that can be said to be legally deficient.  In the present matter, the question is not whether the complaint's claim is legally cognizable, but whether the complaint makes a claim at all." *In re Asbestos Litig.*, 14 F.3d at 733.  Where a complaint asserts only an entitlement to declaratory relief, without a legal claim, dismissal for lack of subject matter jurisdiction is warranted. *Id.*  In any event, regardless of whether this Court evaluates PHEAA's Complaint under Rule 12(b)(1) or Rule 12(b)(6), Education should be dismissed as a defendant.

jurisdiction. Nor does PHEAA plead any theory explaining *why* Education does not have the power to act in accordance with its contract. Accordingly, the putative claims against Education should be dismissed.

>   B. Even if PHEAA Had Alleged a Legal Claim Under the APA, it Would Fail

Although PHEAA failed to plead a single cognizable legal claim, any plausible claim that could be alleged against Education here would undoubtedly fail. In its Complaint, PHEAA briefly invokes the APA, 5 U.S.C. § 702, noting that a litigant may obtain judicial review of certain federal agency actions. Compl. ¶ 12. But PHEAA could not succeed on any APA claim here, because 5 U.S.C. § 704 authorizes judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." As an initial matter, PHEAA fails to identify any final agency action at issue here.

More significantly, PHEAA has an adequate alternative remedy to obtain the relief sought here. PHEAA could proceed in this suit against Connecticut alone to obtain a declaratory judgment that Connecticut's disclosure laws and regulations are preempted. *See Sherman v. Black*, 315 F. App'x 347, 349 (2d Cir. 2009) (unpublished) (holding that a plaintiff was precluded from bringing claim under APA in case against U.S. Department of Education, where the plaintiff could file a discrimination lawsuit against a private defendant); *Murray v. Lakeland Cent. Sch. Dist. Bd. of Educ.*, No. 16-CV-6795, 2017 WL 4286658, at *7 (S.D.N.Y. Sept. 26, 2017) (same). It is well established that APA review is barred where a plaintiff can get relief by suing another defendant, even when the alternative defendant is already named in the same case. *See Niagara Mohawk Power Corp. v. FERC*, 306 F.3d 1264, 1268-69 (2d Cir. 2002) (the plaintiff could not maintain APA claim against FERC because the plaintiff's claims against a state agency in same

lawsuit provided an adequate alternative legal remedy); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11-cv-846, 2012 WL 1940845, at *6 (E.D.N.Y. May 29, 2012) (the plaintiff could not maintain APA claim against HUD because the plaintiff's claims against a local agency and non-profit in same lawsuit provided an adequate alternative legal remedy). Success in such a suit against Connecticut would entirely remedy PHEAA's alleged injuries by permitting it to continue servicing loans in accordance with federal law and its contracts. Indeed, PHEAA was able to maintain the status quo during the pendency of this litigation and continue its servicing activities by getting Connecticut to forbear from suspending its license—without requiring any forbearance from Education. *See* Compl. ¶ 47. Given the availability of an alternate adequate remedy, and the lack of a final agency action, no APA claim is cognizable here,[2] and PHEAA does not even allude to any other bases for which a cause of action would exist.

### C. PHEAA Lacks Standing for Its Claims Against Education.

In addition, the claims against Education should be dismissed for lack of subject matter jurisdiction because PHEAA lacks standing to raise any claims against Education. The jurisdiction of federal courts is limited to actual cases or controversies between proper litigants with standing to sue. U.S. Const. art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504

---

[2] For the same reasons that PHEAA cannot state an APA claim, Plaintiff has also failed to allege a sufficient waiver of the federal government's sovereign immunity. *See Infante v. Drug Enf't Admin.*, 938 F. Supp. 1149, 1154 (E.D.N.Y. 1996) ("While 5 U.S.C. § 702 waives sovereign immunity for agency actions, sections 701 and 704 limit the terms of that waiver."). Nor is sovereign immunity waived by 20 U.S.C. § 1082(a)(2), also cited by PHEAA. Compl. ¶ 12. That provision authorizes certain lawsuits against Education but "expressly prohibits injunctive relief except where the Secretary of Education exercises powers that are clearly outside his statutory authority." *Shabtai v. U.S. Dep't of Educ.*, No. 02 CIV.8437 LAP, 2003 WL 21983025, at *7 (S.D.N.Y. Aug. 20, 2003). The relief that PHEAA seeks against Education is a "permanent injuncti[on]," Compl. at 19-20, yet there is no allegation that the Secretary has acted outside governing statutory authority.

U.S. 555, 560-61 (1992).  "[S]tanding is not dispensed in gross."  *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  Instead, a plaintiff must separately demonstrate standing with respect to each claim and against each defendant.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63, 65-66 (2d Cir. 2012).  The plaintiff must therefore show a concrete and particularized injury, that its injury is "'fairly . . . trace[able] to the challenged action'" of each defendant, and that the relief sought is likely to provide redress.  *Lujan*, 504 U.S. at 560 (ellipsis and alteration in original).  These requirements set forth the "irreducible constitutional minimum" of standing, and its absence defeats subject matter jurisdiction.  *Id*. at 560-61.  Here, therefore, PHEAA must demonstrate that it has an injury that is fairly traceable to a challenged action by Education.  PHEAA cannot do so.

