**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,** : | |
| : | **CIVIL ACTION** |
| : | |
| **Plaintiff,** : | **NO. 3:18-CV-01114-MPS** |
| : | |
| **v.** : | **October 1, 2018** |
| : | |
| **JORGE L. PEREZ, in his official capacity as Commissioner of the Connecticut Department of Banking,** : | |
| : | |
| : | |
| **the CONNECTICUT DEPARTMENT OF BANKING,** : | |
| : | |
| **BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education,** : | |
| : | |
| : | |
| **and** : | |
| : | |
| **the UNITED STATES DEPARTMENT OF EDUCATION,** : | |
| : | |
| **Defendants.** : | |

**AMENDED COMPLAINT FOR INTERPLEADER**
**AND DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Pennsylvania Higher Education Assistance Agency ("PHEAA"), by and through

its undersigned attorneys and pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and

this Court's September 10, 2018 Order (ECF No. 32), brings this Amended Complaint for

Interpleader and Declaratory Relief against Defendants the Connecticut Department of Banking

(the "Connecticut DOB"), the United States Department of Education ("ED"), and their agency

heads.  In support thereof, PHEAA alleges as follows:

## NATURE OF THE ACTION

1.      PHEAA, as a student loan servicer that contracts with ED to service federal

student loans under the William D. Ford Federal Direct Loan Program, 20 U.S.C. § 1087a *et seq.*

("Direct Loans," or the "Direct Loan Program"), has access to, but does not own or control,

voluminous records containing personally identifying information of individual federal student

loan borrowers.

2.      Citing provisions of Connecticut law purportedly governing holders of state

licenses to service student loans, the Connecticut DOB has demanded that PHEAA produce

records containing the personally identifying information of federal student loan borrowers (the

"Documents").

3.      The Connecticut DOB contends that, if PHEAA declines to produce the

Documents, it will be in violation of state law.

4.      Aware of the demand of the Connecticut DOB and under its purported authority

as owner of the Documents, ED contends that if PHEAA *does* produce the Documents, it will be

in violation of both federal law and its Servicing Contract with ED (the "Contract").  On that

basis, ED has expressly prohibited PHEAA from complying with the Connecticut DOB's

demand to produce the Documents.  To this point, PHEAA has complied with ED's directive.

5.      ED has further directed that any requests for the Documents by the Connecticut

DOB must be addressed to ED itself, but ED has refused to produce the Documents to the

Connecticut DOB directly.

6.      Thus, PHEAA finds itself caught squarely in the middle of conflicting demands

by the Connecticut DOB and ED that: (i) require a judicial determination of the primacy of state

law or federal law, and (ii) require judicial resolution of competing claims concerning access to the Documents in PHEAA's possession.

7.      This action is brought to resolve those issues, to secure PHEAA's ability to service student loans in the State of Connecticut, and to allow PHEAA to comply with applicable state and federal law, as well as abide by its contractual obligations to ED.

8.      The true parties in interest are the Connecticut DOB and ED, whose contrary interpretations of applicable law have left PHEAA caught "between the Scylla of intentionally flouting state law and the Charybdis" of disregarding an express directive by ED based on federal law.  *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

9.      PHEAA has no preference as to the outcome of the dispute.  Like other student loan servicers in courts across the country confronted with the same, or a similar, dilemma, PHEAA requires judicial determination of the dispute between its state regulator, the Connecticut DOB, and its federal regulator, ED, in order to avoid the potential for multiple liability under state or federal law, and potentially for violation of its Contract with ED.

10.     Consequently, PHEAA brings this action in the nature of interpleader and for a declaration of the rights and other legal relations of the parties, and all additional necessary and proper relief, including permanent injunctive relief, against (1) Jorge L. Perez (the "Commissioner"), in his official capacity as Commissioner of the Connecticut DOB; (2) the Connecticut DOB (together with Commissioner Perez, the "State Defendants"); (3) Betsy DeVos (the "Secretary"), in her official capacity as Secretary of ED; and (4) ED (together with Secretary DeVos, the "Federal Defendants").[1]

---

[1]     Collectively, the State Defendants and Federal Defendants may be referred to as the "Interpleader Defendants."

