# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, | |
| Plaintiff, | Civil Action No. 1:18-cv-1114 (MPS) |
| v. | |
| JORGE L. PEREZ, in his official capacity as Commissioner of the Connecticut Department of Banking, | |
| CONNECTICUT DEPARTMENT OF BANKING, | |
| BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education, | |
| and | |
| UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendants. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

## INTRODUCTION

Plaintiff Pennsylvania Higher Education Assistance Agency ("PHEAA") seeks to compel the joinder of the United States Department of Education ("Education") through a claim of interpleader. However, interpleader's purpose is to fairly and efficiently resolve insurance disputes or cases where multiple parties lay claim to a single fund of money or property. Because the dispute at issue here is far afield from the purpose of interpleader,

and because PHEAA fails to meet the basic requirements of an interpleader claim against Education, the interpleader claim should be dismissed.

PHEAA's remaining claims for declaratory judgment also fail, as they do not identify a valid cause of action, nor does PHEAA have standing to bring a claim against Education.  The Amended Complaint's claims against Education should accordingly be dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Connecticut laws at the center of this case regulate student loan servicers that service the loans of Connecticut borrowers.  *See generally* Conn. Gen. Stat. Ann. § 36a-847 (West 2016) *et seq*.  Unless an exception applies, servicers must obtain a license from the Connecticut Department of Banking.  Conn. Gen. Stat. Ann. § 36a-847(a).  Licensed servicers must comply with various provisions, including making records available to the Connecticut Department of Banking.  Conn. Gen. Stat. Ann. § 36a-849, 36a-851 (West 2016).  PHEAA takes issue with several of these provisions, which it identifies as the "Connecticut Disclosure Statutes."  Amended Complaint ("Am. Compl.") ¶ 47, ECF No. 34.

PHEAA is a student loan servicer.  Under the Higher Education Act, 20 U.S.C. § 1087 *et seq.*, Education contracts with third-party servicers, including PHEAA, to service federal student loans.  Am. Compl. ¶¶ 21-23.  PHEAA services student loans in Connecticut, *id*. ¶ 29, and is licensed as a servicer by Connecticut, *id*. ¶ 24.

PHEAA brings suit against the Connecticut Department of Banking, its director (collectively, "Connecticut Defendants"), and Education.  According to the Amended Complaint, Connecticut requested information from PHEAA pursuant to the Connecticut

Disclosure Statutes.  *Id.*  ¶¶ 32-34.  In accordance with federal law and its contract with Education, PHEAA refused to disclose the information absent authorization from Education.  *Id.* ¶ 42; *see also id.* ¶¶ 51-53 (stating that Education's office of Federal Student Aid sent a letter to PHEAA and the Connecticut Defendants reiterating that the requested records belong to the federal government, and that PHEAA's contract prohibited PHEAA from releasing the records without authorization from the federal government).  The Connecticut Defendants threatened to revoke PHEAA's license and take other action based on PHEAA's refusal to disclose the information.  Am. Compl. ¶ 48.

The Amended Complaint, setting forth the above allegations, represents PHEAA's third attempt to initiate legal action concerning this matter.  PHEAA first filed suit in the District Court for the District of Columbia.  There PHEAA brought claims for "declaratory relief" and "injunctive relief" against Connecticut and Education on the same set of facts described above.  *See PHEAA v. Perez, et al.* (18-cv-770 D.D.C.), ECF No. 1.  However, before any defendant answered or otherwise responded, PHEAA voluntarily dismissed that action without prejudice.  *Id.*, ECF No. 19.

PHEAA then filed its second complaint on this matter, and the first in this Court. *See* Complaint ("Compl."), ECF No. 1.  In that action, PHEAA brought three claims seeking declaratory judgment on the grounds of field preemption, Compl. ¶¶ 57-67; conflict preemption, Compl. ¶¶ 68-77; and express preemption, Compl. ¶¶ 78-86. Education moved to dismiss, pointing out that, while federal law likely preempted Connecticut's laws, its participation as a defendant was not necessary in order to accord PHEAA complete relief, and that PHEAA had not alleged a colorable cause of action against Education, among other arguments.  *See* ECF No. 31.

PHEAA did not respond to the motion and instead amended its Complaint.  Count one of the Amended Complaint alleges that "PHEAA is faced with competing claims by state and federal governmental entities concerning access to the same Documents," Am. Compl. ¶ 67, and that as a consequence, the Court should require Connecticut and Education, as "Interpleader Defendants [to] interplead and settle all claims between themselves concerning the production of the Documents[.]"  *Id*. ¶ 77.

PHEAA also maintained its causes of action for declaratory judgment pursuant to claims of field preemption, Am. Comp. ¶¶ 79-88, and conflict preemption, *id*. ¶¶ 90-98. Count two argues that federal law has preempted the field in which the Connecticut Disclosure Statutes seek to operate.  Am. Compl. ¶¶ 79-88.  Count three contends that conflicts with federal law preempt the Connecticut Disclosure Statutes.  Am. Compl. ¶¶ 90-98.   In each of these claims PHEAA also recites that it is "entitled to a judicial determination . . . as to whether . . . the Federal Defendants have the power and authority to direct PHEAA not to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes."  Am. Compl. ¶¶ 87, 97.

