IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 3:18-CV-01114-MPS |
| | : | |
| v. | : | November 30, 2018 |
| | : | |
| JORGE L. PEREZ, COMMISSIONER OF THE CONNECTICUT DEPARTMENT OF BANKING, THE CONNECTICUT DEPARTMENT OF BANKING, BETSY DEVOS, SECRETARY OF THE UNITED STATES DEPARTMENT OF EDUCATION, and THE UNITED STATES DEPARTMENT OF EDUCATION, | : : : : : : : : : | |
| Defendants. | : | |

**PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

I.     Introduction .................................................................................................. 1

II.    Facts ............................................................................................................. 1

    A.    Education's Administration of Federal Student Loans ........................... 1

    B.    The Connecticut DOB Demands Production of Federal Student  Loan
        Records from PHEAA ........................................................................... 3

    C.    Education Memorandum Regarding Preemption of State Regulation of
        Student Loan Servicers ......................................................................... 6

III.   The Governing Standards ............................................................................. 9

IV.    Argument ..................................................................................................... 10

    A.    Interpleader Is an Appropriate Procedural Device to Resolve the
        Competing Claims and Demands Made Upon PHEAA Based Upon Its
        Possession of Federal Student Loan Records ...................................... 10

        1.    Interpleader Is Not Limited to Competing Claims Over  Ownership
            of Funds or Property ................................................................... 11

        2.    The Federal Defendants' "Double or Multiple Liability" Argument
            Is Unfounded ............................................................................. 15

        3.    Allowance of the Interpleader Action Against the Federal
            Defendants Will Not Open the Floodgates ................................. 17

    B.    PHEAA's Declaratory Judgment Claims Are Well Pleaded .............................. 21

        1.    Education Is a Necessary Party Under Rule 19  Due to its Direct
            Involvement in This Dispute ....................................................... 21

        2.    PHEAA's Declaratory Judgment Action Against the Federal
            Defendants Rests on Legally Sufficient Underlying Claims ................... 25

        3.    PHEAA Has Standing to Assert Claims Against the Federal
            Defendants Because It Is Imminently Threatened With Concrete
            and Particularized Injury Under Both Federal and State Law ................. 29

        4.    The Contract Disputes Act Does Not Require Dismissal of
            PHEAA's Claims Against Education Because PHEAA Is Not
            Challenging or Claiming Breach of the Contract ...................................... 32

V.     Conclusion .................................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Labs. v. Gardner*,
 387 U.S. 136 (1967).................................................................................................22

*Almeida v. Holder*,
 588 F.3d 778 (2d Cir. 2009).....................................................................................14

*American Airlines, Inc. v. Block*,
 905 F.2d 12 (2d Cir. 1990).......................................................................................19

*Armstrong v. Exceptional Child Ctr., Inc.*,
 135 S. Ct. 1378 (2015).............................................................................................25

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...................................................................................................9

*Ashton v. Paul*,
 918 F.2d 1065 (2d Cir. 1990)...................................................................................19

*Bankers Trust Co. v. Manufacturers Nat'l Bank*,
 139 F.R.D. 302 (S.D.N.Y. 1991) .......................................................................14, 16

*Bell v. New Jersey*,
 461 U.S. 773 (1983).................................................................................................27

*Bennett v. Spear*,
 520 U.S. 154 (1997).................................................................................................27

*Carter v. HealthPort Techs., LLC*,
 822 F.3d 47 (2d Cir. 2016).........................................................................................9

*Carver v. City of New York*,
 621 F.3d 221 (2d Cir. 2010).....................................................................................31

*CFPB v. Navient Corp.*,
 No. 3:17-cv-101, 2018 U.S. Dist. LEXIS 135481 (M.D. Pa. Aug. 10, 2018) ..........8

*Chae v. SLM Corp.*,
 No. 07-2319 (C.D. Cal.)......................................................................................23, 24

*Chevron Corp. v. Camacho Naranjo*,
 667 F.3d 232 (2d Cir. 2012).....................................................................................26

*Cmwlth. of Pa. v. Navient Corp., et al.*,
No. 3:17-cv-01814 (M.D. Pa. 2017) ........................................................................8

*Firetree, Ltd. v. Norwalk*,
No. 3:17-cv-1088-MPS, 2018 U.S. Dist. LEXIS 156693 (D. Conn. Sept. 14,
2018) ........................................................................................................................10

*Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*,
841 F.3d 133 (2d Cir. 2016) ...................................................................................25

*Gorss Motels, Inc. v. Sysco Guest Supply, LLC*,
No. 3:16-cv-01911-VLB, 2017 U.S. Dist. LEXIS 133488 (D. Conn. Aug. 21,
2017) ........................................................................................................................30

*Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*,
814 F.3d 146 (2d Cir. 2016) ...................................................................................10

*Ins. Co. of the West v. Emp't Dev. Dep't*,
No. 16-248-VAP, 2016 U.S. Dist. LEXIS 73212 (C.D. Cal. May 24, 2016) .........22

*John v. Sotheby's, Inc.*,
141 F.R.D. 29 (S.D.N.Y. 1992) ..............................................................................19

*In re Joint E. & S. Dist. Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993) .....................................................................................26

*Lunney v. United States*,
319 F.3d 550 (2d Cir. 2003) ...................................................................................29

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) .....................................................................................9

*McKenna v. Udall*,
418 F.2d 1171 (D.C. Cir. 1969) ..............................................................................23

*Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc.*,
324 F.3d 20 (1st Cir. 2003) .....................................................................................19

*In re MTBE Products Liability Litigation*,
725 F.3d 65 (2d Cir. 2013) ...............................................................................17, 18

*Navajo Tribe of Indians v. New Mexico*,
809 F.2d 1455 (10th Cir. 1987) ..............................................................................23

*Network Sols., Inc. v. Clue Computing, Inc.*,
946 F. Supp. 858 (D. Colo. 1996) ..........................................................................15

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)................................................................................10

*NRDC, Inc. v. FDA*,
   710 F.3d 71 (2d Cir. 2013)................................................................................30

*Otero v. NYC Housing Auth.*,
   354 F. Supp. 941 (S.D.N.Y. 1973) ..................................................................21

*Otero v. NYC Housing Authority*,
   484 F.2d 1122 (2d Cir. 1973)...........................................................................21

*Shipbuilders Council of Am., Inc. v. U.S. Dep't of Homeland Sec.*,
   481 F. Supp. 2d 550 (E.D. Va. 2007) ..............................................................27

*Sig Sauer, Inc. v. Brandon*,
   826 F.3d 598 (1st Cir. 2016)............................................................................27

*Sotheby's Inc. v. Garcia*,
   802 F. Supp. 1058 (S.D.N.Y. 1992)................................................................19

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016).....................................................................................30

*State Farm Fire & Casualty Co. v. Tashire*,
   386 U.S. 523 (1967).........................................................................................10

*Student Loan Serv. Alliance v. Taylor et al.*,
   No. 1:18-cv-00640, 2018 U.S. Dist. LEXIS 198774 (D.D.C. Nov. 21, 2018) .........................9

*Susan B. Anthony List v. Driehaus*,
   134 S. Ct. 2334 (2014).....................................................................................30

*Two Shields v. Wilkinson*,
   790 F.3d 791 (8th Cir. 2015) ...........................................................................22

*United States v. American Film Institute*,
   79 F.R.D. 374 (D.D.C. 1978)..............................................................12, 13, 14

*Warner-Jenkinson Co. v. Allied Chem. Corp.*,
   567 F.2d 184 (2d Cir. 1977).............................................................................26

*Weisberg v. DOJ*,
   631 F.2d 824 (D.C. Cir. 1980)....................................................................13, 15

*Weizmann Inst. of Sci. v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002).............................................................22

*William Penn Life Ins. Co. v. Viscuso*,
   569 F. Supp. 2d 355 (S.D.N.Y. 2008)...................................................................16

*Wyeth v. Levine*,
   555 U.S. 555 (2009)..............................................................................................17, 18

*Xerox Corp. v. Nashua Corp.*,
   314 F. Supp. 1187 (S.D.N.Y. 1970)......................................................................14

