IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,<br><br>    Plaintiff,<br><br>    v.<br><br>JORGE L. PEREZ, in his official capacity as Commissioner of the Connecticut Department of Banking,<br><br>CONNECTICUT DEPARTMENT OF BANKING,<br><br>BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>    and<br><br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>    Defendants. | Civil Action No. 3:18-cv-1114 (MPS) |

**REPLY IN SUPPORT OF FEDERAL DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff Pennsylvania Higher Education Assistance Agency (PHEAA) maintains that it is disadvantaged by a conflict between state and federal law. But instead of seeking a declaratory judgment solely against Connecticut, or otherwise asserting a preemption defense on its own behalf, PHEAA attempts to forcibly delegate its role in prosecuting this suit to the Department of Education (Education). The Federal Government cannot be forced to into litigation—under interpleader or any other theory— in every lawsuit involving preemption, and this case is no exception. Rather than contort the law of interpleader, PHEAA should proceed with its claims against Connecticut and litigate the preemption dispute to a conclusion.

**ARGUMENT**

I. Use of Interpleader in this Action Is Inappropriate.

A. PHEAA Fails to Show Adverse Claims of Ownership.

PHEAA's interpleader claim should be dismissed, first, because it does not involve adverse claims of ownership over the same property. Indeed, the "purpose of an interpleader action is to allow the stakeholder, the interpleader plaintiff, to establish proper ownership of some property in order to avoid future vexations." *See United States v. Barry Fischer Law Firm, LLC*, No. 10 Civ. 7997 (TPG), 2011 WL 31545, at *4 (S.D.N.Y. Jan. 5, 2011). The Second Circuit has rejected a Rule 22 interpleader action where the adverse claims were "not conflicting claims of the right to ownership of an identifiable fund or piece of property." *See Bradley v. Kochenash*, 44 F.3d 166, 169 (2d Cir. 1995).

In response, PHEAA relies primarily on a 40-year-old, out-of-circuit, district court decision. *See United States v. Am. Film Inst.*, 79 F.R.D. 374, 377 (D.D.C. 1978). This case concerned an interpleader action by the Library of Congress to determine which among three

defendants held the "exclusive right to copy and gain access to [a] film, and to veto such access and copying by anyone else." *Id*. at 376.  But the court recognized that the *exclusive* rights to a film are "closely akin to property interests, involving as they do the full beneficial use of the materials in question." *Id*. at 377.  Accordingly, determining the ownership rights in that case was no different from any other ownership dispute appropriately litigated via interpleader.

Here, Connecticut does not contend that it owns legal title or any other exclusive rights to the student loan documents, but only that it may inspect the documents.  *See* Am. Compl. ¶¶ 46-47, ECF No. 34.  Absent a dispute of ownership or associated rights over the same property, the instant interpleader claim should be dismissed.  *See Indianapolis Colts v. Mayor & City Council of Baltimore*, 741 F.2d 954, 956-57 (7th Cir. 1984) (rejecting an interpleader claim about whether Baltimore or Indianapolis should keep the Colts football team, where Baltimore claimed ownership of the franchise and operators of the Indianapolis stadium claimed only a contractual right to determine the new owner of the team, which did not amount to a claim of ownership).

Even PHEAA's argument that a dispute about "competing claims over the *right of access* to property" suffices for interpleader, Pl.'s Opp'n Fed. Defs.' MTD (Pl.'s Opp'n) at 12, ECF No. 48, is not well suited to this case, as only one party seeks to access the student loan documents (Connecticut).  This is not a case where multiple parties are claiming the same right of ownership or access to certain property, which the court can sort out with all claimants present.  *See CF 135 Flat LLC v. Triadou SPV S.A.*, No. 15-CV-5345 (AJN), 2016 WL 1109092, at *4 (S.D.N.Y. Mar. 18, 2016) ("Even if an interpleader plaintiff faces potentially inconsistent obligations, interpleader is only proper if both defendants lay claim to the same thing (i.e. the same fund or property).").  Just as Baltimore and Indianapolis were "not claimants to the same stake" because "Baltimore seeks ownership of the Colts franchise, whereas [Indianapolis] has no claim to ownership of the

franchise," *Indianapolis Colts*, 741 F.2d at 956, Connecticut and Education are not claimants to the same stake here because only Connecticut asserts a claim of access to the records.