Though PHEAA does not identify the actual or threatened injuries which provide it standing, the most obvious candidates are clearly caused by Connecticut— PHEAA relies on actual or threatened injuries from actions by Connecticut, not Education.  *See, e.g.*, Compl. ¶ 40 (noting that Connecticut threatened to revoke PHEAA's license and initiate proceedings that could result in civil penalties of up to $100,000).  Nor does Education's decision to decline to authorize the release of borrower records place it on the hook for these potential enforcement actions by Connecticut.  A plaintiff's injury is not fairly traceable to a defendant's action if the injury was "th[e] result [of] the independent action of some third party" and the defendant's action did not have a "determinative or coercive effect upon the action of" that third party.  *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (alterations in original; emphasis omitted).  Thus, "causation turns on the degree to which

the defendant's actions constrained or influenced the decision of the final actor in the chain of causation." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010).

In this case, Connecticut has not been influenced, let alone coerced, by Education into threatening PHEAA. There is no allegation that Connecticut was influenced by Education or the federal government to enact the Connecticut Disclosure Statutes. Nor has Education somehow required Connecticut to enforce its laws against PHEAA. PHEAA thus lacks standing to sue Education based on its concerns about enforcement actions taken by Connecticut. *Accord Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) (holding that, because "it is not the allegedly unlawful conduct of the federal defendants but that of the State of South Carolina that allegedly caused injury to plaintiffs," "there is no subject matter jurisdiction . . . with respect to the federal defendants").

Nor does PHEAA's vague suggestion that, if PHEAA releases borrower information in violation of its contract, Education may eventually "take regulatory, disciplinary, or retaliatory action," Compl. ¶¶ 66, 76, 85, suffice to demonstrate standing. PHEAA offers no basis to believe that it will violate its contract, or that Education would take action against it. Where PHEAA cannot even specify when such harm could occur, or what form it would take, this "*future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (citation omitted). Furthermore, any claims based on this hypothetical future action by Education should be dismissed for lack of ripeness. Here, any "administrative decision" to retaliate against PHEAA based on PHEAA's future conduct has not been "formalized" and its effects have not been "felt in a

concrete way" by PHEAA, and adjudication would thus be premature. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted).

### III. To the Extent that PHEAA Seeks to Dispute Its Contract with Education, This Suit Is Not an Appropriate Vehicle.

As discussed above, PHEAA has not identified a cause of action to support its claims against Education or pled a concrete injury fairly traceable to Education. A further barrier, however, bars the relief PHEAA seeks. PHEAA requests that this Court rule on whether Education has "the power and authority to direct PHEAA not to" release information to Connecticut, and "to take regulatory disciplinary, or retaliatory action" if PHEAA violates its contract. Compl. ¶¶ 66, 76, 85. Both of these questions would require this Court to interpret—or re-write entirely—PHEAA's contract with Education. Indeed, PHEAA admits that its contract with Education "requires PHEAA to . . . 'comply with Federal and [Education's] record management policies'" and that it "does not own or control" records relating to individual federal student loan borrowers. Compl. ¶¶ 2, 19; *see also* Compl. at 1 (admitting that "if PHEAA does produce the documents to the Connecticut DOB, it will be in violation of both federal law and its Servicing Contract with ED").[3] PHEAA thus seeks either a judicial interpretation to let it out of its contract, or a judicial finding that Education cannot enforce its contract.

The Contract Disputes Act, 41 U.S.C. § 7101 *et seq.*, sets forth a comprehensive scheme of procedures that a contractor must follow to dispute its contract with the federal government. To the extent that PHEAA believed that any provision of its contract was

---

[3] Further demonstrating the centrality of PHEAA's contract with Education here, PHEAA attached the contract as an exhibit to the Complaint. *See* ECF No. 1-1.

impeded by, for example, the action of state law, it could raise that issue through the contract dispute process. PHEAA does not appear to have followed any of those requirements here. *See* 41 U.S.C. § 7102 (stating that the requirements apply to all executive branch contracts for services, unless other exceptions apply); 41 U.S.C. § 7103 (requiring contractors to submit claims, in writing, to their contracting officer). If unsatisfied at the end of that process, the Contract Disputes Act permits contractors to pursue claims for damages through the Court of Federal Claims or the Civilian Board of Contract Appeals.[4] 41 U.S.C. § 7104; *see generally* 48 C.F.R. § 52.233-1.

## CONCLUSION

For the reasons given above, the Court should grant Education's motion to dismiss and drop Education as a party from this case.


Dated: September 7, 2018                         Respectfully submitted,



                                                 JOSEPH H. HUNT
                                                 Assistant Attorney General

                                                 MARCIA BERMAN
                                                 Assistant Branch Director

                                                 /s/ Rebecca M. Kopplin
                                                 REBECCA M. KOPPLIN
                                                 Trial Attorney (California Bar No. 313970)
                                                 MICHAEL DREZNER
                                                 Trial Attorney (V.A. Bar No. 83836)
                                                 United States Department of Justice

---

[4] And, even if PHEAA's remedies under the Contract Disputes Act were optional, rather than mandatory, they would foreclose any possible APA suit by PHEAA concerning the interpretation of PHEAA's contract because the APA's review is available only where the plaintiff has "no other adequate remedy in a court." 5 U.S.C. § 704.

        Civil Division, Federal Programs Branch
        20 Mass. Ave. NW
        Washington, D.C.  20001
        Telephone:  (202) 514-3953
        Facsimile:  (202) 616-8202
        Email: Rebecca.M.Kopplin@usdoj.gov

*Counsel for Federal Defendants*