11.     PHEAA requests that this Court enter an order: (i) requiring the Interpleader Defendants to interplead and settle the claims between themselves regarding access to the Documents, permitting PHEAA to withhold production of the Documents until the claims between the Interpleader Defendants are finally determined, and enjoining the Interpleader Defendants from taking any action against PHEAA with respect to its ultimate withholding or production of the Documents; (ii) declaring the enforceability of both the relevant Connecticut statutes and the position ED has articulated in prohibiting PHEAA from producing the Documents; and (iii) enter permanent injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law.

## PARTIES

12.     Plaintiff PHEAA is a statutorily created instrumentality of the Commonwealth of Pennsylvania with headquarters located at 1200 North 7th Street, Harrisburg, Pennsylvania 17102.  PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body corporate and politic constituting a public corporation and government instrumentality."  24 Pa. Stat. § 5101.  PHEAA conducts a variety of operations in the student loan industry, including, but not limited to, acting as: (1) a servicer of private student loans; (2) a servicer and/or guarantor of federal student loans issued by private lenders under the Federal Family Education Loan Program; and (3) a servicer of federal student loans issued by ED under the Direct Loan Program.

13.     Defendant Jorge L. Perez is the Commissioner of the Connecticut Department of Banking.

4

14.     Defendant the Connecticut DOB is an agency of the State of Connecticut with headquarters located at 260 Constitution Plaza, Hartford, Connecticut 06103.

15.     Defendant Betsy DeVos is the Secretary of the United States Department of Education.

16.     Defendant the United States Department of Education is an agency of the United States government with headquarters located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 2201 in that the Complaint asserts claims arising under the Constitution and laws of the United States, and seeks a declaration of rights and other legal relations under the Constitution and laws of the United States.

18.     This Court has equitable jurisdiction to hear claims for declaratory and injunctive relief to enjoin unconstitutional actions by state and federal officers.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383–84 (2015) (acknowledging that courts play "a significant role" in assessing Supremacy Clause claims and such claims are proper for consideration by courts sitting in equity); *see also Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144–45 (2d Cir. 2016) (accepting equity jurisdiction with regard to preemption claims).

19.     The United States has consented to suit for non-monetary relief against a federal agency or officer thereof based on "a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  5 U.S.C. § 702. *See also Bowen v. Massachusetts*, 487 U.S. 879, 891–93 (1988); *Sharkey v. Quarantillo*, 541

5

F.3d 75, 91 (2d Cir. 2008).  Further, "[i]n the performance of, and with respect to, the functions, powers, and duties, vested in [her] by [20 U.S.C. Part B], the Secretary [of ED] may . . . sue and be sued . . . in any district court of the United States . . . ."  20 U.S.C. § 1082(a)(2).

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the State Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

*ED's Administration of Federal Student Loans*

21.     Under the Higher Education Act ("HEA"), Pub. L. No. 89-329, 79 Stat. 1219 (1965), and related statutes and regulations, ED has the authority to issue a variety of federal loans and grants to student borrowers.  Specifically relevant here are Direct Loans, which are issued by the federal government directly to eligible student borrowers, and benefits awarded to Direct Loan borrowers under the Public Service Loan Forgiveness ("PSLF") Program, 20 U.S.C. § 1070 *et seq.*

22.     ED, rather than self-service the Direct Loans it issues, contracts with third-party servicers such as PHEAA to perform that function.  20 U.S.C. § 1087f(a).

23.     Every aspect of the servicing of such loans is highly regulated by ED, including administration of loan repayment generally (34 C.F.R. § 685.208), income-based or income-contingent repayment plans (*id.* § 685.209), deferments and forbearances (*id.* §§ 685.204–205), and borrower benefits such as the PSLF Program (*id.* § 685.219).

24.     In 2009, PHEAA was selected through a competitive process by ED to service federal loans on a national basis.  PHEAA's Contract with ED, which was renewed in 2014, governs PHEAA's servicing of loans owned by ED.[2]

25.     In addition to requiring that PHEAA "meet all statutory and legislative requirements," Ex. A, Att. A-1, at 3, the Contract specifies 124 enumerated obligations for the servicer, many with dozens of sub-requirements, *id.* at 3–18.  ED carefully monitors PHEAA's performance under the Contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices; PHEAA, in turn, is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed."  *Id.* at 7.  PHEAA is not paid for loans "not being serviced in compliance with the Requirements, Policy and Procedures for servicing federally held debt due to the fault of the servicer . . . ."  *Id.*, B.13.L.

26.     The Contract also requires PHEAA to comply with strict records management requirements, which require PHEAA to, *inter alia*, "comply with Federal and [ED] records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974."  *Id.*, at Att. A-2, at 11–12.