## <u>STANDARD OF REVIEW</u>

Education moves herein for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, pursuant to Rule 12(b)(6).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject

matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

In addition, "[t]o survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## **ARGUMENT**

In its Amended Complaint, PHEAA improperly attempts to use interpleader to force the joinder of Education. A procedure designed to prevent double liability against the holder of a fund or other property, interpleader is wholly inapplicable to PHEAA's legal dispute with Connecticut. PHEAA can show neither a threat of double liability on a single obligation, nor adverse claimants to the same fund or property. Education is unaware of a single instance in which the United States, or indeed any party, was forced to interplead simply because a private dispute involved a question of preemption under federal law. Indeed, "interpleader is not a 'bill of peace' or legal vacuum cleaner intended to suck up all related claims into a single proceeding." Richard D. Freer, 4 *Moore's Fed. Prac.* – Civil § 22.02[1] (2018).

PHEAA's remaining claims for declaratory judgment also do not have merit, as they fail to state a cause of action against Education, and PHEAA lacks standing to bring any such claim. To be sure, the federal government may wish to provide its views on the

preemption question, but it can do so by filing a Statement of Interest without participating as a party, as it often does.  *See* 28 U.S.C. § 517.  There being no legitimate basis for Education's presence in this case as a defendant, it should be dismissed.

## I.  Use of Interpleader in this Action is Inappropriate.

PHEAA's dispute with Connecticut is not the type of case for which interpleader was designed.  Thus, PHEAA's attempt to invoke interpleader here should be rejected, and the interpleader claim against Education dismissed.

"Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund."  *Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993).  Before a court can reach the merits of an interpleader claim, the plaintiff has the burden to demonstrate that an "interpleader action is appropriate and the stakeholder is entitled to bring the action[.]"  *See Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 177–78 (S.D.N.Y. 2002); Charles Alan Wright & Arthur R. Miller, 7 Fed. Prac. & Proc. Civ.  § 1714, at 626 (3d ed. 2018).

The "classic situation" involving an interpleader action is an insurance dispute wherein an insurer is "faced with conflicting but mutually exclusive claims to a policy[.]"  *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534 nn.15-16 (1967).  In such a circumstance, interpleader forces the competing claimants to enter the case as defendants, and enables the court to determine, in one case, which claimant or claimants should receive the fund.  *See Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 144 (2d Cir. 1988) (discussing interpleader action wherein the court must "determine which of two parties has priority with respect to the interpleader fund").

In federal court, the procedure of interpleader may be invoked in two ways.  A plaintiff may bring an action pursuant to the federal interpleader statute, 28 U.S.C. § 1335, or it may invoke interpleader pursuant to Federal Rule of Civil Procedure 22.  "The primary distinction between the two lies in their jurisdictional prerequisites."  *Am. Family Mut. Ins. Co. v. Roche*, 830 F. Supp. 1241, 1244 (E.D. Wis. 1993).  The interpleader statute requires, among other things, adverse claimants of diverse citizenship, and money or property valued at $500 or more that the stakeholder-plaintiff deposits with the court.  *See* 28 U.S.C. § 1335. Federal Rule of Civil Procedure 22, on the other hand, states in part that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead."  *See* Fed. R. Civ. P. 22.  Interpleader pursuant to Rule 22 ("rule interpleader") thus permits interpleader actions which may not meet the specific conditions of statutory interpleader, but nonetheless satisfy the general requirements applicable in federal court, such as federal question jurisdiction.

Here, likely recognizing that it cannot meet the demands of statutory interpleader, PHEAA cites only Federal Rule of Civil Procedure 22 in support of its interpleader claim. *See* Am. Compl. ¶ 68.  PHEAA is unable, however, to satisfy the requirements for even a rule interpleader claim.  At a minimum, a plaintiff seeking rule interpleader relief must establish (1) that it is threatened with multiple adverse claims to a fund or asset, and (2) that it could be exposed to double or multiple liability on a single obligation.  *See Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995).  PHEAA meets neither requirement. Moreover, allowing PHEAA's novel interpleader action to proceed here would encourage a barrage of claims against the federal government in purely private disputes.  Accordingly, PHEAA's interpleader claim should be dismissed.

### A. PHEAA is Not Threatened by Multiple Adverse Claims Against a Fund or Asset.

PHEAA cannot establish that an interpleader action is appropriate here, first because it is not threatened by two or more adverse claimants to a fund or property. *See Viewhaven, Inc. v. Danon*, No. 85 Civ. 9603 (LLS), 1986 WL 6779, at *2 (S.D.N.Y. June 12, 1986) ("Requisite to the maintenance of an interpleader action is that the stakeholder be subject to multiple adverse claims against a single fund or liability." (citation omitted)).