**State Cases**

*Cmwlth. of Mass. v. PHEAA*,
   No. 1784-CV-02682 (Mass. Super. Ct. 2017) .......................................................8

*Indianapolis Newspapers v. Ind. State Lottery Comm'n*,
   739 N.E.2d 144 (Ind. Ct. App. 2000)....................................................................15

*Wash. v. Navient Corp., et al.*,
   No. 17-2-1115-1 SEA (Wash. Super. Ct. 2017) ....................................................8

**Federal Statutes**

5 U.S.C. § 551(13) ........................................................................................................27

5 U.S.C. § 552a(i), (m) ...................................................................................................3

5 U.S.C. § 702 ..........................................................................................................26, 29

5 U.S.C. § 704 ..........................................................................................................27, 29

20 U.S.C. § 1082(a)(2)...................................................................................................29

20 U.S.C. § 1087e(m) ......................................................................................................2

20 U.S.C. § 1087f(a) .......................................................................................................2

**Rules**

Fed. R. Civ. P. 19.....................................................................................21, 22, 23, 24, 25

Fed. R. Civ. P. 22..................................................................................................... *passim*

**Regulations**

34 C.F.R. §§ 685.204, 205, 208, 209, 219 .....................................................................2

83 Fed. Reg. 10619 .....................................................................................................7, 8

**Other Authorities**

7 Charles A. Wright et al., *Federal Practice and Procedure* § 1617 (3d ed. 2001)......................22

7 Charles A. Wright et al., *Federal Practice and Procedure* § 1702 (3d ed. 2001)......................19

7 Charles A. Wright et al., *Federal Practice and Procedure* § 1704 (3d ed. 2001)......................10

## I.    Introduction

This case involves whether Plaintiff Pennsylvania Higher Education Assistance Agency ("PHEAA") must produce federal student loan servicing records that the Connecticut Department of Banking[1] has demanded, and that the United States Department of Education ("Education")—PHEAA's primary regulator and contractual counterparty—has prohibited PHEAA from producing.  In their motion to dismiss, defendants Betsy DeVos and Education (together, the "Federal Defendants") acknowledge the "Catch-22" situation now confronting PHEAA—it may face liability from Education if it proceeds with the production of the requested records, and may face liability from the Connecticut DOB in the event it fails to produce the records.  Education repeatedly has taken the position that the authority of state agencies like the Connecticut DOB to demand documents like those at issue here is preempted by federal law.  Yet, despite all of this, and the Federal Defendants' acknowledgment that "the government is certainly able to provide a statement of interest to provide its perspective on such litigation," (Fed. Defs.' Memo. at 16), the Federal Defendants nevertheless claim that they are not proper parties to this conflict, which has arisen because the records at issue are the subject of competing and irreconcilable claims by Education and the Connecticut DOB.  As set forth below, the Federal Defendants' arguments are unfounded in logic or law, and their motion should be denied.

## II.   Facts

### A.    Education's Administration of Federal Student Loans

Under the Higher Education Act ("HEA"), Pub. L. No. 89-329, 79 Stat. 1219 (1965), and related statutes and regulations, Education has the authority to issue a variety of federal loans and

---

[1]    The State of Connecticut Department of Banking (the "Connecticut DOB") and its Commissioner, Jorge L. Perez, are collectively referred to herein as the "State Defendants."

grants to student borrowers.  Specifically relevant here are loans made under the William D. Ford Federal Direct Loan Program, 20 U.S.C. §§ 1087a *et seq.* ("Direct Loans," or the "Direct Loan Program"), which are issued by the federal government directly to eligible student borrowers, and benefits awarded to Direct Loan borrowers under the Public Service Loan Forgiveness ("PSLF") Program, 20 U.S.C. § 1087e(m).  Education, rather than self-service the Direct Loans it issues, contracts with third-party servicers such as PHEAA to perform that function.  20 U.S.C. § 1087f(a).  Every aspect of the servicing of such loans is highly regulated by Education, including administration of loan repayment generally (34 C.F.R. § 685.208), income-based or income-contingent repayment plans (*id.* § 685.209), deferments and forbearances (*id.* §§ 685.204–05), and borrower benefits such as the PSLF Program (*id.* § 685.219).

In 2009, PHEAA was selected through a competitive process by Education to service federal loans on a national basis.  (Amended Complaint (hereinafter "Complaint" or "Compl.") at ¶ 24).  PHEAA's Contract with Education, which was renewed in 2014, governs PHEAA's servicing of loans owned by Education.  (*Id.*)  In addition to requiring that PHEAA "meet all statutory and legislative requirements," (ECF No. 1-1, Ex. A, Att. A-1, at 3), the Contract specifies 124 enumerated obligations for the servicer, many with dozens of sub-requirements. (*Id*. at 3–18).  Education carefully monitors PHEAA's performance under the Contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices.  (*Id.* at 7).

The Contract also requires PHEAA to comply with strict records management requirements.  Of particular significance here is the requirement to "comply with Federal and [Education] records management policies, including those policies associated with the

safeguarding of records covered by the Privacy Act of 1974." (*Id.*, at Att. A-2, at 11–12).  The Privacy Act of 1974 ("Privacy Act") provides, among other things, that federal contractors who operate a federal system of records, such as PHEAA, are considered employees of a federal agency for purposes of applicability of the Privacy Act's criminal penalties for prohibited disclosure of protected records.  *See* 5 U.S.C. § 552a(i), (m).

### B.     The Connecticut DOB Demands Production of Federal Student Loan Records from PHEAA

PHEAA currently services federal and private student loans for approximately 100,000 borrowers residing in the State of Connecticut.  (Compl. at ¶ 29).  Approximately 80,000 of those borrowers have federal student loans owned by Education.  (*Id.*)  On May 1, 2017, PHEAA applied for a license from the Connecticut DOB to act as a student loan servicer in Connecticut, pursuant to Conn. Gen. Stat. § 36a-847(b).  (*Id.* at ¶ 30).  PHEAA's application was approved on June 30, 2017.  (*Id.*).

Several months later, on November 3, 2017, PHEAA received, via email, a letter from the Connecticut DOB informing PHEAA that it proposed to conduct a limited scope examination of PHEAA in order to "review[] all accounts transferred to [PHEAA] for the months of August, September and October, 2017 as a result of the [PSLF] [P]rogram."  (*Id.* at ¶ 32).  The Connecticut DOB's November 3, 2017 letter included a Student Loan Servicer Management Questionnaire and Information Request (the "Request") directed to PHEAA.  (*Id.* at ¶ 33).  The Request sought, *inter alia*, PHEAA's policies and procedures related to administering the PSLF Program, and also borrower-specific information, including certain borrower complaints.  (*Id.* at ¶ 34).

PHEAA exchanged email correspondence with the Connecticut DOB regarding the scope of the Request on November 7, 2017.  (*Id.* at ¶ 35).  That same day, PHEAA received an email

from Education containing an express directive from Education's Office of Federal Student Aid admonishing PHEAA that it was prohibited under federal law from releasing any data or documentation related to PSLF to the Connecticut DOB.  (*Id.* at ¶ 36).

Two days later, on November 9, 2017, PHEAA sought additional clarification from the Connecticut DOB and requested information regarding the logistics of producing the documents and information requested.  (*Id.* at ¶ 38).  PHEAA also informed the Connecticut DOB of the position taken by Education in its November 7th email and provided contact information for Education officials to whom the Connecticut DOB could send direct requests for production of federal student loan documents.  (*Id.* at ¶ 39).

On January 11, 2018, PHEAA was advised by an Associate Examiner at the Connecticut DOB that, during a telephone conference between Education and the Connecticut DOB, the Connecticut DOB agreed to issue a direct request to Education for documents and data owned by Education and encompassed in the Request.  (*Id.* at ¶¶ 40, 41).  In a letter to the Connecticut DOB that same day, PHEAA memorialized this conversation and stated that PHEAA would "not be providing any responsive documents [or] data that are specific to [Education's Office of Federal Student Aid]."  (*Id.* at ¶ 42).  Accompanying that letter, PHEAA fully produced to the Connecticut DOB certain responses to the Request not implicating the federal prohibition on disclosure of Education's documents, along with all responsive documents and data that were not owned by Education or its Office of Federal Student Aid.  (*Id.* at ¶ 43).