      B.  <u>PHEAA Fails to Show a Threat of Double Liability on a Single Obligation.</u>

PHEAA's interpleader claim also fails because PHEAA cannot demonstrate a risk of "double or multiple liability" on a single obligation. *See* Fed. R. Civ. P. 22(a)(1). As to double or multiple liability, PHEAA argues that because it may face liability from Connecticut or Education, the threat of "only one penalty," Pl.'s Opp'n at 15, constitutes a showing of double liability. Try as it might, PHEAA cannot make one equal two. A showing of "double liability" inherently requires PHEAA to show a threat of *more than one* liability on a single obligation. Indeed, the only case cited by PHEAA on this point, *William Penn Life Insurance Co. v. Viscuso*, 569 F. Supp. 2d 355, 360 (S.D.N.Y. 2008), explains that double liability requires a showing of "multiple and inconsistent liabilities on a single obligation," whereby the defendants could pursue separate court actions and receive inconsistent judgments as to ownership of disputed property. Thus, PHEAA's only legal support does not support the claim that "one penalty" is sufficient to establish double liability.

Likely recognizing that the risk of a single liability does not suffice, PHEAA outlines a new purported threat of double liability in its response. PHEAA claims that if the Court decides that Connecticut law is not preempted, and Education is not a party to this suit, then Education would be "free to litigate PHEAA's obligations . . . in a court of their choosing[,] thereby exposing PHEAA to . . . the possibility of an inconsistent ruling by a different court." Pl.'s Opp'n at 19. However, Education has no plans to impose penalties on, or initiate litigation against PHEAA for complying with a federal court order holding that Connecticut state law is not preempted. PHEAA's argument to the contrary is purely speculative. As a consequence, PHEAA cannot show

a "real and reasonable fear" of being subject to double liability here. *See Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993); *Indianapolis Colts*, 741 F.2d at 957-58.

PHEAA concedes that it must further establish that any threat of double liability "arises from a single obligation." Pl.'s Opp'n at 16. PHEAA cannot make this showing, either, as its dispute with Connecticut concerns separate obligations under state law and PHEAA's contract with Education. *See* Am. Compl. ¶¶ 3-6. PHEAA claims that it has incurred only "one obligation," namely, its contract with the federal Government, which has "given rise" to two separate claims. Pl.'s Opp'n at 16. Yet, PHEAA fails to explain how a contract with a federal agency could give rise to a document request by a state. Indeed, in its Amended Complaint, PHEAA specifically alleges an "obligation with respect to production of the Documents," and that "conflicting state and federal governmental directives," and not simply the contract with Education, are the obligations "giving rise to this proceeding." Am. Compl. ¶¶ 86, 96.

It is uncontroverted that, in addition to contracting with Education, PHEAA applied for and received a license from Connecticut to act as a student loan servicer in the state, subjecting it to the state obligations now at issue. Pl.'s Opp'n at 3; Am. Compl. ¶ 46 (alleging that Connecticut gave PHEAA an opportunity to "show compliance with all lawful requirements for the retention of its student loan servicer license in Connecticut pursuant to Section 4-182(c) of the Connecticut General Statutes"). *See also Student Loan Servicing All. v. District of Columbia*, No. CV 18-0640 (PLF), 2018 WL 6082963, at *23 (D.D.C. Nov. 21, 2018) (finding federal preemption in a similar student loan case, where the Federal Government was not interpleaded, on the ground that "allowing a state to impose separate, and potentially conflicting, contracting requirements would nullify" congressional intent). Thus, just as in *Bankers Trust Co. v. Manufacturers National Bank*