27.     The Privacy Act of 1974 provides, among other things, that federal contractors who operate a federal system of records, such as PHEAA, are considered employees of a federal agency for purposes of applicability of the Privacy Act's criminal penalties for prohibited disclosure of protected records.  *See* 5 U.S.C. § 552a(i), (m).

---

[2]     The Contract was attached as "Exhibit A" to PHEAA's original complaint (ECF No. 1-1) and is incorporated herein by reference.  *See* Fed. R. Civ. P. 10(c) (permitting incorporation by reference).  References to Exhibit A in this Amended Complaint refer to the exhibit attached to the original complaint.

28.     Despite these significant contractual responsibilities to ED, PHEAA remains a third-party loan servicer of ED and is not itself a party to the underlying loan contracts between ED and its borrowers.

*The Connecticut DOB Demands Production of Federal Student Loan Records from PHEAA*

29.     PHEAA currently services federal and private student loans for approximately 100,000 borrowers residing in the State of Connecticut.  Of this total amount, approximately 80,000 borrowers have federal student loans owned by ED.

30.     On May 1, 2017, PHEAA applied for a license from the Connecticut DOB to act as a student loan servicer in Connecticut, pursuant to Conn. Gen. Stat. § 36a-847(b).  PHEAA's application was approved on June 30, 2017.

31.     To maintain its license with Connecticut, PHEAA must "comply with all applicable federal laws and regulations relating to student loan servicing . . . and the regulations promulgated thereunder."  Conn. Gen. Stat. § 36a-853.  A servicer's "violation of any such federal law or regulation shall be deemed a violation of this section and a basis upon which the [C]ommissioner may take enforcement action pursuant to section 36a-852."  *Id.*

32.     On November 3, 2017, PHEAA received, via email, a letter from the Connecticut DOB informing PHEAA that it proposed to conduct a limited scope examination of PHEAA in order to "review[] all accounts transferred to [PHEAA] for the months of August, September and October, 2017 as a result of the [PSLF] [P]rogram."

33.     The Connecticut DOB's November 3, 2017 letter included a "Student Loan Servicer Management Questionnaire and Information Request" (the "Request") directed to PHEAA.

34.     The Request sought, *inter alia*, PHEAA's policies and procedures related to administering the PSLF Program, and also borrower-specific information, including certain borrower complaints.

35.     PHEAA responded to the Request, via email, on November 7, 2017, seeking clarification as to the scope of both the proposed examination and the Request.

36.     That same day, by email, the Connecticut DOB responded to PHEAA by limiting the scope of the Request in several ways—for example, the Connecticut DOB limited its request for borrower complaints to "a list of CT [complaints] either filed directly with you, through the US Dept of Education, CFPB or any other entity starting 1/1/17 through October 31, 2017 regarding PSLF transfers."

37.     PHEAA also received an email from ED on November 7, 2017 containing an express directive from ED's Office of Federal Student Aid advising that PHEAA was prohibited under federal law from releasing any data or documentation related to PSLF to the Connecticut DOB.

38.     On November 9, 2017, PHEAA sought additional clarification from the Connecticut DOB and also requested information regarding the logistics of producing the Documents and information requested.

39.     That same day, PHEAA also informed the Connecticut DOB of ED's position communicated in its November 7th email and provided contact information for ED officials to whom the Connecticut DOB could direct any further request for production of federal documents.

40.     On January 11, 2018, PHEAA was advised by the Associate Examiner at the Connecticut DOB that a telephone conference between ED and the Connecticut DOB occurred

that morning, during which the Connecticut DOB agreed to issue a direct request to ED for documents and data owned by ED and encompassed in the Request.

41.     Also on January 11, 2018, the Connecticut DOB informed PHEAA that it would issue a direct request to ED for the records that the Connecticut DOB had previously sought from PHEAA.

42.     In a letter to the Connecticut DOB that same day, PHEAA memorialized this conversation and stated that PHEAA would "not be providing any responsive documents [or] data that are specific to [ED's Office of Federal Student Aid]."

43.     Accompanying that letter, PHEAA fully produced to the Connecticut DOB certain responses to the Request not implicating the federal prohibition on disclosure of ED's documents, along with all responsive documents and data that were not owned by ED or its Office of Federal Student Aid.

44.     Upon information and belief, on January 12, 2018, the Connecticut DOB made a direct request to ED for access to certain records pertaining to federal student loans that PHEAA services for ED.