For an interpleader defendant to constitute a claimant, such a defendant must assert or be able to assert, some claim of ownership over the fund or property at issue. *See United States v. Barry Fischer Law Firm, LLC*, No. 10 Civ. 7997 (TPG), 2011 WL 31545, at *3 (S.D.N.Y. Jan. 5, 2011) ("[T]he purpose of an interpleader action is to allow the stakeholder, the interpleader plaintiff, to establish proper ownership of some property in order to avoid future vexations."); 28 U.S.C. § 1335 (defining "adverse claimants" in relevant part as those who are or may "claim to be entitled to such money or property, or to any one or more of the benefits" arising from a financial instrument or other obligation). The text of Rule 22 itself incorporates this requirement, stating that any interpleader dispute must concern ownership of property. *See* Fed. R. Civ. P. 22(a)(1)(A) (stating that joinder is proper even where the "claims of the several claimants, *or the titles on which their claims depend* lack a common origin" or are adverse) (emphasis added); *see also Metro. Life Ins. Co. v. Jacques*, 396 F. App'x 709, 710 (2d Cir. 2010) (unpublished) ("[A] claimant [in an interpleader action] must succeed in establishing his right to the property by a preponderance of the evidence."); *XL Specialty Ins. Co. v. Lakian*, 243 F. Supp. 3d 434, 440 (S.D.N.Y. 2017) (same); *McEnery v. Gallagher*, No. 93 CIV. 5795, 1996 WL 457297, at *3 (S.D.N.Y. Aug. 14, 1996) (same).

8

Indeed, the disputed "stake" in a proper interpleader suit is generally a fund or financial obligation. *See, e.g., Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 302 (S.D.N.Y. 2012) (explaining that in the "quintessential" interpleader action, "an insurer is faced with rival claims which exceed the amount held in a limited fund"). In the unusual instances where such a defined fund or obligation was absent from an attempted interpleader action, the dispute concerned ownership of a property right that was analogous to such a fund. *See Bankers Tr. Co. v. Mfrs. Nat. Bank of Detroit*, 139 F.R.D. 302, 308 (S.D.N.Y. 1991) (discussing a proposed interpleader action to determine ownership of rights to manage rail cars, which produced income); *Xerox Corp. v. Nashua Corp.*, 314 F. Supp. 1187, 1189 (S.D.N.Y. 1970) (considering an interpleader action to determine the owner of a patent). And, in both of these cases, tellingly, the courts ultimately rejected the invocation of interpleader either because multiple obligations were at issue, *see Bankers Tr. Co.,* 139 F.R.D. at 308, or because conjecture concerning liability in a complex dispute was insufficient to "force parties into costly litigation," *see Xerox*, 314 F. Supp. at 1190.

Accordingly, to institute an interpleader action, a plaintiff must show that two or more defendants have a claim of ownership over the property at issue. PHEAA fails to make such a showing here. The Amended Complaint lacks any claims concerning an ownership dispute between adverse claimants over a funds or financial obligation. Instead, PHEAA appears to argue that certain student loan "documents" constitute the *res*—and whether Connecticut may *access* these documents is the crux of the dispute, not any competing claims of ownership. The amended complaint alleges that Education is the "owner of the Documents," Am. Compl. ¶ 77, and does not allege that Connecticut is the

owner of the any records held by PHEAA (nor is Education aware of any basis for such an allegation).

Indeed, the Amended Complaint avers only that Connecticut seeks to enforce laws mandating that certain records be made "available" for inspection by relevant state authorities. *See* Am. Compl. ¶ 47 (citing Conn. Gen. Stat. §§ 36a-17, 36a-849). Portions of PHEAA's Amended Complaint acknowledge that this case turns on competing "duties," not claims of ownership. *Id.* ¶ 75 ("The Interpleader Defendants seek to impose conflicting duties on PHEAA with respect to the production of the same Documents."). The dispute in this case is accordingly over who must be permitted to *access* the documents, whether Connecticut's laws are preempted by federal law, and whether PHEAA must comply with the terms of its contract with Education—not adverse claimants contesting ownership of property, as interpleader requires.

At bottom, Education is aware of no case in which an interpleader action was permitted in anything like the instant circumstances. And for good reason, interpleader is not "a cure-all for the possibility of multiple lawsuits[.]" *N. Am. Mktg. Corp. v. K. Gronbach & Assocs., Inc.*, 221 F.R.D. 296, 299 (D. Conn. 2002). PHEAA's unprecedented attempt at the expansion of the interpleader device should accordingly be rejected.

**B. PHEAA is Not Exposed to Double or Multiple Liability on a Single Obligation.**

PHEAA also cannot demonstrate a threat of double or multiple liability stemming from a single obligation, as required to sustain an interpleader claim. *See Wash. Elec. Co-op., Inc. v. Paterson*, *Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) (holding that "[u]nder Rule 22, interpleader is proper if the party requesting it 'is or may be exposed to double or multiple liability'" (citation omitted)). Again, understanding the purpose of

interpleader is important context here.  Interpleader is used when two or more parties seek ownership of money or property that is held by a third party.  The third party (the stakeholder) is faced with a legal dilemma: giving the property to either one of the parties will likely lead to a lawsuit by the other party against the stakeholder and the new property owner.  Interpleader is thus designed to protect the stakeholder from multiple lawsuits and multiple liability over the same stake.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 872 (2008) (explaining that the "purpose of interpleader . . . is to prevent a stakeholder from having to pay two or more parties for one claim").