PHEAA received no response from the Connecticut DOB to its January 11, 2018 letter or its accompanying production of information and documents until more than two months later, on March 21, 2018.  (*Id.* at ¶ 45).  On that date, PHEAA received a letter from the Connecticut DOB "formally convey[ing] [its] concerns related to [the proposed] examination [of PHEAA] and

4

provid[ing] PHEAA with an opportunity to show compliance with all lawful requirements for the retention of its student loan servicer license in Connecticut pursuant to Section 4-182(c) of the Connecticut General Statutes."  (*Id.* at ¶ 46).  The letter also asserted that PHEAA had failed to produce "numerous" records sought in the Request in violation of several provisions of Connecticut law (collectively, the "Connecticut Disclosure Statutes"), including Conn. Gen. Stat. §§ 36a-17, 36a-849, and 36a-851.  (*Id.* at ¶ 47).

The Connecticut DOB's March 21 letter stated that PHEAA's failure to produce the federally owned documents "*constitute[s] grounds to revoke PHEAA's student loan servicer license in Connecticut pursuant to Sections 36a-852 and 36a-51 of the Connecticut General Statutes and forms a basis to take other administrative action* as the Commissioner deems appropriate, including, but not limited to, initiation of proceedings to order PHEAA to cease and desist and impose a civil penalty on PHEAA of up to $100,000 per violation."  (*Id.* at ¶ 48) (emphasis added).  The letter concluded by stating that "[p]ursuant to Sections 4-182(c) and 36a-52a [of the Connecticut General Statutes], you are being given an opportunity to show compliance with all lawful requirements for the retention of your student loan servicer license. You must respond . . . in writing no later than April 4, 2018.  If no written response is received by that date or if the [State Defendants] find[] any such response to be insufficient, *the [State Defendants] may issue an administrative action against your license*."  (*Id.* at ¶ 49) (emphasis omitted and added).

Upon information and belief, on January 12, 2018, the Connecticut DOB made a direct request to Education for access to certain records pertaining to federal student loans by Connecticut borrowers that PHEAA services for Education.  (*Id.* at ¶ 44).  On March 26, 2018, Education's Office of the General Counsel denied that request.  (*Id.* at ¶ 50).  A week later, on

April 2, 2018, Education sent a letter to Linda J. Randby, Esq., PHEAA's Interim Senior Vice President of Legal and Compliance Services.  (*Id.* at ¶ 51).  The April 2 Education letter referenced the Connecticut DOB's March 21 letter to PHEAA requesting records, and stated that the records requested by the Connecticut DOB "*belong to the federal government and PHEAA is prohibited from releasing them under its contract with [Education].*" (*Id.* at ¶ 52) (emphasis added).  The April 2 Education letter further stated that "[a] state agency does not have the authority to prohibit PHEAA from servicing federal student loans when the federal government has specifically authorized it to do so." (*Id.*).  On April 2, 2018, representatives from PHEAA participated in a telephone conference with representatives from the Connecticut DOB.  (*Id.* at ¶ 54).  During the call, the Connecticut DOB informed PHEAA that it would not rescind its demand that PHEAA provide an explanation for its non-compliance with the Connecticut Disclosure Statutes.[2]  (*Id.*).

### C.      Education Memorandum Regarding Preemption of State Regulation of Student Loan Servicers

Education's refusal to permit PHEAA to produce federally owned documents and information to the Connecticut DOB, and Education's own refusal to provide such documents and information to the Connecticut DOB, are consistent with the position staked out by Education in various public documents it has issued over the past year.  First, on December 27, 2017, Education, through Patrick A. Bradfield, the Director of Federal Student Aid Acquisitions, released a public memorandum regarding "Ownership of and Access to U.S. Department of

---

[2]      On June 28, 2018, the Connecticut DOB agreed, while the instant litigation is pending and in the absence of a material change in applicable law or facts, to refrain from pursuing a suspension of PHEAA's license to service student loans in Connecticut based on the alleged violations detailed in its March 21 letter or substantively similar alleged violations based on substantively similar past or future conduct.

Education Records and Data" (the "Education Memorandum").[3]   (Compl. at ¶ 56).   In the
Education Memorandum, Education explains that its Office of Federal Student Aid "maintains
individually identifying information regarding the application for, distribution of, and repayment
and collection of federal student loans and grants authorized pursuant to Title IV of the [HEA]."
(*Id.* at ¶ 57).   The Education Memorandum observes that this information is protected by the
Privacy Act, and "[a]ll federal [student] loan servicers . . . who support the federal student aid
programs must comply with the requirements of the Privacy Act when they access or use Privacy
Act-protected records of [Education]."

The Education Memorandum further states that "[a]ll records maintained in any
[Education] systems of records to which [Education] provides its contractors access remain at all
times records of [Education], not records of a contractor."   (Compl. at ¶ 59).   The Education
Memorandum also states that "[a]ny request from any third party for [Education] records to
which a contractor has access must be made directly to [Education], where it will be evaluated
for compliance with the requirements of the Privacy Act . . . ."   (*Id.*).

Next, in March 2018, Education published a notice in the Federal Register entitled
"Federal Preemption and State Regulation of the Department of Education's Federal Student
Loan Programs and Federal Student Loan Servicers" (the "Preemption Notice").   *See* 83 Fed.
Reg. 10619 (dated Mar. 12, 2018).   In the Preemption Notice, Education explains that certain
state requirements imposed on student loan servicers, including state regulations requiring
licensure of servicers performing work for Education, conflict with Education's federally derived
power to select contractors and to determine whether contractors are in compliance with federal

---

[3]     The Education Memorandum is publicly available at
        https://static.politico.com/51/1f/0f805fd04c2eb035bcd79f9200be/december-27-2017-
        servicer-memo.pdf.

law.  *Id.* at 10620 ("A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.") (*quoting Sperry v. Florida*, 373 U.S. 379, 385 (1963) (quoting *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 190 (1956))).

Education further explains in the Preemption Notice that such state law requirements undermine the "clear command for uniformity" in the HEA with respect to the Direct Loan Program, and that where "the Federal interest requires a uniform rule, the entire body of State law applicable to the area conflicts and is replaced by Federal rules." 83 Fed. Reg. at 10621 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 508 (1988)).  The Preemption Notice thus concludes that federal law preempts state regulation of loan servicers that conflicts with federal statutes, federal regulations, federal contracts, and congressional objectives.  83 Fed. Reg. at 10621.

Third, Education has continually pressed the same or similar positions to those expressed in its communications with PHEAA and the State Defendants, as well as in the Education Memorandum and the Preemption Notice, leading to disputes similar to this litigation in multiple state and federal courts around the country.  *See, e.g.*, *CFPB v. Navient Corp.*, No. 3:17-cv-101, 2018 U.S. Dist. LEXIS 135481, at *3–7 (M.D. Pa. Aug. 10, 2018) (ordering defendant student loan servicer to produce Education-owned records in discovery despite Education's directive to servicer not to produce records); *Cmwlth. of Pa. v. Navient Corp., et al.*, No. 3:17-cv-01814 (M.D. Pa. 2017), at ECF No. 45 (same); *Cmwlth. of Mass. v. PHEAA*, No. 1784-CV-02682 (Mass. Super. Ct. 2017), at Dkt. No. 19 (same); *Wash. v. Navient Corp., et al.*, No. 17-2-1115-1

SEA (Wash. Super. Ct. 2017), at Dkt. Nos. 89, 99, 102, 111 (same).  *See also Student Loan Serv. Alliance v. Taylor et al.*, No. 1:18-cv-00640, 2018 U.S. Dist. LEXIS 198774, at *23–31, 55–67 (D.D.C. Nov. 21, 2018) (finding partial preemption of District of Columbia student loan servicer licensing law, but rejecting deference to Education Preemption Notice).