*of Detroit*, 139 F.R.D. 302, 308 (S.D.N.Y. 1991), PHEAA has "inconsistent duties to separate parties under two separate, but related agreements," and PHEAA alleges that it "may . . . breach[] one agreement by complying with duties under the other." And just as in that case, "this situation does not come within the scope of rule interpleader, [and] the interpleader complaint must be dismissed." *Id.*

        C. <u>Permitting PHEAA's Interpleader Action Could Improperly Compel the United States into Litigation in Other Preemption Disputes.</u>

Finally, the interpleader claim should be dismissed because permitting the instant suit would enable parties to interplead the Federal Government whenever a plaintiff arguably could not comply with both state and federal law. PHEAA argues, however, that the instant case is entirely unique, and that the risk of further compelled litigation is unfounded. PHEAA is incorrect.

PHEAA strives to distinguish the instant dispute from "run-of-the-mill preemption cases," Pl.'s Opp'n at 17, but unsurprisingly fails to identify any material differences. PHEAA tries to distinguish *Wyeth v. Levine*, 555 U.S. 555 (2009) as a dispute that was inappropriate for interpleader relief, because the preemption argument there was rejected and plaintiff thus "ultimately bore tort responsibility" under state law. Pl's Opp'n at 17. Yet "[t]he availability of interpleader does not depend on the merits of the potential claims against the stakeholder." *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Telos CLO 1006-1 Ltd.*, 274 F. Supp. 3d 191, 212 (S.D.N.Y. 2017) (internal citation omitted). Accordingly, PHEAA underscores how their theory of radically expanded interpleader would permit an ultimately unsuccessful preemption claim to nonetheless compel the Federal Government into litigation.[1]

---

[1] Plaintiff also asserts that interpleader was improper in *Wyeth* because the Federal Government did not assert an "ownership interest or . . . property rights[.]" Pl.s' Opp'n at 17. Accordingly,

- 5 -

PHEAA also insists that interpleader is proper only in this case because Education was a "key participant[]" in the underlying dispute. Pl.'s Opp'n at 18. However, it is not unusual for the Federal Government to be closely involved in managing its contractor or stating a legal position, nor was that conduct actionable. Furthermore, interpleader does not hinge on whether a potential defendant takes an "active participatory role" in a dispute, Pl.'s Opp'n at 11, as interpleader is generally proper so long as the Plaintiff faces "even the prospect of adverse claims being asserted[.]" *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 302 (S.D.N.Y. 2012) (internal citation omitted). Plaintiff cannot reinvent the law of interpleader so that it covers some, but not all, preemption disputes.

At the very least, allowing interpleader here would encourage plaintiffs in factually similar cases to interplead the Federal Government into their private disputes. PHEAA itself notes that there have been at least four other similar actions recently filed across the country, concerning state regulation of student loan servicers. Pl.'s Opp'n at 8. Interpleader was not even attempted in any of those cases, nor have any of those courts found Education's participation necessary under Rule 19 or otherwise. But permitting interpleader here would, at the very least, spur plaintiffs in those actions to interplead Education, and force the Government to expend further time and resources in private litigation.

## II. PHEAA's Non-Interpleader Claims Against Education Should Also Be Dismissed.

As discussed above, interpleader does not provide the appropriate avenue for PHEAA's concerns about conflicting demands. As to the two claims for declaratory judgment which

---

under Plaintiff's theory, because Connecticut has not claimed ownership or property interests in the student loan documents, the claim of interpleader here should be denied.

- 6 -

PHEAA does attempt to raise against Education (purportedly on grounds of field and conflict preemption), both must fail.