45.     PHEAA received no response from the Connecticut DOB to its January 11, 2018 letter or its accompanying production of information and documents until more than two months later, on March 21, 2018.

46.     On March 21, 2018, PHEAA received a letter from the Connecticut DOB "formally convey[ing] [their] concerns related to [the proposed] examination [of PHEAA] and [to] provide PHEAA with an opportunity to show compliance with all lawful requirements for the retention of its student loan servicer license in Connecticut pursuant to Section 4-182(c) of the Connecticut General Statutes."

47.     The March 21 letter represented the first time the Connecticut DOB asserted that PHEAA had failed to produce "numerous" records sought in the Request in violation of several provisions of Connecticut law (collectively, the "Connecticut Disclosure Statutes"), including:

(a)     Conn. Gen. Stat. § 36a-17, which provides, in pertinent part:

> (c) For the purpose of any . . . examination . . . under this title the commissioner may . . . require the production of any records which the commissioner deems relevant or material. . . .

> (d) Any person who is the subject of any such . . . examination . . . shall make its records available to the commissioner in readable form; provide personnel and equipment necessary, including, but not limited to, assistance in the analysis of computer-generated records; provide copies or computer printouts of records when so requested; . . . furnish unrestricted access to all areas of its principal place of business or wherever records may be located; and otherwise cooperate with the commissioner.

(b)     Conn. Gen. Stat. § 36a-849, which provides, in pertinent part:

> (a) Each student loan servicer licensee shall maintain adequate records of each student education loan transaction for not less than two years following the final payment on such student education loan or the assignment of such student education loan, whichever occurs first, or such longer period as may be required by any other provision of law.

> (b) If requested by the commissioner, each student loan servicer licensee shall make such records available or send such records to the commissioner by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt, not later than five business days after requested by the commissioner to do so. Upon request, the commissioner may grant a licensee additional time to make such records available or send the records to the commissioner.

(c)     Conn. Gen. Stat. § 36a-851, which provides, in pertinent part:

> (a) In addition to any authority provided under this title, the Banking Commissioner shall have the authority to conduct investigations and examinations as follows:

> (1) For purposes of . . . general or specific inquiry or investigation to determine compliance with sections 36a-846 to 36a-854, inclusive, the commissioner may access, receive and use any books, accounts, records, files, documents, information or evidence including, but not limited to, . . . (C) any other documents, information or evidence the commissioner

11

deems relevant to the inquiry or investigation regardless of the location, possession, control or custody of such documents, information or evidence.

48.     The March 21 letter stated that PHEAA's failure to produce the Documents

"**constitute[s] grounds to revoke PHEAA's student loan servicer license in Connecticut**

pursuant to Sections 36a-852 and 36a-51 of the Connecticut General Statutes and **forms a basis**

**to take other administrative action** as the Commissioner deems appropriate, including, but not

limited to, initiation of proceedings to order PHEAA to cease and desist and impose a civil

penalty on PHEAA of up to $100,000 per violation."  (emphasis added).

49.     The letter concluded by stating that "[p]ursuant to Sections 4-182(c) and 36a-52

[of the Connecticut General Statutes], you are being given an opportunity to show compliance

with all lawful requirements for the retention of your student loan servicer license.  You must

respond . . . in writing no later than April 4, 2018.  If no written response is received by that date

or if the [State Defendants] find[] any such response to be insufficient, **the [State Defendants]**

**may issue an administrative action against your license**." (emphasis added).

50.     On March 26, 2018, ED's Office of the General Counsel denied the Connecticut

DOB's January 12, 2018 request for access to certain ED records pertaining to student loan

borrowers serviced by PHEAA.  ED's letter permitted the Connecticut DOB to submit a new

request to ED if that request specified alternate grounds to justify its request.

51.     On April 2, 2018, Linda J. Randby, Esq., PHEAA's Interim Senior Vice President

of Legal and Compliance Services, received a letter from ED.  The State Defendants were copied

on the letter.

52.     The April 2 ED letter referenced the Connecticut DOB's March 21 letter to

PHEAA requesting records, and stated that the records requested by the Connecticut DOB

"**belong to the federal government and PHEAA is prohibited from releasing them under its**

**contract with [ED].**" (emphasis added).  The April 2 ED letter further stated that "[a] state agency does not have the authority to prohibit PHEAA from servicing federal student loans when the federal government has specifically authorized it to do so."