PHEAA does not allege that it is at risk for double or multiple liability, or that such liability stems from a single obligation.  PHEAA alleges that it is "faced with competing claims by state and federal governmental entities concerning access to the same Documents and, should PHEAA disregard either claim, it is susceptible to significant potential liability."  Am. Compl. ¶ 67.  Thus, PHEAA claims that it could face federal penalties for disclosing the sought documents *or* state law penalties for refusing to produce the documents.  Am. Compl. ¶¶ 71, 73.  PHEAA alleges no circumstance in which it could be doubly liable, that is, subject to penalties from *both* Connecticut and the federal government, and at risk of multiple lawsuits.  Thus, absent an allegation of double or multiple liability, PHEAA's interpleader claim should be rejected.  *See Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 487 (S.D.N.Y. 2015) (rejecting claim of interpleader where "[t]here is no such double or multiple liability here").

Further, even if PHEAA could point to a threat of double liability, such a possibility would not arise from a single obligation.  As the Second Circuit has made clear, "protection against 'double or multiple liability' provided by Rule 22 is protection only against double

or multiple liability that is unjustifiable because the plaintiff has but a single obligation." *Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995); *see also Wegmans Food Markets, Inc. v. Ancoma, Inc.*, No. 06-CV-6059L, 2006 WL 931604, at *3 (W.D.N.Y. Apr. 10, 2006) ("[T]he threat of multiple liability must arise from a single obligation or right."). This basic requirement is not met where a plaintiff has "inconsistent duties to separate parties under two separate, but related, agreements, and may . . . breach[] one agreement by complying with duties under the other[.]" *Bankers Tr. Co.*, 139 F.R.D. at 308.

PHEAA concedes in the Amended Complaint that it has no single obligation causing a potential for multiple liability. While there is, in theory, a single set of documents at issue, the crux of PHEAA's alleged problem is the purported "conflicting demands" of Connecticut state law, which compels the disclosure of the records, and federal law and PHEAA's contract with Education, which forbid the disclosure of the records. Am. Compl. ¶¶ 3-4, 6. Thus, even assuming that compliance with state or federal law could be termed "obligations" for purposes of interpleader, PHEAA avers that it cannot comply with multiple, conflicting obligations to multiple parties. Yet, "[i]nterpleader is designed to prevent multiple recoveries only where there are not multiple obligations; it is not intended to telescope multiple obligations into one." *Bradley,* 44 F.3d at 169. As a result, "this situation does not come within the scope of rule interpleader, [and as a result] the interpleader complaint must be dismissed." *Bankers Tr. Co.*, 139 F.R.D. at 308.

### C. Permitting PHEAA's Interpleader Action Could Compel the United States into Litigation Whenever a Private Plaintiff Raises a Preemption Defense.

Not only is PHEAA's novel interpleader claim fatally defective, for the reasons discussed above, but to the extent that PHEAA invites the Court to undertake a dramatic

renovation of interpleader doctrine, such a move would be unwise and would enable future plaintiffs to coerce the federal government to enter private litigation.

PHEAA's instant dispute with Connecticut is a common one, wherein a plaintiff argues that it cannot comply with both state and federal law, and as a consequence, asserts that the relevant state laws are preempted. Private entities consistently litigate such claims without the federal government entering the case as a defendant. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 563 (2009) (pharmaceutical company argued preemption on grounds that "it would have been impossible for it to comply with the state-law duty to modify [drug] labeling without violating federal law"); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 97 (2d Cir. 2013) (energy company argued that state law jury verdict, barring the use of a gasoline additive, was preempted by federal law requiring the additive). There is no reason why that course of action cannot be followed in this matter.

Moreover, the availability of an adequate remedy by litigating against Connecticut is itself a reason why the Court should refrain from exercising its equitable powers here. "[I]t is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable." *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see also Commerce & Indus. Ins. Co. v. Cablewave Ltd.*, 412 F. Supp. 204, 206–07 (S.D.N.Y. 1976) ("[I]nterpleader relief may be denied if there is an adequate remedy elsewhere.").

As far as Education can tell, no plaintiff has even attempted interpleading the federal government to assert preemption defenses on its behalf. To the contrary, interpleader actions citing federal question jurisdiction are themselves a "rarity," and have

only been permitted in limited contexts, such as where a claim is brought by an ERISA fiduciary. *See Metro Life Ins. Co. v. Price*, 501 F.3d 271, 275-76 (3d Cir. 2007). Should PHEAA's novel use of interpleader be allowed to proceed, litigants would have a powerful incentive to interplead the United States into their private disputes, so long as a potential preemption argument existed. In such cases, just as here, private plaintiffs would throw up their hands, claim no interest in the outcome of the action, and instead demand that the federal government litigate the preemption question. The shield of interpleader would thereby become a bludgeon, forcing the federal government to expend time and resources litigating private disputes, while removing the government's discretion as to when and where to participate in litigation. Use of interpleader in this manner goes far beyond its narrow purpose, adjudicating adverse claims to money or other assets, and should not be permitted here.