## III.    The Governing Standards

Dismissal of a claim under Rule 12(b)(1) is proper only where "the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  PHEAA bears the burden of establishing subject matter jurisdiction, *id.*, but, contrary to the Federal Defendants' assertion, PHEAA has no *evidentiary* burden in response to the Federal Defendants' facial challenge to PHEAA's standing to sue Education.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  Instead, a court must determine only whether the Complaint "'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  *Id.* (alterations in original) (quoting *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In the course of that analysis, a court must accept all material allegations as true, construe those allegations in favor of the plaintiff, and presume that "general allegations embrace those specific facts that are necessary to support the claim."  *Id.* at 56–57 (emphasis omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the pleaded content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *Firetree, Ltd. v. Norwalk*, No. 3:17-cv-1088-MPS, 2018 U.S. Dist. LEXIS 156693, at *14 (D. Conn. Sept. 14, 2018).

## IV.  Argument

### A.  Interpleader Is an Appropriate Procedural Device to Resolve the Competing Claims and Demands Made Upon PHEAA Based Upon Its Possession of Federal Student Loan Records

Federal Rule of Civil Procedure 22—so-called "rule interpleader"—permits joinder of parties "with claims that may expose a plaintiff to double or multiple liability . . . ." Fed. R. Civ. P. 22(a)(1).  The Supreme Court and Second Circuit have each stressed that interpleader is a "remedial" device to be "liberally construed." *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533 (1967).  *Accord Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146, 151 (2d Cir. 2016).  In practice, federal courts (and the federal government itself) have employed interpleader as a versatile device to resolve myriad scenarios where a party faces conflicting claims from multiple parties that, if not resolved simultaneously, could give rise to multiple liability.  *See* 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1704, at 541 (3d ed. 2001) ("[T]he trend, both with regard to statutory revision and judicial interpretation, has been directed toward increasing the availability of interpleader and eliminating those technical restraints on the device that are not founded on adequate policy considerations.").

The Federal Defendants' *in terrorem* argument that the allowance of interpleader here will open the floodgates and "compel the United States into litigation whenever a private plaintiff raises a preemption defense," (Fed. Defs.' Memo. at 12) (capitalization omitted), cannot withstand scrutiny.  Contrary to the Federal Defendants' overly simplistic mischaracterization, this is hardly a run-of-the-mill "private dispute [that] involve[s] a question of preemption under federal law." (Fed. Defs.' Memo. at 5).  Instead, as set forth above, the Federal Defendants and State Defendants have made conflicting demands upon PHEAA, which consequently is exposed

to liability if it acquiesces to either side's demands.  The active participatory role by the Federal Defendants here in the creation of the preemption dispute clearly distinguishes this unique case from the "common" situation "wherein a plaintiff argues that it cannot comply with both state and federal law."  (Fed. Defs.' Memo. at 13).

### 1.   Interpleader Is Not Limited to Competing Claims Over Ownership of Funds or Property

The Federal Defendants do not and indeed cannot challenge the core premise of PHEAA's Complaint— namely, the Federal Defendants and the State Defendants have sought to impose mutually exclusive demands and obligations on PHEAA with respect to the Education student loan records in PHEAA's possession.  Instead, the Federal Defendants contend that PHEAA's interpleader claim differs from the prototypical interpleader claim inasmuch as:  (1) the State Defendants assert a right of *access to records*, rather than a right of *ownership over property or funds* (Fed. Defs.' Memo. at 8–10); and (2) PHEAA has not alleged a risk of "double or multiple liability" or identified a "single obligation" out of which the State and Federal Defendants' competing claims arise.  (*Id*. at 10–12).  Not all interpleader claims, however, must look alike.  This dispute, despite its differences from a more traditional interpleader action, aligns in all material respects with the requirements and purposes of the interpleader rule.  That rule provides, in pertinent part, the following:

Rule 22.  Interpleader

(a)  Grounds.

(1)  By a Plaintiff.  Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead.  Joinder for interpleader is proper even though:

(A)  the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical . . . .

Fed. R. Civ. P. 22(a)(1)(A).

The Federal Defendants argue that the foregoing language of Rule 22(a)(1)(A) supposedly "stat[es] that any interpleader dispute must concern ownership of property." (Fed. Defs.' Memo. at 8). In support of that argument, they highlight the second clause in Rule 22(a)(1)(A)—"or the titles on which their claims depend". (*Id*.). They ignore, however, the all-important fact that Rule 22(a)(1)(A) is phrased in the disjunctive. Thus, it is hardly surprising that the Federal Defendants have been unable to cite any case supporting their unfounded contention that all interpleader defendants "must assert or be able to assert, some claim of ownership over the fund or property at issue." (*Id*.).

In fact, the Justice Department itself has previously and successfully argued that Rule 22 interpleader is *not* confined just to competing claims over *ownership* of property, but also applies to competing claims over the *right of access* to property. In *United States v. American Film Institute*, 79 F.R.D. 374 (D.D.C. 1978), after the U.S. Library of Congress had acquired possession of certain films from the three defendants, including an original print of *The Birth of a Nation*, it found itself confronted with conflicting claims by the defendants. Each of the defendants claimed the exclusive right to gain access to and copy the films, and to veto such access and copying by anyone else. *Id.* at 376. The Library of Congress, represented by lawyers from the Justice Department, filed a Rule 22 interpleader action "for a determination of the true rights of access and use possessed by the three defendants." *Id.* One defendant moved for judgment on the pleadings on grounds nearly identical to the argument raised by the Federal Defendants here, arguing that interpleader was not proper because "the dispute does not involve actual property rights, but only the rights to access to the film materials." *Id.* at 376.

The court denied the defendant's motion.  It first emphasized the Rule 22 interpleader "is to be construed liberally" and "[t]he purpose of this rule is not only to protect against multiple liability, but also to allow plaintiff to avoid the vexation of multiple lawsuits."  *Id*. at 376–77.  In words equally applicable here, the court then went on to agree with the argument made by the Justice Department lawyers that Rule 22 interpleader actions are *not* restricted to disputes over ownership of property:

> Defendant Epoch, however, contends that an interpleader action may properly involve only property rights.  It is undisputed that the instant suit does not involve such rights, but rather concerns rights to access and use of certain materials.  A reading of Rule 22, however, indicates that *the rule is not limited to property rights, but to multiple, adverse claims such as exist here.  Indeed, cases involving interpleader have not been solely limited to the vindication of property rights*.

> The present case would appear to be of the type contemplated by Rule 22 despite the absence of conflicting property claims.  Indeed, *the conflicting interests advanced by the defendants in this case are closely akin to property interests, involving as they do the full beneficial use of the materials in question*.  In any event, the action in interpleader is not as limited as Epoch would have this court believe, and, therefore, the complaint may not be dismissed nor judgment granted to defendant on this basis.

*Id.* at 377 (emphasis added) (citations omitted).[4]

Just as in *United States v. American Film Institute*, in the instant case there are competing claims and demands by the State Defendants and Federal Defendants concerning "rights to access and use" of the federal student loan records in PHEAA's possession.  *Am. Film Inst.*, 79

---

[4]     *See also Weisberg v. DOJ*, 631 F.2d 824, 829–30 (D.C. Cir. 1980) (observing that Rule 22 interpleader of Time, Inc., which owned copyright rights in photos obtained by FBI during course of Martin Luther King assassination investigation, would have been an appropriate joinder mechanism where the FBI faced a "substantial risk of incurring . . . inconsistent obligations" relating to a FOIA request for access to the copyrighted photos) (alteration in original).

F.R.D. at 377.  As correctly recognized by both the Justice Department and the court in that case, even though the interpleader defendants do not dispute ownership of those records, interpleader is nevertheless appropriate here because the State Defendants' claimed entitlement to access to the records under Connecticut state law implicates "the full beneficial use of the materials in question."  *Id.*

The State Defendants' claim of a right of access cannot be squared with the Federal Defendants' claim of absolute ownership of the records.  *See Almeida v. Holder*, 588 F.3d 778, 788 (2d Cir. 2009) (stating that property rights "include not only the right to *actual possession* of a thing, but also the right to *exclude others from possessing it* . . . .") (emphasis added).  Those competing claims are just as appropriate for resolution by way of interpleader as any other legal battle where parties actively assert mutually exclusive claims regarding actual ownership of an asset held by the plaintiff.