### A. Neither Rule 19 Nor PHEAA's New APA Argument Presents a Cause of Action Against Education.

PHEAA tacitly concedes that it has not pled a cause of action against Education, instead asserting two novel theories—first, that it need not plead a cause of action against Education if Education is a "necessary party," and second, that the Court should proceed on the basis of an imaginary Administrative Procedure Act (APA) claim, which appears nowhere in PHEAA's amended complaint. Neither can support Education's presence as a defendant.

As Education previously noted, PHEAA has failed to allege a valid legal cause of action against Education. Fed. Defs.' MTD at 18-20, ECF No. 43. In its response, PHEAA alludes to the inherent power of the Court to enjoin unconstitutional actions, Pl.'s Opp'n at 25, but PHEAA does not allege that Education violated the Constitution. Nor is it clear how *Education* could violate *Connecticut's* law, *see* Pl.'s Opp'n at 26, which binds licensed student loan servicers, not federal agencies. *See* Conn. Gen. Stat. § 36a-849(b) ("If requested by the commissioner, each student loan servicer licensee shall make such records available or send such records to the commissioner . . . ."))[2]

PHEAA further argues that it has properly pled a claim against Connecticut, and that Education can also be hauled into court simply because PHEAA wants to bind Education to an order of this Court. Pl.'s Opp'n at 21, 26. PHEAA appears aghast at the notion that a plaintiff

---

[2] And indeed, as Education previously noted, Fed. Defs.' MTD at 22 n.2, PHEAA identified no waiver of sovereign immunity for any such inchoate claim. The APA's waiver does not apply because PHEAA has not stated an APA claim, nor does 20 U.S.C. § 1082 apply because PHEAA seeks injunctive relief, but does not allege that the Secretary has acted outside her statutory authority.

must plead a cause of action that applies to each defendant. *See* Pl.'s Opp'n at 25 ("The Federal Defendants . . . contend that PHEAA must also assert an *independent* allegation that they have engaged in . . . conduct that would be wrongful, improper, or in violation of any law" (internal quotation marks and citations omitted)). But this is black-letter law. *See, e.g.*, *Zirkind v. Zirkind*, 199 F.3d 1325 (2d Cir. 1999) (noting that a plaintiffs' claim was "subject to dismissal for failure to state a claim as to each defendant").[3]

PHEAA creatively attempts to use the Rule 19 standard for joinder of necessary parties as a substitute for an actual claim against Education. Pl.'s Opp'n at 21-25; *see also* Pl.'s Opp'n at 26 ("[A]s PHEAA has appropriately stated a declaratory judgment cause of action against the State Defendants . . . the Federal Defendants are also necessary and proper parties to the declaratory judgment action."). But Rule 19 provides no support for this theory, nor does PHEAA identify any case law relying on Rule 19 as the cause of action against a defendant.[4] Rule 19's function is the *opposite* of what PHEAA suggests, preserving the resources of the court by mandating that "necessary" parties be joined when possible, and that suits be dismissed when relief would be impossible because "indispensable" parties cannot be joined. *See* Fed. R. Civ. P. 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be

---

[3] Indeed, any claim concerning PHEAA's contract with Education must proceed exclusively through the procedures in the Contract Disputes Act, 41 U.S.C. § 7101 et seq. *See* Fed. Defs.' MTD at 25. Although PHEAA insists that it "does not challenge any term of its Contract with Education," Pl.'s Opp'n at 32, that statement is belied by its briefing. *See, e.g.*, Pl.'s Opp'n at 31-32 (arguing that PHEAA needs relief from this Court so that it can "violate [the C]ontract" with Education if the Court rules in Connecticut's favor (alteration in original)).