53.     The April 2 ED letter concluded by stating that ED "would be willing to discuss with the [Connecticut DOB] the requirements of PHEAA's contract, so that the [Connecticut DOB] may avoid imposing requirements on PHEAA that conflict with federal law."

54.     On April 2, 2018, representatives from PHEAA participated in a telephone conference with representatives from the Connecticut DOB.  During the call, the Connecticut DOB informed PHEAA that it would not rescind its demand that PHEAA provide an explanation for its alleged non-compliance with the Connecticut Disclosure Statutes.

55.     On June 28, 2018, the Connecticut DOB agreed, while the instant litigation is pending and in the absence of a material change in applicable law or facts, to refrain from pursuing a suspension of PHEAA's license to service student loans in Connecticut based on the alleged violations detailed in its March 21 letter or substantively similar alleged violations based on substantively similar past or future conduct.

*ED Memorandum on Records and Data and Notice Regarding*
*Preemption of State Regulation of Student Loan Servicers*

56.     ED, through Patrick A. Bradfield, the Director of Federal Student Aid Acquisitions, released a public memorandum on December 27, 2017, regarding ownership of and access to ED records and data (the "ED Memorandum").

57.     In the ED Memorandum, ED explains that its Office of Federal Student Aid "maintains individually identifying information regarding the application for, distribution of, and repayment and collection of federal student loans and grants authorized pursuant to Title IV of [the HEA]."  The ED Memorandum observes that this information is protected by the Privacy

Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a, which provides for criminal and civil penalties for the prohibited disclosure of protected records by agency employees.

58.    As noted above, the Privacy Act also provides that federal contractors who operate a federal system of records, such as PHEAA, are considered employees of a federal agency for purposes of applicability of the Privacy Act's criminal penalties for prohibited disclosure of protected records.  *See* 5 U.S.C. § 552a(i), (m).

59.    The ED Memorandum further states that "[a]ll records maintained in any Department systems of records to which the Department provides its contractors access remain at all times records of the Department, not records of a contractor."  The ED Memorandum also states that "[a]ny request from any third party for Department records to which a contractor has access must be made directly to the Department, where it will be evaluated for compliance with the requirements of the Privacy Act . . . ."

60.    During the first week of January 2018, PHEAA shared the ED Memorandum with the Connecticut DOB.

61.    ED later published a notice entitled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers" (the "Preemption Notice").  *See* 83 Fed. Reg. 10619 (dated Mar. 12, 2018).

62.    In the Preemption Notice, ED explains that certain state requirements imposed on student loan servicers, including state regulations requiring licensure of servicers performing work for ED, conflict with ED's power to select contractors and to determine whether contractors are in compliance with federal law.  *Id.* at 10620 ("A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is

14

qualified and entitled to perform certain functions, or which impose upon the performance of

activity sanctioned by federal license additional conditions not contemplated by Congress.")

(quoting *Sperry v. Florida*, 373 U.S. 379, 385 (1963) (quoting *Leslie Miller Inc. v. Arkansas*, 352

U.S. 187, 190 (1956))).

63.     ED further explains in the Preemption Notice that such state law requirements

undermine the "clear command for uniformity" in the HEA with respect to the Direct Loan

Program, and that where "the Federal interest requires a uniform rule, the entire body of State

law applicable to the area conflicts and is replaced by Federal rules." 83 Fed. Reg. at 10621

(citing *Boyle v. United Tech. Corp.*, 487 U.S. 500, 508 (1988)).

64.     The Preemption Notice thus concludes that federal law preempts state regulation

of loan servicers that conflict with federal statutes, federal regulations, federal contracts, and

congressional objectives.  *Id.* at 10621.

65.     ED has continually pressed the same or similar positions to those expressed in the

ED Memorandum and the Preemption Notice, leading to disputes similar to this litigation in

multiple state and federal courts around the country.  *See, e.g.*, *Student Loan Serv. Alliance v.

Taylor et al.*, No. 1:18-cv-00640 (D.D.C. 2018); *Cmwlth. of Pa. v. Navient Corp., et al.*, No.

3:17-cv-01814 (M.D. Pa. 2017); *Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-cv-101,

2018 U.S. Dist. LEXIS 135481 (M.D. Pa. Aug. 10, 2018); *Cmwlth. of Mass. v. Pa. Higher Educ.

Assistance Agency*, No. 1784-CV-02682 (Mass. Super. Ct. 2017); *Wash. v. Navient Corp., et al.*,

No. 17-2-1115-1 SEA (Wash. Super. Ct. 2017).