In sum, as the Supreme Court made clear over fifty years ago, interpleader "cannot be used to solve all the vexing problems of multiparty litigation" and was never intended "to be an all-purpose bill of peace." *See State Farm Fire & Cas. Co.*, 386 U.S. at 533, 535. Rather, "this device is proper only for cases involving adverse claims to a single stake." *Moore's Federal Practice* at § 22.02[1][d]. This Court should therefore look with disfavor upon PHEAA's request for a broad expansion of existing applications of interpleader. As explained above, there are no adverse claims and no stake of money or assets here, nor anything comparable. "As a result, 'it is not . . . for the Court to redesign the interpleader rule in order for it to accommodate this unusual lawsuit.'" *CF 135 Flat LLC v. Triadou SPV S.A.*, No. 15-CV-5345 (AJN), 2016 WL 1109092, at *5 (S.D.N.Y. Mar. 18, 2016) (internal brackets omitted). PHEAA's interpleader claim should accordingly be dismissed.

## II.     PHEAA's Remaining Claims Against Education Should be Dismissed.

Without its novel interpleader claim, PHEAA is left only with two Declaratory Judgment claims.  Those claims are substantially similar to the claims in PHEAA's original complaint, which Education moved to dismiss, and Education therefore reasserts those arguments here.

PHEAA's main request for declaratory relief in both claims—that the Court declare whether "federal law preempts the Connecticut Disclosure statutes" Am. Compl. ¶¶ 87, 97—does not run against Education or otherwise require Education's participation as a defendant.  Indeed, its Declaratory Judgment claims, PHEAA fails to identify a cause of action against Education or provide any explanation as to why this Court should release it from its acknowledged duties under its contract.  In contrast, PHEAA offers many well-founded reasons as to why it need not comply with the Connecticut Disclosure Statutes, which are preempted by a variety of sources of federal law.  Education must therefore be dropped from this case pursuant to Rules 12(b)(1) and 12(b)(6) because PHEAA identifies no cause of action for its claims against Education, could not raise a claim under the Administrative Procedure Act  ("APA"), and lacks standing.  *Cf.* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

### A.  The Declaratory Relief that PHEAA Seeks—a Finding that the Connecticut Disclosure Statutes are Preempted—Does Not Run Against Education or Require Education's Participation.

PHEAA may obtain all of the relief that it seeks through a ruling by this Court that the Connecticut Disclosure Statutes are preempted.  Such a ruling would not run against Education at all, and there is no reason that Education's participation as a defendant would be necessary.  *Cf. Otero v. N.Y.C. Hous. Auth.*, 484 F.2d 1122, 1130 n.11 (2d Cir. 1973) (noting that where "full relief could be afforded plaintiffs through an injunction against the

[state defendant], and no claim was made of affirmative discriminatory action on HUD's part, the complaint against the federal defendants should be dismissed").

As noted above, in the ordinary course, a private party contending that federal law preempts state law simply brings suit against the relevant state officials or agencies; the presence of a federal party is not required. *See, e.g.*, *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288 (2016) (utility companies sued state officials, arguing that the Federal Power Act preempted state regulatory programs; the United States opted to participate as *amicus curiae*); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) (nonprofit sued state officials, arguing that federal sanctions on Burma preempted the state's law regulating commerce with Burma); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) (trade association sued state agency, arguing that the Occupational Safety and Health Act preempted state licensing schemes for certain laborers). While the government is certainly able to provide a statement of interest to provide its perspective on such litigation, it need not participate as a defendant. *See* 28 U.S.C. § 517 ("The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States.").

Indeed, the United States recently filed a Statement of Interest in a similar case involving analogous provisions of D.C. law. Statement of Interest of the United States ("D.C. Statement of Interest") at 10-14, *Student Loan Servicing All. v. Taylor*, No. 18-cv-640 (D.D.C. Aug. 24, 2018), ECF No. 20. As it did there, the government would likely argue here that Connecticut's regulation of federal student loan servicing violates the

Supremacy Clause, seeks to regulate areas "involving uniquely federal interests," and impedes the accomplishment and execution of the full purposes and objectives of federal law. U.S. Const. art. VI, cl. 2; *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 507 (1988). It is well established that states may not attempt to control the federal government's selection of contractors through the imposition of a licensing requirement. *Compare* Conn. Gen. Stat. Ann. § 36a-847, *as amended*, Conn. Legis. Serv. P.A. 18-173 (H.B. 5490) (West 2018) (requiring that student loan servicers obtain a state license and meet various eligibility requirements), *with Sperry v. Florida ex rel. The Fla. Bar*, 373 U.S. 379, 385 (1963) ("State[s] may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.'" (quoting *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (footnotes omitted))). In addition, the Connecticut Disclosure Statutes purport to require servicers to release information that federal law and Education's contracts require be kept confidential absent authorization from Education. *See generally* Conn. Gen. Stat. Ann. § 36a-17, *as amended*, Conn. Legis. Serv. P.A. 18-173 (H.B. 5490) (West 2018) (requiring disclosures in accordance with Connecticut's investigations); *cf.* D.C. Statement of Interest at 18-22 (addressing similar provisions of D.C. law).