The fact that the *res* that is the subject of the competing claims here consists of federal student loan records, as opposed to a fund or real property, does not preclude Rule 22 interpleader.  The Federal Defendants' own case law unambiguously establishes as much: "Rule interpleader does not require a discrete 'stake' or 'fund'. . . ." *Bankers Trust Co. v. Manufacturers Nat'l Bank*, 139 F.R.D. 302, 307 (S.D.N.Y. 1991).  *See also Xerox Corp. v. Nashua Corp.*, 314 F. Supp. 1187, 1189 (S.D.N.Y. 1970) ("The rule does not even require a 'stake' or 'fund' as such.  The action will lie where all that is involved is the threat of multiple liability on what is in fact but a single claim or obligation.").

Indeed, an Indiana appellate court applying Indiana's Rule 22 (which is materially analogous to Federal Rule 22), concluded that interpleader was appropriate on similar facts involving disputed rights to information:

> Instead of holding an amount of money to which two or more parties assert entitlement, as in the usual interpleader situation, here, the Lottery holds information to which one party claims a[n] entitlement by statute and another party claims a proprietary interest.  In each situation, the stakeholder is pulled in two different directions and may have no personal interest in the outcome other than knowing what to do with the stake.  Thus, because we are to give interpleader a liberal construction, we can discern no reason why interpleader should not be used in such a way.

*Indianapolis Newspapers v. Ind. State Lottery Comm'n*, 739 N.E.2d 144, 152 (Ind. Ct. App. 2000); *see also Weisberg,* 631 F.2d at 830 (suggesting that competing claims of access to copyrighted photos could support Rule 22 interpleader); *Network Sols., Inc. v. Clue Computing, Inc.*, 946 F. Supp. 858, 860 (D. Colo. 1996) (holding that "a determination of rights to intangibles such as domain names, could be decided in an interpleader action," but denying statutory interpleader because plaintiff had failed to take steps to restrict use of domain name such that the court could conclude plaintiff had "deposited" domain name into court).

### 2. The Federal Defendants' "Double or Multiple Liability" Argument Is Unfounded

The Federal Defendants' second technical argument—that PHEAA has not alleged the possibility of "double liability," (Fed. Defs.' Memo. at 10–12)—is simply wrong under the law of interpleader.  In the Federal Defendants' view, PHEAA does not face "double liability" because whether it chooses to satisfy either the State Defendants or Federal Defendants, it will risk only one penalty, i.e., an enforcement action by the unsatisfied party.  (*Id*. at 11).  But this is the case in almost every interpleader action involving only two claimants.

Consider the quintessential interpleader scenario of competing claims to a single fund:  if the Interpleader Plaintiff remits the fund to Claimant A, it faces a potential suit from Claimant B, but if it remits the fund to Claimant B, it faces the same risk of potential suit, only this time from Claimant A.  In other words, the stake can be awarded to either claimant in satisfaction of its claim, but not both, such that no matter which of the two claimants the plaintiff chooses to

satisfy, it will always face the risk of a claim by the other party.  *See, e.g.*, *William Penn Life Ins.* *Co. v. Viscuso*, 569 F. Supp. 2d 355, 361 (S.D.N.Y. 2008) (explaining concept of double liability).

PHEAA faces this same quandary here:  if it refuses to produce the federally owned records, it faces substantial penalties, including license revocation by the State Defendants.  On the other hand, if it does produce those records, it faces equally substantial penalties, including Contract termination by the Federal Defendants and potential Privacy Act claims by them as well.  PHEAA has been unable to satisfy both the State and Federal Defendants, and thus it risks multiple and inconsistent liabilities no matter what it does with the documents in its possession.  That is a paradigmatic example of double liability.

As the Federal Defendants note, the double liability at issue must arise from a single obligation.  (Fed. Defs.' Memo. at 12).  They argue that the Amended Complaint has "concede[d]" multiple obligations by referring to the "conflicting demands" of federal and state law.  (*Id.*)  But as the Federal Defendants' direct quotations from binding case law establish, the point of the "single obligation" requirement is to prevent a plaintiff from interpleading defendants whose claims, although potentially affecting the same property, arise from "two separate, but related, agreements."  *Bankers Trust*, 139 F.R.D. at 308.

Here, PHEAA has incurred only one obligation: its contractual obligation to service loans and retain records for the federal government in compliance with applicable state and federal laws.  That obligation, in turn, has given rise to two potential liabilities: a claim under state law that PHEAA must permit the Connecticut DOB to access Education's records, and a conflicting claim under federal law that PHEAA must not permit the Connecticut DOB to access those same

records.  The underlying obligation that *gives rise* to those liabilities is plainly a single contract, and as such provides an appropriate basis for interpleader.

### 3.    Allowance of the Interpleader Action Against the Federal Defendants Will Not Open the Floodgates

The Federal Defendants contend that the instant dispute "is a common one," such that if PHEAA is permitted to interplead them here, there will surely be "a barrage of claims against the federal government in purely private disputes."  (Fed. Defs.' Memo. at 7, 13).  This dispute, however, is anything but "common," and the Federal Defendants' active participation in the events giving rise to this lawsuit demonstrates that it is not a "purely private dispute" either. Therefore, the Federal Defendants' hyperbole that "permitting PHEAA's interpleader action could compel the United States into litigation whenever a private plaintiff raises a preemption defense," (*id.* at 12) (capitalization omitted), is completely unwarranted.

The two run-of-the-mill preemption cases cited by the Federal Defendants bear no similarity to this litigation, and did not address the propriety of interpleader.  In *Wyeth v. Levine*, 555 U.S. 555 (2009), a pharmaceutical manufacturer defendant raised preemption as a defense to a state-law failure-to-warn claim brought by a private plaintiff, on the theory that the Food and Drug Administration had approved a drug's allegedly deficient label.  *Id.* at 558–59.  But applicable law in that case provided that the manufacturer retained the ability to enhance the warnings on its label, *id.* at 560–61, and thus ultimately bore tort responsibility for insufficient labeling, *id.* at 570–71.  So the *Wyeth* defendant faced at most *one* liability—the claim raised by the plaintiff—and did not argue that the federal government had an ownership interest or other direct assertion of property rights that would justify its classification as a claimant for purposes of interpleader.  And in *In re MTBE Products Liability Litigation*, 725 F.3d 65 (2d Cir. 2013), the plaintiff municipalities sued gasoline company defendants for cleanup costs associated with

groundwater contamination.  Defendants argued that federal law required their use of the alleged pollutants at issue.  *Id.* at 97.  The federal government, however, had already rejected that position, *id.* at 103, and like in *Wyeth*, took no position or interest in a stake of any kind that would have made it a proper interpleader defendant.

The absence of the federal government as a party in those two cases—and indeed, the absence of any effort to join it as a party—is no surprise: unlike here, the government had no interest at stake, and had not directed or sought to compel any party to disregard state law or any demands by a state regulator.  By contrast, the defining facts of this case are that (1) PHEAA is a federal contractor that receives frequent and mandatory instruction from the Federal Defendants regarding PHEAA's use and disposition of federal student loan records; and (2) the Federal Defendants have warned PHEAA that its compliance with the Connecticut DOB's request for the federal student loan records in PHEAA's possession may result in a federal enforcement action or termination of PHEAA's Contract.

Unlike *Wyeth* and *MTBE*, where the federal government was a bystander on the sidelines as the preemption dispute developed between *other parties*, the Federal Defendants' *own* actions and demands upon PHEAA have created the preemption dispute that necessitates this interpleader action.  In other words, the Federal Defendants have been (and still are) key participants in the underlying dispute, and therefore it is appropriate for them to be named as defendants in this interpleader action that PHEAA has brought to resolve that dispute.  A ruling allowing the interpleader of the Federal Defendants based on these unique facts carries no risk that the federal government will be interpleaded "whenever a private plaintiff raises a preemption defense," as the Federal Defendants dramatically, and incorrectly, claim.  (Fed. Defs.' Memo. at 12) (capitalization omitted).