[4] If the Court did perform the Rule 19 analysis requested by PHEAA, Federal Defendants are not a "necessary" party. As described in the context of PHEAA's adequate alternative remedy, PHEAA may, if successful, get all of the relief it seeks through a lawsuit against Connecticut alone, and thus the Court "can" afford complete relief.

dismissed."). Rule 19 is not a plaintiff-protection mechanism that can overcome a defendant's motion to dismiss—it provides no basis for jurisdiction over an entity, and does not overcome the requirements to bring suit in federal court. *See Zaretsky v. William Goldberg Diamond Corp.*, No. 14 CIV. 1113 (SAS), 2014 WL 4160232, at *3 (S.D.N.Y. Aug. 18, 2014)  ("Rule 19 does not require joinder of parties against whom there are no timely or valid claims[.]").

PHEAA's alternative argument that it has pled an APA claim against Education, Pl.'s Opp'n at 26-29, is belied by the Amended Complaint, which raises no such claim.  The phrase "APA" or "Administrative Procedure Act" appears nowhere in the Amended Complaint, nor does any citation to any portion of 5 U.S.C. § 706.  The Amended Complaint cites 5 U.S.C. § 702 in the "Jurisdiction and Venue" section as a potential basis for waiver of the Federal Government's sovereign immunity, Am. Compl. ¶ 19, but offers no further explanation of any APA theory (such as what final agency action is challenged, whether Education acted arbitrarily and capriciously, unlawfully, or failed to act).  And while PHEAA's brief attempts to identify a final agency action, it fails to even argue that it was illegal in any way.  *See* Pl.'s Opp'n at 27-28.  Acknowledging these deficiencies, PHEAA requests "leave to amend in order to further develop its APA allegations," if the Court finds it appropriate.  Pl.'s Opp'n at 29.  As this request admits, "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

Nor does PHEAA show that its instant suit against Connecticut would fail to provide it an adequate remedy for its alleged dilemma about whether to produce the records to Connecticut, barring any APA claim.  *See* Fed. Defs.' MTD at 22-26.  PHEAA claims that this suit is inadequate because if the Court finds no preemption, there is a risk that Education would file some separate

action to prevent disclosure of the records.  Pl.'s Opp'n at 28-29.  As noted above, this purported threat is unfounded, as Education has no plans to file such a suit against PHEAA or otherwise penalize PHEAA for complying with an order of this Court.

### B. PHEAA Cannot Demonstrate Standing for Its Claims Against Education.

Nor does PHEAA have standing to prosecute any claim against Education, as it fails to show how it could be concretely injured by Education.  PHEAA makes the curious argument that Education somehow "constrained" or "influenced" *Connecticut* to enact and enforce its laws regulating student loan servicing.  The notion that a federal agency compelled a state to pass and enforce laws upon a federal contractor is plainly meritless.  And any injury resulting from Connecticut's enforcement actions is clearly the result of the independent action of a third party—Connecticut.  *See* Fed. Defs.' MTD at 23-24.  Nor can PHEAA demonstrate that there is a "certainly impending" risk that Education will take some enforcement action against PHEAA, when any such action is dependent on a "chain of contingencies" that includes this Court ruling that Connecticut's laws are not preempted, PHEAA producing the records at issue, and Education deciding to bring some enforcement action.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013).  Education has no plans to bring suit against PHEAA in such a scenario, negating any conclusion that PHEAA's injury is "certainly impending."  For the same reasons, any claim against Education is not ripe.  *See* Fed. Defs.' MTD at 24.

### CONCLUSION

For the reasons given above, the Court should grant Education's motion to dismiss the amended complaint and drop Education as a party from this case.

Dated: December 14, 2018                    Respectfully submitted,


                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Branch Director

                                            /s/ Rebecca M. Kopplin
                                            REBECCA M. KOPPLIN
                                            Trial Attorney (California Bar No. 313970)
                                            MICHAEL DREZNER
                                            Trial Attorney (Virginia Bar No. 83836)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street NW
                                            Washington, D.C.  20005
                                            Telephone:  (202) 514-3953
                                            Facsimile:  (202) 616-8470
                                            Email: Rebecca.M.Kopplin@usdoj.gov

                                            *Counsel for Federal Defendants*