# CLAIMS FOR RELIEF

## COUNT ONE
## (INTERPLEADER)
### (All Defendants)

66.    Paragraphs 1 through 65 are incorporated by reference as if fully set forth herein.

67.    PHEAA is faced with competing claims by state and federal governmental entities concerning access to the same Documents and, should PHEAA disregard either claim, it is susceptible to significant potential liability.

68.    Under Rule 22 of the Federal Rules of Civil Procedure "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead."  Fed. R. Civ. P. 22(a)(1).

69.    "[W]hat triggers interpleader is 'a real and reasonable fear of double liability or vexatious, conflicting claims . . . .'"  *Wash. Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) (second alteration in original) (quoting *Indianapolis Colts v. Mayor of Baltimore*, 741 F.2d 954, 957 (7th Cir. 1984)).

70.    Connecticut DOB claims it has a right to production of the Documents pursuant to the Connecticut Disclosure Statutes.

71.    Should PHEAA fail to comply with the Connecticut Disclosure Statutes and refuse to produce the Documents, Connecticut DOB has threatened to revoke PHEAA's license to service student loans in Connecticut and take other administrative action against PHEAA.

72.    ED has invoked the Privacy Act, among other federal authorities, in prohibiting PHEAA from producing the Documents sought by the Connecticut DOB.

73.    Should PHEAA fail to abide by ED's prohibition and produce the Documents to the Connecticut DOB, ED could seek civil or criminal penalties for violation of the Privacy Act, could terminate PHEAA's Contract, or could seek other penalties.

74.    "Where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat . . . ."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) (emphasis omitted).

75.    The Interpleader Defendants seek to impose conflicting duties on PHEAA with respect to the production of the same Documents.

76.    But for the impasse regarding which governmental entity has the legal right to control production of the Documents, PHEAA would be able to comply with the law by either producing or withholding the Documents and would not be subject to the potential for multiple liability.

77.    PHEAA, itself, is a neutral bystander to the dispute.  It is ready to produce Documents pursuant to the Connecticut Disclosure Statutes (as it has already done with respect to non-ED-owned documents) if it can do so without violating federal law or the Contract with ED.  But PHEAA also must satisfy its obligations to ED—its contractual partner and the owner of the Documents.  Without judicial resolution of this intractable dispute between Connecticut DOB and ED, PHEAA cannot take any action with respect to the Documents without exposing itself to potential liability and enforcement actions.

WHEREFORE, Defendant Pennsylvania Higher Education Assistance Agency respectfully requests the following relief:  (i) an order requiring that the Interpleader Defendants interplead and settle all claims between themselves concerning the production of the Documents; (ii) an order that PHEAA may continue to hold the Documents and no Interpleader Defendant may make a claim or prohibition with respect to the Documents until the Court determines if state or federal law controls and whether the Documents must be produced or must be withheld; (iii) an order enjoining the Interpleader Defendants and all claiming through or acting with them

from taking any action against PHEAA regarding its withholding or production of the

Documents; and (iv) an award of such other and further relief as the Court may deem just,

proper, and equitable.

## COUNT TWO
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 *et seq.*
## (FIELD PREEMPTION)
### (All Defendants)

78.    Paragraphs 1 through 77 are incorporated by reference as if fully set forth herein.

79.    The Declaratory Judgment Act states:

In a case of actual controversy within its jurisdiction . . . any court of the United
States, upon the filing of an appropriate pleading, may declare the rights and other
legal relations of any interested party seeking such declaration, whether or not
further relief is or could be sought.  Any such declaration shall have the force and
effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

80.    Declaratory relief is appropriate "(1) where the judgment will serve a useful

purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and

afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings."

*Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971).

81.    An actual and justiciable controversy presently exists concerning whether the

Connecticut Disclosure Statutes are preempted by federal law under a theory of field preemption

or, conversely, if ED cannot prohibit disclosure of the Documents because federal law does not

preempt the Connecticut Disclosure Statutes.

82.    The Supremacy Clause of the U.S. Constitution states that "the Laws of the

United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.