The Court can consider these and other arguments from the government, as well as arguments made by PHEAA and Connecticut, and rule on the preemption question, all

without Education being in the case as a defendant.  Given the lack of viable claims asserted against Education, that is the proper course.

**B. PHEAA's Purported Claims Against Education Fail for Several Reasons.**

In addition to its interpleader claim, PHEAA purports to raise two claims for Declaratory Judgment against Education.  Although PHEAA's claims are subtitled "Field Preemption," and "Conflict Preemption," PHEAA does not appear to argue that any action by Education is preempted by either field or conflict preemption.  Am. Compl. at 18, 20. Instead, PHEAA recites twice that it is "entitled to a judicial determination . . . as to whether . . . the Federal Defendants have the power and authority to direct PHEAA not to comply with the Connecticut Disclosure Statutes, and to take regulatory, disciplinary, or retaliatory action in the event that PHEAA complies with the Connecticut Disclosure Statutes."  *Id.* ¶¶ 87, 97.  This statement suffers from many flaws, chief among them that it identifies no cause of action or reason to believe that any action by Education would be wrongful.

1. PHEAA Fails to Identify a Cause of Action for Its Claims Against Education.

The claims for declaratory judgment against Education should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), because PHEAA fails to set forth a valid legal cause of action against Education.  "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.' . . .  A necessary prerequisite to the exercise of judicial power, then, is the presence before a court of a claim of substantive right.  In other words, the plaintiff's complaint must allege a substantive claim that triggers the court's adjudicative function." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (quoting *Valley*

18

*Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).  Absent a substantive legal claim set forth in the Complaint, this Court lacks subject matter jurisdiction over the action.

PHEAA purports to set forth two legal claims against Education and Connecticut for "Declaratory Judgment."  Am. Compl. at 18, 20.  As to Connecticut, PHEAA explains at length how the Connecticut Disclosure Statutes are preempted by federal law.  Yet as to Education, PHEAA does not articulate in any way how the actions it believes Education will take would be wrongful, improper, or in violation of any law.  The Declaratory Judgment Act, 28 U.S.C. § 2201, does not by itself provide a basis for judicial review, but instead merely expands the remedies available in an otherwise proper civil action.  As the Supreme Court has said, the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).  The Second Circuit has reiterated that the Declaratory Judgment Act does not "provide an independent cause of action.  Its operation is procedural only—to provide a form of relief previously unavailable." *In re Asbestos Litig.*, 14 F.3d at 731; *see also Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) (same); *Warner-Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184, 186-87 (2d Cir. 1977) ("The Declaratory Judgment Act . . . does not independently create federal jurisdiction.").

Courts in this circuit uniformly hold that a legal claim for declaratory judgment does not constitute a valid "independent cause of action," and that such purported claims must be dismissed. *See Inclusion First, LLC v. Macy*, No. 3:14-CV-1786, 2015 WL 8476329, at *8 (D. Conn. Sept. 23, 2015); *see also Vaden v. Connecticut*, 557 F. Supp. 2d 279, 283 (D. Conn. 2008) (dismissing a claim for "declaratory relief under the Declaratory

Judgment Act" because the claim is "not predicated on any underlying cause of action");

*KM Enterprises, Inc. v. McDonald*, No. 11-CV-5098, 2012 WL 4472010, at *19 (E.D.N.Y.

Sept. 25, 2012) (dismissing "cause of action for declaratory relief" because "Plaintiff has

no independent substantive claim of a right to this relief").[1]  Here, with the exception of

the improper interpleader claim, the only legal claims set forth in the Complaint are for

"declaratory judgment," and PHEAA thus fails to provide a cause of action against

Education over which this Court could exercise subject matter jurisdiction.  Nor does

PHEAA plead any theory explaining *why* Education does not have the power to act in

accordance with its contract.  Accordingly, the putative claims against Education should

be dismissed.

 2. Even if PHEAA Had Alleged a Legal Claim Under the APA, it Would
 Fail.

Although PHEAA failed to plead a cognizable legal claim in conjunction with its

sought declaratory relief, any plausible claim that could be alleged against Education here

would fail.  In its Amended Complaint, PHEAA briefly invokes the APA, 5 U.S.C. § 702,

noting that a litigant may obtain judicial review of certain federal agency actions.  Am.

---

[1] *KM Enterprises* and *Inclusion First* dismissed claims for declaratory relief for failure to state a claim pursuant to Rule 12(b)(6). Here, of course, PHEAA also fails to state a claim against Education because PHEAA has not pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "However, granting a dismissal for failure to state a claim upon which relief can be granted presupposes that there is some claim that can be said to be legally deficient.  In the present matter, the question is not whether the complaint's claim is legally cognizable, but whether the complaint makes a claim at all." *In re Asbestos Litig.*, 14 F.3d at 733.  Where a complaint asserts only an entitlement to declaratory relief, without a legal claim, dismissal for lack of subject matter jurisdiction is warranted.  *Id.*  In any event, regardless of whether this Court evaluates PHEAA's Complaint under Rule 12(b)(1) or Rule 12(b)(6), Education should be dismissed as a defendant.