Further, the Federal Defendants are plainly wrong in arguing that complete relief remains available to PHEAA in a suit against the State Defendants alone. (*Id*. at 13). Their argument presupposes that the Court will agree with their position that "the Connecticut Disclosure Statutes are [p]reempted." (*Id*. at 15). There is a very real possibility, however, that this Court will ultimately decide that Connecticut law is not preempted here. In that event, if the Federal Defendants are not parties to this lawsuit, they would not be bound by a judgment that PHEAA is obligated to produce the federal student loan records at issue. *See Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc.*, 324 F.3d 20, 25 (1st Cir. 2003) ("Interpleader actions are *in personam*, not *in rem*, and cannot resolve the rights of non-parties to anything.") (citing *N.Y. Life Ins. Co. v. Dunlevy*, 241 U.S. 518, 521 (1916)).

The Federal Defendants would then be free to litigate PHEAA's obligations with respect to the Connecticut student borrowers' federal student loan records in a court of their choosing—thereby exposing PHEAA to additional litigation burden and expense and the possibility of an inconsistent ruling by a different court. That would be contrary to one of the primary purposes of interpleader, which "is to protect the stakeholder from the vexation of multiple lawsuits and from the possibility of multiple liability that could result from inconsistent determinations in different courts." *Sotheby's Inc. v. Garcia*, 802 F. Supp. 1058, 1064 (S.D.N.Y. 1992).[5]

The Second Circuit has stressed that "it is well recognized that interpleader is an equitable remedy." *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). The

---

[5] *Accord Ashton v. Paul*, 918 F.2d 1065, 1068 (2d Cir. 1990) (interpleader enables a party to avoid being "subjected to inconsistent judgments in different fora"); *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992) (interpleader "insulate[s] a stakeholder from contradictory judgments and multiple liability"); 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1702, at 535–36 (3d ed. 2001) (interpleader facilitates an "effective determination of disputed questions with a consequent saving of trouble and expense for the parties").

balance of the equities militates strongly in favor of allowing the Rule 22 interpleader device to be utilized here by PHEAA.  It faces a direct threat of serious penalties only by virtue of its continuing adherence to Education's specific directives not to comply with the State Defendants' request to produce the federal student loan records.  Ever since learning of the State Defendants' document requests under state law, Education has repeatedly instructed PHEAA not to comply with those requests.  Education has publicly reiterated that position through the December 2017 Education Memorandum (citing the potential for draconian penalties under the Privacy Act) and the March 2018 Preemption Notice.

In other words, even apart from Education's ownership of the records affected by the State Defendants' production request, the Federal Defendants have created the preemption dispute with the State Defendants and have directly interjected themselves into that dispute time and again.  Thus, the Court should exercise its broad equitable powers under Rule 22 to require the Federal Defendants to appear in this interpleader action to defend the preemption arguments that they have made in the months leading up to this litigation, which they reiterate in their Memorandum.  (Fed. Defs.' Memo. at 16–17).  The State Defendants' Answer demonstrates that they are prepared to defend their claimed entitlement to the records under Connecticut law, and so too should the Federal Defendants be required to defend the propriety of the contrary directives they have made to PHEAA under federal law.[6]

---

[6]     The Federal Defendants have suggested that, if they are dismissed as parties, they may nevertheless elect to submit a "Statement of Interest" expressing their views on the preemption dispute they have created here.  (Fed. Defs.' Memo. at 16–18).  But as discussed above, if they are not parties, they would not be bound by a ruling by this Court rejecting their preemption arguments, and thus could take action against PHEAA if it produced the documents at issue to the State Defendants pursuant to such a ruling.

In sum, allowing this interpleader action to proceed against both the State Defendants and the Federal Defendants, who have made the conflicting claims and demands upon PHEAA that engendered this action, would comport with the requirements and purposes of Rule 22; would represent a proper exercise of this Court's broad equitable powers; and would not expose the federal government to "a barrage" of interpleader suits.  (Fed. Defs.' Memo. at 7).

**B.      PHEAA's Declaratory Judgment Claims Are Well Pleaded**

**1.      Education Is a Necessary Party Under Rule 19
Due to its Direct Involvement in This Dispute**

The Federal Defendants lead off their challenge to PHEAA's declaratory judgment claims with the assertion that the claims should be dismissed because the relief requested does not "run against Education or otherwise require Education's participation."  (Fed. Defs.' Memo. at 15).  They base that argument on a footnote in *Otero v. NYC Housing Authority*, 484 F.2d 1122, 1130 n.11 (2d Cir. 1973), that itself described, without comment, an unchallenged district court grant of *summary judgment* in favor of the federal government on mootness grounds *after* the plaintiff had secured relief against a state defendant.  *See Otero v. NYC Housing Auth.*, 354 F. Supp. 941, 957 (S.D.N.Y. 1973).  Here, no relief has yet been granted in favor of any party, and *Otero* was not a declaratory judgment action.  Thus, it is completely inapposite.

The Federal Defendants improperly seek to recast PHEAA's Amended Complaint as seeking relief only from the State Defendants.  That mischaracterizes the nature of this action, in which PHEAA—which finds itself trapped in the middle of a dispute between two regulators, each asserting authority to control PHEAA's actions with respect to federal student loan records—seeks a declaration by this Court of its duties in an order that will, regardless of substantive outcome, bind *both* sets of defendants who have made the conflicting demands upon PHEAA.  The Federal Defendants are in fact *necessary* parties to that claim.

21

Rule 19(a)(1) requires joinder where:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  The Federal Defendants are necessary parties under both (i) and (ii).

A plaintiff's failure to join a necessary party in a declaratory judgment action may result in dismissal under Rule 19(b).  *See, e.g.*, *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 250–51 (S.D.N.Y. 2002) (summarizing analysis); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967) ("[C]ourts may even refuse declaratory relief for the nonjoinder of interested parties who are not, technically speaking, indispensable.").

Federal courts have concluded that a federal agency qualifies as a necessary party in a wide variety of circumstances.  *See generally* 7 Charles A. Wright et al., *Federal Practice and Procedure* § 1617, at 252 (3d ed. 2001) ("The principles of Rule 19 regarding the desirability of joining nonparties needed for a just adjudication and the indispensability of some of those persons whose joinder is not feasible are fully applicable to actions involving the United States.").  These situations include where a third party's action would "'indirectly attack' [the agency's] administrative decisions," *Two Shields v. Wilkinson*, 790 F.3d 791, 796 (8th Cir. 2015) (United States deemed indispensable party where plaintiff contested a federal lease for oil and gas mining rights), or where an agency's ongoing regulation of the lawsuit's subject matter creates the possibility of inconsistent obligations, *see Ins. Co. of the West v. Emp't Dev. Dep't*, No. 16-248-VAP, 2016 U.S. Dist. LEXIS 73212, at *18–20 (C.D. Cal. May 24, 2016) (Internal

Revenue Service deemed indispensable party where plaintiff sought to obtain property covered by tax levy); *Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1473 (10th Cir. 1987) (United States deemed indispensable party where plaintiff tribe claimed ownership of federal land); *McKenna v. Udall*, 418 F.2d 1171, 1174 (D.C. Cir. 1969) (General Services Administration deemed indispensable party where plaintiff claimed that it wrongfully sold federal property).

The common thread joining these cases is that, in each instance, the plaintiff's desired relief would have an impact on a federal agency's control over its property.  That same rationale applies here because the Federal Defendants have argued that their property interest in the federal student loan records at issue is so strong that it preempts the Connecticut DOB's claimed right to access those records under Connecticut law.  The Federal Defendants have stated as much in both generalized terms (specifying in the Education Memorandum and Preemption Notice that federal records held by a contractor remain the property of the federal government and are covered by the Privacy Act) and in the context of this particular dispute (specifying in a November 7, 2017 email to PHEAA and an April 2, 2018 letter to PHEAA that the records requested by the Connecticut DOB "belong to the federal government and PHEAA is prohibited from releasing them under its contract with [Education]").  An order requiring PHEAA to disclose those records, therefore, would unequivocally "impair or impede" the Federal Defendants' ability to protect its property interest in the records (Fed. R. Civ. P. 19(a)(1)(B)(i)) because PHEAA, the custodian of that property, would be bound to comply with the Court's order.