83.    Field preemption occurs where "the federal interest is so dominant that the federal

system will be assumed to preclude enforcement of state laws on the same subject, or if the goals

sought to be obtained and the obligations imposed reveal a purpose to preclude state authority."
*Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991) (internal quotation marks omitted)
(quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

84.     "[S]tate laws can be pre-empted by federal regulations as well as by federal
statutes." *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (citation
omitted).  "Pre-emption may result not only from action taken by Congress itself; a federal
agency acting within the scope of its congressionally delegated authority may pre-empt state
regulation." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986).

85.     In its Preemption Notice, ED opined that the federal interest in the Direct Loan
Program is so dominant as to "preclude State regulation, either of borrowers or servicers."  83
Fed. Reg. at 10621.  According to ED, the federal interest includes Congress's goals of
uniformity and ease of administration for the Direct Loan Program, and ED's interest in
regulating "liability of contractors performing their obligations under contracts with the Federal
government . . . ." *Id.*

86.     A declaration as to whether the Connecticut Disclosures Statutes are preempted
under federal law by the doctrine of field preemption is needed to clarify and settle PHEAA's
obligation with respect to production of the Documents, and will afford relief to PHEAA from
the uncertainty, insecurity, and controversy caused by the conflicting state and federal
governmental directives giving rise to this proceeding.

87.     Therefore, PHEAA is entitled to a judicial determination pursuant to 28 U.S.C.
§ 2201 and Fed. R. Civ. P. 57 as to whether (1) federal law preempts the Connecticut Disclosure
Statutes under the doctrine of field preemption; (2) the State Defendants have the power and
authority to enforce the Connecticut Disclosure Statutes and to revoke PHEAA's license to

19

service student loans because of PHEAA"s compliance with ED's directive not to produce the

Documents; and (3) the Federal Defendants have the power and authority to direct PHEAA not

to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or

retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes.

88.     PHEAA is further entitled to permanent injunctive relief against the State

Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure

compliance with the Court's declaration as to the applicability of state and federal law.

**COUNT THREE**
**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201 *et seq.***
**(CONFLICT PREEMPTION)**
**(All Defendants)**

89.     Paragraphs 1 through 88 are incorporated by reference as if fully set forth herein.

90.     An actual and justiciable controversy presently exists concerning whether the

Connecticut Disclosure Statutes are preempted by federal law under a theory of conflict

preemption or, conversely, if ED cannot prohibit disclosure of the Documents because federal

law does not preempt the Connecticut Disclosure Statutes.

91.     Conflict preemption occurs when a state law "stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l*

*Foreign Trade Council*, 530 U.S. 363, 373 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67

(1941)); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("'[T]he purpose of

Congress is the ultimate touch-stone' in every pre-emption case.") (quoting *Cipollone v. Liggett*

*Group*, 505 U.S. 504, 516 (1992)).  An obstacle occurs when a state law would directly conflict

with federal law or would "undermine [its] goals and policies." *Volt Info. Scis. v. Bd. of Trs.*,

489 U.S. 468, 477–78 (1989).

92.     In determining whether a conflict exists, the Court gives weight to an agency's

determination of Congressional objectives.  *See, e.g.*, *Brannan v. United Student Aid Funds, Inc.*,

94 F.3d 1260, 1264 (9th Cir. 1996) ("Because Congress has delegated to the Secretary its

authority to implement the provisions of the HEA, the Secretary is uniquely qualified to

determine whether a particular form of state law stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress, . . . and therefore, whether it should be

preempted.") (alteration in original) (internal quotation marks omitted) (quoting *Medtronic*, 518

U.S. at 496).

93.     In its Preemption Notice, ED provided a list of examples of state laws and

regulations covering the Direct Loan Program that it believes conflict with the HEA.  That list

included state laws requiring licensees, among other things, to submit to investigations and

audits by state authorities, as well as state laws that undermine Congress's goal of saving

taxpayer dollars in administering the Direct Loan Program, such as through disclosure and

annual reporting requirements.  83 Fed. Reg. at 10620–21.

94.     Here, the Connecticut Disclosure Statutes purport to require servicers to make

records available to the State Defendants, in some circumstances within five business days after

the Commissioner's official request.  These requirements represent a potential conflict with

federal law as set forth in the ED Memorandum.  Furthermore, ED has already prohibited

PHEAA from providing the requested Documents and ED has likewise refused to produce those

Documents directly to the State Defendants.

95.     In other words, not only is it impossible for PHEAA to comply with both federal

and state law, there is also an impasse between the State Defendants and Federal Defendants

regarding which conflicting law takes precedence.  *See Freightliner Corp. v. Myrick*, 514 U.S.