Compl. ¶ 19.  But PHEAA could not succeed on any APA claim, because 5 U.S.C. § 704 authorizes judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."  As an initial matter, PHEAA fails to identify any final agency action at issue here, and none is apparent on the face of the Amended Complaint.

More significantly, PHEAA has an adequate alternative remedy to obtain the relief sought here.  PHEAA could proceed in this suit against Connecticut alone to obtain a declaratory judgment that Connecticut's disclosure laws and regulations are preempted. *See Sherman v. Black*, 315 F. App'x 347, 349 (2d Cir. 2009) (unpublished) (holding that a plaintiff was precluded from bringing claim under APA in case against U.S. Department of Education, where the plaintiff could file a discrimination lawsuit against a private defendant); *Murray v. Lakeland Cent. Sch. Dist. Bd. of Educ.*, No. 16-CV-6795, 2017 WL 4286658, at *7 (S.D.N.Y. Sept. 26, 2017) (same).  It is well established that APA review is barred where a plaintiff can get relief by suing another defendant, even when the alternative defendant is already named in the same case.  *See Niagara Mohawk Power Corp. v. FERC*, 306 F.3d 1264, 1268-69 (2d Cir. 2002) (the plaintiff could not maintain APA claim against FERC because the plaintiff's claims against a state agency in same lawsuit provided an adequate alternative legal remedy); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11-cv-846, 2012 WL 1940845, at *6 (E.D.N.Y. May 29, 2012) (the plaintiff could not maintain APA claim against HUD because the plaintiff's claims against a local agency and non-profit in same lawsuit provided an adequate alternative legal remedy).  Success in such a suit against Connecticut would entirely remedy PHEAA's alleged injuries by permitting it to continue servicing loans in accordance with federal law

and its contracts.  Indeed, PHEAA was able to maintain the status quo during the pendency of this litigation and continue its servicing activities by getting Connecticut to forbear from suspending its license—without requiring any forbearance from Education.  *See* Am. Compl. ¶ 55.  Given the availability of an alternate adequate remedy, and the lack of a final agency action, no APA claim is cognizable here.[2]

### 3.  PHEAA Lacks Standing for Its Claims Against Education.

In addition, the claims for declaratory relief should be dismissed for lack of subject matter jurisdiction because PHEAA lacks standing to raise any claims against Education. The jurisdiction of federal courts is limited to actual cases or controversies between proper litigants with standing to sue.  U.S. Const. art. III, § 2 cl. 1; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "[S]tanding is not dispensed in gross."  *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  Instead, a plaintiff must separately demonstrate standing with respect to each claim and against each defendant.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63, 65-66 (2d Cir. 2012).  The plaintiff must therefore show a concrete and particularized injury, that its injury is "'fairly . . . trace[able] to the challenged action'" of each defendant, and that the relief

---

[2] For the same reasons that PHEAA cannot state an APA claim, Plaintiff has also failed to allege a sufficient waiver of the federal government's sovereign immunity.  *See Infante v. Drug Enf't Admin.*, 938 F. Supp. 1149, 1154 (E.D.N.Y. 1996) ("While 5 U.S.C. § 702 waives sovereign immunity for agency actions, sections 701 and 704 limit the terms of that waiver.").  Nor is sovereign immunity waived by 20 U.S.C. § 1082(a)(2), also cited by PHEAA.  Am. Compl. ¶ 19.  That provision authorizes certain lawsuits against Education but "expressly prohibits injunctive relief except where the Secretary of Education exercises powers that are clearly outside his statutory authority."  *Shabtai v. U.S. Dep't of Educ.*, No. 02 Civ. 8437 (LAP), 2003 WL 21983025, at *7 (S.D.N.Y. Aug. 20, 2003).  The relief that PHEAA seeks against Education is a "permanent injuncti[on]," Am. Compl. ¶¶ 88, 98, yet there is no allegation that the Secretary has acted outside governing statutory authority.

sought is likely to provide redress.  *Lujan*, 504 U.S. at 560 (ellipsis and alteration in original).  These requirements set forth the "irreducible constitutional minimum" of standing, and its absence defeats subject matter jurisdiction.  *Id*. at 560-61.  Here, therefore, PHEAA must demonstrate that it has an injury that is fairly traceable to a challenged action by Education.  PHEAA cannot do so.

Though PHEAA does not identify the actual or threatened injuries which provide it standing to seek declaratory judgment, the most obvious candidates are clearly caused by Connecticut; PHEAA relies on actual or threatened injuries from actions by Connecticut, not Education.  *See, e.g.*, Am. Compl. ¶ 48 (noting that Connecticut threatened to revoke PHEAA's license and initiate proceedings that could result in civil penalties of up to $100,000).  Nor does Education's decision to decline to authorize the release of borrower records place it on the hook for these potential enforcement actions by Connecticut.  A plaintiff's injury is not fairly traceable to a defendant's action if the injury was "th[e] result [of] the independent action of some third party" and the defendant's action did not have a "determinative or coercive effect upon the action of" that third party.  *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (alterations in original) (emphasis omitted) (citation omitted).  Thus, "causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation."  *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010).