The same "impair or impede" language that is utilized in Rule 19(a)(1)(B)(i) also appears in Rule 24(a)(2), which governs interventions as of right.  In *Chae v. SLM Corp.*, No. 07-2319

(C.D. Cal.), a putative class of students who had obtained loans that were guaranteed by the federal government sued Sallie Mae, which is a major lender and servicer of student loans, alleging that its practices with respect to the computation of interest charges and late fees violated California law.  The federal government successfully moved to intervene as of right under Rule 24 so that it could seek a declaratory judgment that "application of state law is preempted by the Supremacy Clause of the United States Constitution and federal law." Memorandum in Support of United States' Motion to Intervene at 2 (Dkt. No. 102). Significantly, the federal government stressed that it was entitled to intervene as of right because it held some of the loans at issue and therefore "disposition of this action may impair or impede the United States' ability to protect its interests." *Id*. at 8 (capitalization omitted).  It also argued that "as the federal agency responsible for administering the statute and promulgating the regulations at issue, Education can provide expertise that would otherwise be neglected."  *Id*. at 9.  "[A]lthough Sallie Mae has demonstrated . . . its willingness to make some arguments similar to those that may be raised by the United States, only the United States can effectively represent its own unique interests in this litigation."  *Id*.

The government's successful argument in *Chae* that "disposition of this action may impair or impede the United States' ability to protect its interests," (*id.* at 8) (capitalization omitted), thus warranting intervention as of right under Rule 24(a)(2), applies with equal force to the necessary party "impair or impede" interest analysis here under Rule 19(a)(1)(B)(i).

The flip side of the coin is that, as discussed above, PHEAA would be placed at risk of multiple or inconsistent obligations if the Federal Defendants were dismissed from this lawsuit, which is why they are also necessary parties under Rule 19(a)(1)(B)(ii).  Disposing of this lawsuit in the absence of the Federal Defendants would "leave an existing party [PHEAA]

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).   Unless bound as a party by this Court's holding on the preemption issue, the Federal Defendants would be free to litigate that same issue against PHEAA or the Connecticut Defendants in another court, or even to take punitive action against PHEAA under the Contract or federal law, including the Privacy Act.

The Federal Defendants are thus necessary parties to PHEAA's declaratory judgment claims for multiple reasons under Rule 19.

### 2.    PHEAA's Declaratory Judgment Action Against the Federal Defendants Rests on Legally Sufficient Underlying Claims

Federal courts have inherent equitable power "to enjoin unconstitutional actions by state and federal officers."  *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015). That equitable power, although "subject to express and implied statutory limitations," *id.* at 1385, may be invoked as the underlying cause of action to support a claim under the Declaratory Judgment Act, as PHEAA has done here.  *See, e.g., Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144–45 (2d Cir. 2016) (recognizing that a plaintiff may invoke equity "preemptively to assert a defense that would be available to it in a state or local enforcement action").  "A party is not required to pursue 'arguably illegal activity . . . or expose itself to criminal liability before bringing suit to challenge' a statute alleged to violate federal law."  *Id.* at 144 (alteration in original) (quoting *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015)).   On that basis, PHEAA's declaratory judgment action against the *State* Defendants is unquestionably proper, and has not been challenged.

The Federal Defendants, however, contend that PHEAA must also assert an *independent* allegation that they have engaged in, or have threatened to engage in, conduct that "would be wrongful, improper, or in violation of any law."  (Fed. Defs.' Memo. at 19).  That is incorrect.

As discussed above, a plaintiff seeking a declaratory judgment is *obligated* to join as a defendant any entity that qualifies a necessary party under Rule 19(a).  Consequently, inasmuch as PHEAA has appropriately stated a declaratory judgment cause of action against the State Defendants (which the Federal Defendants have conceded is the case), the Federal Defendants are also necessary and proper parties to the declaratory judgment action.[7]

Also, the Federal Defendants' arguments proceed from the premise that their position with respect to the preemption of Connecticut law is well founded.  That assumption, however, remains to be tested.  If this Court were to decide that the State Defendants' request for the federal student loan records in PHEAA's possession is not preempted by federal law, then the Federal Defendants' repeated directives to PHEAA not to produce those records would be "wrongful," "improper," and in "violation of [Connecticut] law."  (*Cf.* Fed. Defs.' Memo. at 19).  Thus, contrary to the Federal Defendants' arguments, this Court possesses subject matter jurisdiction over the declaratory judgment action against both the State Defendants and the Federal Defendants.

In the alternative, PHEAA has a cause of action against the Federal Defendants under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702–05.  The APA provides a cause of action to a person who has "suffer[ed a] legal wrong because of," or been "adversely affected or aggrieved by" agency action.  5 U.S.C. § 702.  To be reviewable, the challenged conduct must be

---

[7]     None of the Federal Defendants' cases reach this issue.  *See, e.g., In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (Declaratory Judgment Act does not create Article III "case or controversy" when plaintiff fails to allege *any* injury against *any* defendant); *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 244–46 (2d Cir. 2012) (Declaratory Judgment Act does not independently authorize worldwide anti-enforcement injunction prohibiting parties from enforcing an allegedly fraudulent judgment entered by an Ecuadorian court); *Warner-Jenkinson Co. v. Allied Chem. Corp.*, 567 F.2d 184, 186 (2d Cir. 1977) ("The Declaratory Judgment Act . . . does not independently create federal jurisdiction.").

a "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

An agency action "includes the whole or a part of an agency rule, order, license, sanction, relief,

or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  "As a general matter,

two conditions must be satisfied for agency action to be final: First, the action must mark the

consummation of the agency's decisionmaking process—it must not be of a merely tentative or

interlocutory nature.  And second, the action must be one by which rights or obligations have

been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154,

177–78 (1997) (internal quotation marks and citations omitted).  An agency's "definitive

statement of its position, determining the rights and obligations of the parties," is considered

final even in light of "[t]he possibility of further proceedings in the agency."  *Bell v. New Jersey*,

461 U.S. 773, 779–80 (1983).

PHEAA has been adversely affected by a "final agency action" for which it has no other

adequate remedy—namely, Education's November 7, 2017 email and April 2, 2018 letter, both

of which directed PHEAA not to comply with state law.  (Compl. at ¶¶ 37, 51–52).  These

written directives fit squarely within the definition of "final agency action" under the APA.

*Compare Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 600 & n.1 (1st Cir. 2016) (Bureau of

Alcohol, Tobacco, Firearms, and Explosives letter classifying gun part as "intended only for use"

in assembling or fabricating a silencer is a "final agency action"; letter was definitive statement

of the agency's position that had a direct and immediate effect on day-to-day business, as Sig

Sauer was required "to go through with . . . stringent requirements in order to sell its firearm -- as

the classification letter states"), *with Shipbuilders Council of Am., Inc. v. U.S. Dep't of

Homeland Sec.*, 481 F. Supp. 2d 550, 554–58 (E.D. Va. 2007) (Coast Guard letter opining that

ship rebuild would not qualify as "foreign rebuilding" under the Jones Act not a "final agency action" when the "letter explicitly refer[red] to the determination as preliminary").

Education has repeatedly and unequivocally conveyed its position that PHEAA must not comply with Connecticut state law, both to PHEAA itself and to the State Defendants.  Nothing about Education's determination, at any stage, has been tentative or interlocutory; in fact, it is of a piece with broader, equally definitive statements Education has made, including in the December 27, 2017 Education Memorandum and subsequent Preemption Notice, that federal contractors may be subject to criminal penalties under the Privacy Act if they release records directly to any third party and that state law in this area is broadly preempted.  Second, the November 7, 2017 email and April 2, 2018 letter self-evidently constitute a determination by Education as to PHEAA's "rights and obligations" with respect to federal and state law, and warn that substantial legal consequences—e.g., potential claims by Education against PHEAA for breach of contract and violations of federal law—will follow if PHEAA complies with the State Defendants' request.