280, 287 (1995) (explaining that under conflict preemption, "a federal statute implicitly overrides state law . . . when state law is in actual conflict with federal law" when it is "impossible for a private party to comply with both state and federal requirements") (quoting *English Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)).

96.     A declaration as to whether the Connecticut Disclosures Statutes are preempted under federal law by the doctrine of conflict preemption is needed to clarify and settle PHEAA's obligation with respect to production of the Documents, and will afford relief to PHEAA from the uncertainty, insecurity, and controversy caused by the conflicting state and federal governmental directives giving rise to this proceeding.

97.     Therefore, PHEAA is entitled to a judicial determination pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 as to whether (1) federal law preempts the Connecticut Disclosure Statutes under the doctrine of conflict preemption; (2) the State Defendants have the power and authority to enforce the Connecticut Disclosure Statutes and to revoke PHEAA's license to service student loans because of PHEAA"s compliance with ED's directive not to produce the Documents; and (3) the Federal Defendants have the power and authority to direct PHEAA not to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes.

98.     PHEAA is further entitled to permanent injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law.

### PRAYER FOR RELIEF FOR COUNTS TWO AND THREE

WHEREFORE, PHEAA demands:

(a)     A declaratory judgment that either: (i) federal law preempts the Connecticut Disclosure Statutes under which the State Defendants threaten to revoke PHEAA's license to service

student loans in Connecticut; or (ii) that the Federal Defendants' prohibition on

PHEAA's production of the Documents is not proper and that PHEAA is permitted to

respond to the State Defendants' request for the Documents without any penalty or

adverse action by the Federal Defendants;

(b)     Permanent injunctive relief against the State Defendants or Federal Defendants insofar as

such relief is necessary and proper to ensure compliance with the Court's declaration as

to the applicability of state and federal law; and

(c)     Such other relief as the Court deems just, proper, and equitable.


Dated:  October 1, 2018              /s/ Thomas F. Burke
                                     John C. Grugan (admitted *pro hac vice*)
                                       gruganj@ballardspahr.com
                                     Burt M. Rublin (*admitted pro hac vice*)
                                       rublinb@ballardspahr.com
                                     Thomas F. Burke (*admitted pro hac vice*)
                                       burket@ballardspahr.com
                                     Eleanor Bradley Huyett (*admitted pro hac vice*)
                                       bradleyem@ballardspahr.com
                                     **BALLARD SPAHR LLP**
                                     1735 Market Street, 51st Floor
                                     Philadelphia, PA 19103
                                     Telephone: (215) 665-8500
                                     Facsimile: (215) 864-8999


                                     David A. Schulz (CT #439467)
                                     schulzd@ballardspahr.com
                                     **BALLARD SPAHR LLP**
                                     1675 Broadway, 19th Floor
                                     New York, NY 10019
                                     Telephone: (212) 850-6103
                                     Facsimile: (212) 223-1942

*Attorneys for Plaintiff Pennsylvania Higher
Education Assistance Agency*

## CERTIFICATE OF SERVICE

I, Thomas Burke, hereby certify that I caused a true and correct copy of the foregoing

Amended Complaint for Interpleader and Declaratory and Injunctive Relief to be served on the

following *via the Court's CM/ECF system*:

James W. Caley
Office of the Attorney General--Sherman
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105
860-808-5450
Email: james.caley@ct.gov

John Langmaid
Office of the Attorney General - Elm Htfd
Employment Rights Department
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
860-808-5270
Email: john.langmaid@ct.gov

Joseph J. Chambers
State of Connecticut, Office of the Attorney
General
55 Elm Street
PO Box 120
Hartford, CT 06141
860-808-5270
Email: joseph.chambers@ct.gov

*Attorneys for Defendants Jorge L. Perez and*
*Connecticut Department of Banking*

Rebecca Kopplin
Department of Justice
20 Massachusetts Ave NW
Washington, DC 20001
202-514-3951
Email: rebecca.m.kopplin@usdoj.gov

Vanessa Roberts Avery
U. S. Attorney's Office-CT
157 Church Street
24th Floor
New Haven, CT 06519
203-821-3700
Email: vanessa.avery@usdoj.gov

*Attorneys for Defendants Betsy DeVos and*
*United States Department of Education*

Dated: October 1, 2018

/s/ Thomas F. Burke
Thomas F. Burke, Esq.