In this case, Connecticut has not been influenced, let alone coerced, by Education into threatening PHEAA.  There is no allegation that Connecticut was influenced by Education or the federal government to enact the Connecticut Disclosure Statutes.  Nor has Education somehow required Connecticut to enforce its laws against PHEAA.  PHEAA

thus lacks standing to sue Education based on its concerns about enforcement actions taken by Connecticut.  *Accord Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 515 (D.D.C. 2005) (holding that, because "it is not the allegedly unlawful conduct of the federal defendants but that of the State of South Carolina that allegedly caused injury to plaintiffs," "there is no subject matter jurisdiction . . . with respect to the federal defendants").

Nor does PHEAA's vague suggestion that, if PHEAA releases borrower information in violation of its contract, Education may eventually pursue unspecified "civil or criminal penalties for violation of the Privacy Act, could terminate PHEAA's contract, or could seek other penalties," Am. Compl. ¶ 73, suffice to demonstrate standing.  That is because PHEAA offers no basis to believe that it will violate its contract, which could lead to Education taking action against it.  Where PHEAA cannot even specify whether such harm could occur, or what form it would take, this "*future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (citation omitted).  Furthermore, any claims based on this hypothetical future action by Education should be dismissed for lack of ripeness.  Here, any "administrative decision" to retaliate against PHEAA based on PHEAA's future conduct has not been "formalized" and its effects have not been "felt in a concrete way" by PHEAA, and adjudication would thus be premature.  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted).

**C.  To the Extent that PHEAA Seeks to Dispute Its Contract with Education, This Suit Is Not an Appropriate Vehicle.**

As discussed above, PHEAA has not identified a cause of action to support its sought declaratory judgment relief or pled a concrete injury fairly traceable to Education. A further barrier, however, bars the relief PHEAA seeks.  PHEAA requests that this Court

rule on whether Education has "the power and authority to direct PHEAA not to" release information to Connecticut, and "to take regulatory disciplinary, or retaliatory action" if PHEAA violates its contract.  Am. Compl. ¶¶ 87, 97.  Both of these questions would require this Court to interpret—or re-write entirely—PHEAA's contract with Education.  Indeed, PHEAA admits that its contract with Education "requires PHEAA to . . . 'comply with Federal and [Education's] record management policies'" and that it "does not own or control" records relating to individual federal student loan borrowers.  *Id.* ¶¶ 1, 26; *see also id.* ¶ 4 (admitting that "if PHEAA *does* produce the documents to the Connecticut DOB, it will be in violation of both federal law and its Servicing Contract with [Education]").[3] PHEAA thus seeks either a judicial interpretation to let it out of its contract, or a judicial finding that Education cannot enforce its contract.

The Contract Disputes Act, 41 U.S.C. § 7101 *et seq*., sets forth a comprehensive scheme of procedures that a contractor must follow to dispute its contract with the federal government.  To the extent that PHEAA believed that any provision of its contract was impeded by, for example, the action of state law, it could raise that issue through the contract dispute process.   PHEAA does not appear to have followed any of those requirements here.  *See* 41 U.S.C. § 7102 (stating that the requirements apply to all executive branch contracts for services, unless other exceptions apply); 41 U.S.C. § 7103 (requiring contractors to submit claims, in writing, to their contracting officer).   If unsatisfied at the end of that process, the Contract Disputes Act permits contractors to

---

[3] Further demonstrating the centrality of PHEAA's contract with Education here, PHEAA previously attached the contract as an exhibit to the original Complaint.  *See* ECF No. 1-1.

pursue claims for damages through the Court of Federal Claims or the Civilian Board of

Contract Appeals.[4]  41 U.S.C. § 7104; *see generally* 48 C.F.R. § 52.233-1.

## **CONCLUSION**

For the reasons given above, the Court should grant Education's motion to dismiss

the amended complaint and drop Education as a party from this case.


Dated: October 29, 2018                         Respectfully submitted,



                                                JOSEPH H. HUNT
                                                Assistant Attorney General

                                                MARCIA BERMAN
                                                Assistant Branch Director

                                                /s/ Michael Drezner
                                                MICHAEL DREZNER
                                                Trial Attorney (V.A. Bar No. 83836)
                                                REBECCA M. KOPPLIN
                                                Trial Attorney (California Bar No. 313970)
                                                United States Department of Justice
                                                Civil Division, Federal Programs Branch
                                                1100 L. St. NW
                                                Washington, D.C.  20005
                                                Telephone:  (202) 514-4505
                                                Facsimile:  (202) 616-8202
                                                Email: Michael.L.Drezner@usdoj.gov

                                                *Counsel for Federal Defendants*

---

[4] And, even if PHEAA's remedies under the Contract Disputes Act were optional, rather than mandatory, they would foreclose any possible APA suit by PHEAA concerning the interpretation of PHEAA's contract because the APA's review is available only where  the plaintiff has "no other adequate remedy in a court."  5 U.S.C. § 704.