The Federal Defendants further contend that PHEAA cannot state an APA claim because it has "an adequate alternative remedy to obtain the relief sought here."  (Fed. Defs.' Memo. at 21).  Specifically, the Federal Defendants observe that even in their absence as parties to this lawsuit, "[s]uccess . . . against Connecticut would entirely remedy PHEAA's alleged injuries." (*Id.*)  That is accurate, as far as it goes.  But, as noted above, the Federal Defendants' confidence in the strength of their preemption arguments may prove to be unwarranted.  In the event that the Federal Defendants are dismissed as parties and this Court later concludes that Connecticut law is *not* preempted, PHEAA would remain at risk that the Federal Defendants would file a separate

action against it alleging that its disclosure of records would violate the Contract and the Privacy Act.

The only way for PHEAA to obtain a truly "adequate remedy," 5 U.S.C. § 704, is to obtain a judgment—regardless of substantive outcome—that binds both the State *and* Federal Defendants.  Under these circumstances, PHEAA's invocation of the APA as an underlying basis for the declaratory judgment claim is entirely appropriate.[8]  If the Court concludes, however, that PHEAA's reference to the APA in the Amended Complaint lacks sufficient substance, PHEAA requests leave to amend in order to further develop its APA allegations.

### 3.   PHEAA Has Standing to Assert Claims Against the Federal Defendants Because It Is Imminently Threatened With Concrete and Particularized Injury Under Both Federal and State Law

The Federal Defendants are also off base in arguing that PHEAA has failed to allege the "irreducible constitutional minimum" of standing.  (Fed. Defs.' Memo. at 22–24).  To establish standing, a plaintiff must show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

---

[8]   The Federal Defendants, in the footnote to which they relegated their sovereign immunity argument, essentially concede that if PHEAA has stated an APA claim, it has also stated a waiver of sovereign immunity under 5 U.S.C. § 702, which waives sovereign immunity for claims arising under the APA for declaratory or injunctive relief.  *See Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) (observing that the APA "waives the federal government's sovereign immunity in actions brought under the general federal question jurisdictional statute, 28 U.S.C. § 1331").  (Fed. Defs.' Memo. at 22 n. 2).

Further, and in any event, 20 U.S.C. § 1082(a)(2) is an express waiver of sovereign immunity for claims against the Secretary of Education acting in her official capacity relating to federal student loan programs.  The Federal Defendants observe that a higher standard applies to claims for injunctive relief, but do not dispute that the provision constitutes a waiver of sovereign immunity for purposes of the core declaratory relief that PHEAA seeks.  (Fed. Defs.' Memo. at 22 n. 2).

judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  PHEAA's Amended Complaint satisfies those requirements.

To establish injury in fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id.* at 1548 (internal quotation marks and citations omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  A "credible threat of [government] enforcement" has long been recognized as a basis for standing.  *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014) (summarizing enforcement threats leading to standing).  With respect to causation, a plaintiff need only show a "substantial likelihood" that the defendant's action caused plaintiff's harm—a threshold that courts in this district have characterized as "low."  *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, No. 3:16-cv-01911-VLB, 2017 U.S. Dist. LEXIS 133488, at *17 (D. Conn. Aug. 21, 2017).  The Second Circuit has emphasized that "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing."  *NRDC, Inc. v. FDA*, 710 F.3d 71, 85 (2d Cir. 2013) (alteration in original) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000)).  And as the Federal Defendants recognize, "causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation."  (Fed. Defs.' Memo. at 23 (quoting *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010))).

As described at great length above, PHEAA is essentially caught between the "Scylla and Charybdis" not only of state and federal law, but specific threats of state *and* federal legal action. Although the Federal Defendants contend that PHEAA's threatened injuries "are clearly caused by Connecticut," (Fed. Defs.' Memo. at 23), that is simply not the case.  The Connecticut DOB,

acting pursuant to state law, submitted a routine records request to PHEAA, and in the ordinary course of business, PHEAA would have produced the requested records.   Education then intervened, taking the position that Connecticut law is preempted; that PHEAA must not comply with it; and that compliance would result in breach of contract and potentially a violation of federal law, leading to substantial penalties.   The subsequent threat of suit made by the State Defendants, then, is a direct outgrowth of, and directly traceable to, Education's directive to PHEAA not to obey the document request.   The State Defendants were both "constrained" and "influenced," *Carver*, 621 F.3d at 226, to *enforce* state law after Education had denied PHEAA the ability to comply with it.   Stated more directly, Education has been, at a minimum, an equal contributor to the untenable situation that prompted PHEAA to seek judicial relief.

In the alternative, the Federal Defendants have made their own credible threat of enforcement against PHEAA in the event that it complies with the State Defendants' production request.   Education's mounting pressure on that point has been unmistakable: first, the November 7, 2017 email to PHEAA; then the December 2017 Education Memorandum stating that production of documents to a third party, i.e., compliance with the State Defendants' request here, could result in criminal penalties under the Privacy Act; next, the Preemption Notice reiterating Education's view that state law in this area is preempted; and finally, the April 2, 2018 letter warning that PHEAA would be in violation of its Contract with Education if it produced the documents at issue.

The Federal Defendants are correct that, as a result of Education's directives, PHEAA has no current intent to produce the records at issue.   But in the event that this Court concludes that state law is not preempted by federal law, PHEAA will obviously obey this Court's order. The Federal Defendants' assertion that "PHEAA offers no basis to believe that it will violate [the

C]ontract, which could lead to Education taking action against it," (Fed. Defs.' Memo. at 24), ignores the foregoing possibility that the Court will order production and PHEAA will comply. As discussed above, that order would not be binding on the Federal Defendants unless they remain in this case.  As a result, PHEAA has standing to seek declaratory relief with respect to the Federal Defendants' contention that state law is preempted.

### 4.    The Contract Disputes Act Does Not Require Dismissal of PHEAA's Claims Against Education Because PHEAA Is Not Challenging or Claiming Breach of the Contract

Last, the Federal Defendants submit that PHEAA's declaratory judgment claims are at least partially barred under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.*  PHEAA, however, does not challenge any term of its Contract with Education, and expressly does *not* "seek[] either a judicial interpretation to let it out of [the C]ontract, or a judicial finding that Education cannot enforce [the C]ontract."  (Fed. Defs.' Memo. at 25).  Instead, only in the event that this Court concludes that PHEAA is obligated to produce the records at issue to the State Defendants does PHEAA seek an additional limited declaration that Education may not terminate the Contract based on PHEAA's compliance with any judgment of this Court.

## V.    Conclusion

This suit represents PHEAA's proactive and salutary effort to resolve an ongoing, very real clash between state and federal law.  It is not a purely private dispute, as repeatedly claimed by the Federal Defendants (Fed. Defs.' Memo. at 5, 7, 12–14), but instead a direct dispute between state and federal regulators, with PHEAA caught in the middle.  PHEAA's interpleader and declaratory judgment claims are well pleaded as a matter of law and will provide a vehicle to resolve the underlying dispute, which otherwise could result in duplicative, costly, burdensome, and potentially conflicting proceedings.  Furthermore, the sustained involvement of the Federal Defendants throughout this dispute, which in fact directly precipitated the threat of an

enforcement action by the State Defendants, further belies the Federal Defendants' notion that this is a "purely private dispute."

In sum, as a matter of procedure and equity, the participation of the Federal Defendants is necessary and proper to resolve the underlying clash between PHEAA's state and federal regulators.  The Federal Defendants' Motion to Dismiss should be denied.

Dated:  November 30, 2018                Respectfully submitted,


/s/ John C. Grugan
John C. Grugan (admitted *pro hac vice*)
  gruganj@ballardspahr.com
Burt M. Rublin (*admitted pro hac vice*)
  rublinb@ballardspahr.com
Thomas F. Burke (*admitted pro hac vice*)
  burket@ballardspahr.com
Eleanor Bradley Huyett (*admitted pro hac vice*)
  bradleyem@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999


David A. Schulz (CT #439467)
schulzd@ballardspahr.com
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Facsimile: (212) 223-1942

*Attorneys for Plaintiff Pennsylvania Higher Education Assistance Agency*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of November, 2018 I electronically filed the foregoing OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ John C. Grugan*
John C. Grugan