## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,<br>Plaintiff,<br><br>v.<br><br>JORGE L. PEREZ *in his official capacity as Commissioner of the Connecticut Department of Banking*,<br><br>the CONNECTICUT DEPARTMENT OF BANKING,<br><br>BETSY DEVOS *in her official capacity as Secretary of the United States Department of Education*,<br><br>and<br><br>the UNITED STATES DEPARTMENT OF EDUCATION,<br>Defendants. | No. 3:18-cv-1114 (MPS) |

### RULING ON FEDERAL DEFENDANTS' MOTION TO DISMISS

Plaintiff Pennsylvania Higher Education Assistance Agency ("PHEAA"), a servicer of federal student loans, found itself "between a rock and a hard place" due to conflicting demands of the Connecticut Department of Banking ("CT DOB"), its state regulator, and the United States Department of Education ("Education"), its federal regulator and the agency that hired it to service the loans. The CT DOB demanded that it produce records containing identifying information of Connecticut residents whose federal student loans it services, while Education expressly prohibited it from releasing those records to the CT DOB. What to do? PHEAA's answer was to file this lawsuit, which seeks interpleader relief against the two agencies—asking the Court to require them to fight out between themselves the issue whether federal law preempts

1

the CT DOB's document demand—and a declaratory judgment on the preemption issue.
Education did not like this answer. Even though it asserts that federal preemption does indeed
bar the State's document demand and even though this lawsuit offers it a forum to litigate that
issue, it has moved to dismiss all claims against it. Education asserts that (1) the interpleader
remedy does not fit the facts of this case, and (2) PHEAA has failed to plead any other cause of
action against it.  I agree with those two assertions but find that PHEAA may nonetheless join
Education as a defendant under Rule 19 for the limited purpose of binding it to this Court's
judgment on the preemption issue. As Rule 19 contemplates, this will free PHEAA from its
predicament, sparing it from continuing to run "a substantial risk of incurring double, multiple,
or otherwise inconsistent obligations because of [Education's] interest" in this case. Fed. R. Civ.
P. 19(a)(1)(B)(ii). I therefore GRANT in part and DENY in part the Federal Defendants' motion
to dismiss, as further explained below.

## I.  FACTUAL BACKGROUND

PHEAA has named as defendants the Connecticut Department of Banking ("CT DOB")
and its Commissioner (together, "State Defendants") as well as the United States Department of
Education ("Education") and its Secretary (together, "Federal Defendants"). The following facts
are drawn from the amended complaint, ECF No. 34, and are accepted as true for the purpose of
deciding the Federal Defendants' motion to dismiss.

### A.  Administration of Federal Student Loans

Education has the authority to issue a variety of federal loans and grants to student
borrowers under the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965), and related
statutes and regulations. ECF No. 34 at ¶ 21. "Specifically relevant here are Direct Loans, which
are issued by the federal government directly to eligible student borrowers, and benefits awarded
to Direct Loan borrowers under the Public Service Loan Forgiveness ("PSLF") Program." *Id.*

Education contracts with third-party servicers – like PHEAA – to service the Direct Loans it issues. *Id*. at ¶ 22; 20 U.S.C. § 1087f(a)(1) ("The Secretary shall, to the extent practicable, award contracts for origination, servicing, and collection [of loans]."). PHEAA was selected to service federal loans on a nationwide basis in 2009, and its contract with Education was renewed in 2014. ECF No. 34 at ¶ 24.

Education regulates the servicing of these loans. *Id*. at ¶¶ 23, 25. The contract between PHEAA and Education specifies 124 obligations, many with sub-requirements, with which PHEAA must comply. *Id*. at ¶ 25. Among other things, the contract requires PHEAA to comply with federal and Education records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974. *Id*. at ¶ 26. The Privacy Act provides that federal contractors are considered employees of a federal agency for purposes of the Act's criminal penalties for prohibited disclosure of protected records. *Id*. at ¶ 27; *see also* 5 U.S.C. § 552a(i) & (m). Education monitors PHEAA's performance through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices. ECF No. 34 at ¶ 25.  PHEAA is not paid for loans that are not serviced in compliance with the contractual requirements and other applicable policies and procedures. *Id*.

PHEAA services federal and private student loans for approximately 100,000 borrowers residing in Connecticut. *Id*. at ¶ 29. Of these borrowers, about 80,000 have federal student loans owned by Education. *Id*. On May 1, 2017, PHEAA applied for a license from the CT DOB to act as a student loan servicer in Connecticut pursuant to Conn. Gen. Stat. § 36a-847(b). *Id*. at ¶ 30. PHEAA's application was approved on June 30, 2017. *Id*.

### B.    Production of Federal Student Loan Records

On November 3, 2017, PHEAA received a letter from the CT DOB explaining that it proposed to conduct a limited scope examination of PHEAA to review all accounts transferred to

PHEAA from August to October 2017 as a result of the PSLF Program. ECF No. 34 at ¶ 32. The letter included a "Student Loan Servicer Management Questionnaire and Information Request" directed to PHEAA. *Id*. at ¶ 33. The request sought PHEAA's policies and procedures related to administering the PSLF Program as well as borrower-specific information, including borrower complaints. *Id*. at ¶ 34. PHEAA responded to the request on November 7, 2017 seeking clarification as to the scope of the proposed examination and the request. *Id*. at ¶ 35. CT DOB responded the same day and limited the scope of the request in several ways. *Id*. at ¶ 36. For instance, it limited its request for borrower complaints to "a list of CT [complaints] either filed directly with [PHEAA], through the US Dept of Education, CFPB or any other entity starting 1/1/17 through October 31, 2017 regarding PSLF transfers." *Id*.

Education emailed PHEAA on November 7, 2017 with an express directive that PHEAA was prohibited under federal law from releasing any data or documentation related to PSLF to the CT DOB. *Id*. at ¶ 37. On November 9, 2017, PHEAA sought additional clarification from CT DOB about the request and the logistics of producing the documents and information requested. *Id*. at ¶ 38. The same day, PHEAA informed CT DOB of Education's position and provided contact information for Education officials so CT DOB could direct additional requests for documents to Education. *Id*. at ¶ 39.

On January 11, 2018, CT DOB told PHEAA that a telephone conference between Education and the CT DOB took place that morning, and that CT DOB agreed to issue a direct request to Education for the documents and data owned by Education that it had previously sought from PHEAA. *Id*. at ¶¶ 40-41. PHEAA memorialized this conversation in a letter to CT DOB; in the letter, PHEAA stated that it would "not be providing any responsive documents [or] data that are specific to [Education's Office of Federal Student Aid]." *Id*. at ¶ 42. Along with this

4

letter, PHEAA produced to CT DOB certain responses to the request that did not implicate the federal prohibition on disclosure and all requested documents and data not owned by Education or its Office of Federal Student Aid. *Id*. at ¶ 43. Meanwhile, on January 12, 2018, CT DOB made a direct request to Education for access to certain records. *Id*. at ¶ 44. Education denied this request on March 26, 2018. *Id*. at ¶ 50.

On March 21, 2018, PHEAA received a letter from CT DOB "formally convey[ing] [its] concerns related to [the proposed] examination [of PHEAA] and [to] provide PHEAA with an opportunity to show compliance with all lawful requirements for the retention of its student loan servicer license in Connecticut pursuant to Section 4-182(c) of the Connecticut General Statutes." *Id*. at ¶ 46. This was the first time CT DOB asserted that PHEAA failed to produce numerous records sought in the request in violation of the Connecticut Disclosure Statutes, which include Conn. Gen. Stat. §§ 36a-17, 36a-849, 36a-851.[1] These statutes provide, in pertinent part, as follows:

> (c) For the purpose of any . . . examination . . . under this title the commissioner may . . . require the production of any records which the commissioner deems relevant or material. . . .
>
> (d) Any person who is the subject of any such . . . examination . . . shall make its records available to the commissioner in readable form; provide personnel and equipment necessary, including, but not limited to, assistance in the analysis of computer-generated records; provide copies or computer printouts of records when so requested; . . . furnish unrestricted access to all areas of its principal place of business or wherever records may be located; and otherwise cooperate with the commissioner.

Conn. Gen. Stat. § 36a-17.

> (a) Each student loan servicer licensee shall maintain adequate records of each student education loan transaction for not less than two years following the final payment on such

---

[1] PHEAA also notes that to maintain its license with Connecticut, it must comply with all applicable federal laws and regulations relating to student loan servicing. ECF No. 34 at ¶ 31; Conn. Gen. Stat. § 36a-853.

student education loan or the assignment of such student education loan, whichever occurs first, or such longer period as may be required by any other provision of law.

(b) If requested by the commissioner, each student loan servicer licensee shall make such records available or send such records to the commissioner by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt, not later than five business days after requested by the commissioner to do so. Upon request, the commissioner may grant a licensee additional time to make such records available or send the records to the commissioner.

Conn. Gen. Stat. § 36a-849.

(a) In addition to any authority provided under this title, the Banking Commissioner shall have the authority to conduct investigations and examinations as follows:

(1) For purposes of . . . general or specific inquiry or investigation to determine compliance with sections 36a-846 to 36a-854, inclusive, the commissioner may access, receive and use any books, accounts, records, files, documents, information or evidence including, but not limited to, . . .

(C) any other documents, information or evidence the commissioner deems relevant to the inquiry or investigation regardless of the location, possession, control or custody of such documents, information or evidence.

Conn. Gen. Stat. § 36a-851. The March 21, 2018 letter from CT DOB stated that PHEAA's failure to produce the requested documents "constitute[s] grounds to revoke PHEAA's student loan servicer license in Connecticut pursuant to Sections 36a-852 and 36a-51 of the Connecticut General Statutes and forms a basis to take other administrative action as the Commissioner deems appropriate, including, but not limited to, initiation of proceedings to order PHEAA to cease and desist and impose a civil penalty on PHEAA of up to $100,000 per violation." ECF No. 34 at ¶ 48. The letter concluded by stating that PHEAA had to respond in writing by April 4, 2018 and that if no written response was received by that date, or CT DOB found any such response insufficient, CT DOB could issue an administrative action against PHEAA's license. *Id*. at ¶ 49.

6

On April 2, 2018, Education sent PHEAA a letter, with a copy to CT DOB, stating that the records requested by CT DOB "belong to the federal government and PHEAA is prohibited from releasing them under its contract with [Education]." *Id*. at ¶ 52. The letter also stated that "[a] state agency does not have the authority to prohibit PHEAA from servicing federal student loans when the federal government has specifically authorized it to do so." *Id*. The letter concluded by stating that Education "would be willing to discuss with the [CT DOB] the requirements of PHEAA's contract, so that the [CT DOB] may avoid imposing requirements on PHEAA that conflict with federal law." *Id*. at ¶ 53.

On April 2, 2018, PHEAA representatives participated in a phone call with CT DOB representatives. *Id*. at ¶ 54. During the call, CT DOB informed PHEAA that it would not rescind its demand that PHEAA provide an explanation for its alleged non-compliance with the Connecticut disclosure statutes. *Id*. at ¶ 54. On June 28, 2018, however, CT DOB agreed to refrain from pursuing a suspension of PHEAA's license to service student loans in Connecticut while this lawsuit was pending. *Id*. at ¶ 55.

### C.    Education's Memorandum on Records/Data and Notice on Preemption

The Director of Federal Student Aid Acquisitions, Patrick A. Bradfield, released a public memorandum on behalf of Education on December 27, 2017 regarding ownership of and access to Education's records and data. *Id*. at ¶ 56. In the memorandum, Education explained that its Office of Federal Student Aid maintains identifying information related to federal student loans and grants and that such information is protected by the Privacy Act, which provides for criminal and civil penalties for the prohibited disclosure of protected records by agency employees. *Id*. at ¶ 57. As noted above, PHEAA employees are considered employees of a federal agency for purposes of this Act. *Id*. at ¶¶ 27, 58. The memorandum also stated that any request from a third party for Education records to which a contractor has access must be made directly to Education

7

where it will be evaluated for compliance with the Privacy Act. *Id*. at ¶ 59. PHEAA shared this

memorandum with CT DOB in January 2018. *Id*. at ¶ 60.

On March 12, 2018, Education published a notice entitled "Federal Preemption and State

Regulation of the Department of Education's Federal Student Loan Programs and Federal

Student Loan Servicers" ("Preemption Notice"). *Id*. at ¶ 61; *see also* 83 Fed. Reg. 10619-01. In

the Preemption Notice, Education explained that certain state requirements conflict with

Education's power to select contractors and to determine whether contractors are in compliance

with federal law. ECF No. 34 at ¶ 62. It also explained that certain state laws may undermine the

"clear command for uniformity" in the Higher Education Act and that where "the Federal interest

requires a uniform rule, the entire body of State law applicable to the area conflicts [with] and is

replaced by Federal rules." *Id*. at ¶ 63; *see also* 83 Fed. Reg. at 10619-01.

### D.    Requested Relief

PHEAA seeks interpleader relief under Federal Rule of Civil Procedure 22 (count one) as

well as declaratory and injunctive relief regarding field preemption and conflict preemption

under 28 U.S.C. §§ 2201 *et seq*. (counts two and three):

> Defendant Pennsylvania Higher Education Assistance Agency respectfully requests the
> following relief: (i) an order requiring that the Interpleader Defendants interplead and
> settle all claims between themselves concerning the production of the Documents; (ii) an
> order that PHEAA may continue to hold the Documents and no Interpleader Defendant
> may make a claim or prohibition with respect to the Documents until the Court
> determines if state or federal law controls and whether the Documents must be produced
> or must be withheld; (iii) an order enjoining the Interpleader Defendants and all claiming
> through or acting with them from taking any action against PHEAA regarding its
> withholding or production of the Documents; and (iv) an award of such other and further
> relief as the Court may deem just, proper, and equitable.

ECF No. 34 at 17-18.

> (a) A declaratory judgment that either: (i) federal law preempts the Connecticut
> Disclosure Statutes under which the State Defendants threaten to revoke PHEAA's
> license to service student loans in Connecticut; or (ii) that the Federal Defendants'
> prohibition on PHEAA's production of the Documents is not proper and that PHEAA is

permitted to respond to the State Defendants' request for the Documents without any penalty or adverse action by the Federal Defendants;

(b) Permanent injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law.

*Id.* at 22-23. In its brief opposing the motion to dismiss, PHEAA states that it seeks "an additional limited declaration that Education may not terminate the Contract based on PHEAA's compliance with any judgment of this Court" if the Court concludes that PHEAA must produce the records at issue to the CT DOB. ECF No. 48 at 39.

## II. LEGAL STANDARDS

### A. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks and citation omitted). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court construes the complaint liberally and accepts all factual allegations as true. *Ford v. D.C. 37 Union Local 1549,* 579 F.3d 187, 188 (2d Cir. 2009). In addition, the court may refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### B. 12(b)(6)

Under Rule 12(b)(6), a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (internal quotation marks omitted), and then determine whether the plaintiff has alleged "enough facts to state a claim to

relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "After the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010) (internal quotation marks omitted). In deciding a Rule 12(b)(6) motion, the Court may consider documents attached to, integral to, or incorporated by reference in the complaint.[2] Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## III.    DISCUSSION

### A.    Interpleader

"Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability. . . ." *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993). "Interpleader litigation generally proceeds in two stages. At the first stage, the court determines whether interpleader is appropriate on the facts of the case. If the court determines that interpleader is warranted, the court continues to stage two, at which it adjudicates the adverse claims and distributes the disputed stake to one or both of the claimants." *Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 482 (S.D.N.Y. 2015). I find that the interpleader claim here fails at the first stage.

---

[2] PHEAA's contract with Education was attached as "Exhibit A" to PHEAA's original complaint, ECF No. 1-1, and was incorporated into the amended complaint by reference, ECF No. 34 at 7 n.2.

PHEAA seeks interpleader relief under Federal Rule of Civil Procedure 22. This rule

provides, in relevant part, as follows:

> (a)(1) . . . Persons with claims that may expose a plaintiff to double or multiple liability
> may be joined as defendants and required to interplead. Joinder for interpleader is proper
> even though:
>
>> (A) the claims of the several claimants, or the titles on which their claims depend,
>> lack a common origin or are adverse and independent rather than identical; or
>>
>> (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

Fed. R. Civ. P. 22(a). "[T]he protection against 'double or multiple liability' provided by Rule 22

is protection only against double or multiple liability that is unjustifiable because the plaintiff has

but a single obligation." *Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995). That is,

"[i]nterpleader is designed to prevent multiple recoveries only where there are not multiple

obligations; it is not intended to telescope multiple obligations into one." *Id.* at 169. PHEAA

argues that this case "is a paradigmatic example of double liability." ECF No. 48 at 23. More

specifically, it argues that it has incurred only one obligation "to service loans and retain records

for the federal government in compliance with applicable state and federal laws" and that this

obligation has given rise to "a claim under state law that PHEAA must permit the [CT DOB] to

access Education's records, and a conflicting claim under federal law that PHEAA must not

permit the [CT DOB] to access those same records." *Id.* at 23-24. I disagree.

PHEAA faces conflicting demands not from a single obligation, but from multiple

obligations. Interpleader is not appropriate where a party "has inconsistent duties to separate

parties under two separate, but related, agreements, and may have breached one agreement by

complying with duties under the other." *Bankers Trust Co. v. Manufacturers Nat. Bank of

Detroit*, 139 F.R.D. 302, 307-08 (S.D.N.Y. 1991); *see also Coopers & Lybrand, L.L.P. v.

Michaels*, 1995 WL 860760, at *5 (E.D.N.Y. Oct. 31, 1995) ("[I]nterpleader is inappropriate

when an apparent inconsistency in defendants' claims is justified by the fact that the plaintiff may have independent obligations to each defendant-claimant."); *Xerox Corp. v. Nashua Corp.*, 314 F. Supp. 1187, 1189 (S.D.N.Y. 1970) ("The action will lie where all that is involved is the threat of multiple liability on what is in fact but a single claim or obligation.").

In *Bankers Trust*, a bank sought interpleader relief for a declaration of its rights and legal relations with respect to the management of a rail-car fleet for which it served as a trustee. 139 F.R.D. at 303-04. The bank had entered into three interrelated agreements on the same date: (1) it held title to the rail cars under the "Owners Trust Agreement" for the benefit of two companies (Ford and Braecar); (2) it financed the Owners Trust's acquisition of rail cars under the "Equipment Trust Agreement"; and (3) it entered into a "Management Agreement" assigning all daily responsibilities for the rail car fleet to Braecar's parent company. *Id*. at 304. As a result of subsequent events, the bank found itself with inconsistent duties to separate parties under two of these agreements. The court explained that "the threat of double or multiple liability must result from some single right or obligation which the interpleader plaintiff has in relation to one of the defendants." *Id*. at 307. It rejected the bank's request for interpleader relief because the bank's "potential liability . . . [arose] because [it] chose to comply with its supposed obligation to Ford under the Owners Trust Agreement to terminate the Management Agreement instead of complying with its separate obligation to Bankers Trust under the Equipment Trust Agreement to continue the Management Agreement." *Id*. at 308. The court explained that the "situation d[id] not come within the scope of rule interpleader" because "[i]nstead of multiple liability on a single obligation, [the bank] actually face[d] multiple liability on multiple obligations." *Id*.

As the Federal Defendants note, PHEAA's potential liabilities also arise from two independent obligations. One obligation arises from its contract with Education. ECF No. 34 at

¶¶ 24, 26-27, 37, 53 (alleging that PHEAA is prohibited from releasing certain documents under federal law and its contract with Education). A second obligation arises from Connecticut's statutory requirements for loan servicer licensees. *Id*. at ¶¶ 30, 32, 46-49 (alleging that PHEAA's application for a loan servicer license from the CT DOB was approved in 2017 and that PHEAA is required to comply with the Connecticut disclosure statutes in order to retain the license). PHEAA chose both to enter into the contract with Education and to service loans of Connecticut borrowers, thereby subjecting itself both to the provisions of the contract and to Connecticut's licensing requirements. The "claims that may expose," Fed. R. Civ. P. 22, PHEAA to the conflicting demands it faces arise from these two separate sources. Contrary to PHEAA's suggestion, ECF No. 48 at 23, the CT DOB's "claim" against PHEAA does not arise from PHEAA's contract with Education; it arises from state statutes. And although PHEAA asserts that its contract with Education also requires it to comply with state law, ECF No. 34 at ¶ 35; *see also* ECF No. 1-1 at 24, Education's "claim" in this case does not arise from state law; it arises from contractual provisions requiring PHEAA to comply with the substantive provisions of the federal Privacy Act. *See* ECF No. 34 at ¶¶ 26-27 (describing provisions requiring compliance with Privacy Act); *id.* at ¶ 52 (describing Education's April 2 letter stating that the requested records belong to the federal government and that their release was prohibited under the contract); *id*. at ¶ 56-59 (describing public memorandum issued by Education stating that any requests for records must comply with the Privacy Act). Just as in *Bankers Trust*, PHEAA has inconsistent duties to separate parties under separate obligations, and may breach one duty by complying with the other. And just as in *Bankers Trust*, rule interpleader is not appropriate in this situation.

I recognize that, in this case, the conflict between the two separate obligations can be resolved by consulting a single source of law to decide a single legal issue, namely, whether, according to the law of preemption, CT DOB's demand for documents is preempted by federal law, the provisions of which are incorporated into PHEAA's contract with Education. This circumstance arguably distinguishes this case from *Bankers Trust* and like cases involving separate agreements. Nonetheless, while modern interpleader is meant to be "remedial" and "liberally construed," *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967), PHEAA cites no case in which a court has found interpleader appropriate in a situation remotely like this one. Because I find interpleader improper on these facts, I need not address the Federal Defendants' additional argument that any interpleader dispute must concern ownership of property. Finally, "a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable." *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). For reasons discussed below, joinder under Rule 19 provides PHEAA another avenue through which it can obtain the core relief it seeks. Thus, the Federal Defendants' motion to dismiss is GRANTED as to PHEAA's claim for interpleader relief.

**B.    Declaratory Judgment**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Here, PHEAA seeks a declaration as to whether federal law preempts state law under (1) the doctrine of field preemption, ECF No. 34 at ¶¶ 86-87, and/or (2) the doctrine of conflict preemption, *id*. at ¶¶ 96-

14

97. The Federal Defendants argue that PHEAA's claim for declaratory relief against them should be dismissed because it is not supported by any cause of action against them falling within this Court's jurisdiction. ECF No. 43-1 at 18-22. For the reasons that follow, I agree that PHEAA alleges no cause of action against the Federal Defendants that falls within this Court's jurisdiction, but nonetheless find that they may be joined as required parties under Rule 19 to PHEAA's claim for declaratory judgment against the State Defendants.

### 1.   Cause of Action

"[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights." *In re Jt. E. and S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (internal citations omitted). That is, the "Declaratory Judgment Act does not expand jurisdiction. Nor does it provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable. Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Id.* (internal citations omitted). PHEAA fails to allege a cause of action against the Federal Defendants over which this Court has jurisdiction; therefore, it may not seek a declaratory judgment against the Federal Defendants.

PHEAA argues that the Federal Defendants have made "credible threat[s]," ECF No. 48 at 38, of enforcement against PHEAA in the event that it complies with the State Defendants' production request:

> Education's mounting pressure on that point has been unmistakable: first, the November 7, 2017 email to PHEAA [stating that PHEAA was prohibited under federal law from releasing the requested data to the CT DOB]; then the December 2017 Education Memorandum stating that production of documents to a third party, i.e., compliance with the State Defendants' request here, could result in criminal penalties under the Privacy Act; next, the Preemption Notice reiterating Education's view that state law in this area is preempted; and finally, the April 2, 2018 letter warning that PHEAA would be in violation of its Contract with Education if it produced the documents at issue.

ECF No. 48 at 38. While I agree that this course of conduct suggests that Education has made a credible threat to take action against PHEAA should it comply with CT DOB's demands, it does not follow that PHEAA has a cause of action against Education that falls within this Court's jurisdiction.

First, PHEAA cannot establish a cause of action on the basis of potential penalties under the Privacy Act or Education's communications with regard to such penalties. In the complaint, PHEAA alleges that Education "could seek civil or criminal penalties for violation of the Privacy Act," ECF No. 34 at ¶ 73, but this prospect is not a sufficiently imminent harm to satisfy the "injury" requirement of standing, and even if it was, the Court could not redress such a harm in this lawsuit. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining that to establish standing, "the plaintiff must have suffered an injury in fact" that is "actual or imminent" and that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (internal quotation marks omitted). A federal government contractor's violation of the Privacy Act may subject it and its employees "to criminal liability and the named agencies to civil liability, but they do not subject [the contractor] itself to civil liability." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 125 n.3 (2d Cir. 2008). 48 C.F.R. § 52.224-2, which is incorporated into PHEAA's contract with Education, ECF No. 1-1 at 6-7, explains that "a civil action may be brought against the *agency* involved . . . and criminal penalties may be imposed upon the officers or employees of the agency . . . . [T]he Contractor and any employee of the Contractor is considered to be an employee of the agency." (emphasis added). *See also Burch*, 551 F.3d at 125 n.3. Further, the right of action authorized by the Privacy Act belongs to the individual whose personal information is mishandled in violation of the Act*, see* 5 U.S.C. 552a(g), and there is no suggestion in the complaint that any such

individual has threatened suit. And while PHEAA and its employees could be subject to criminal liability for violations of the Privacy Act, Education has no authority to bring criminal prosecutions, and no relief the Court could issue against Education would forestall such a prosecution. So PHEAA's allegations about the Privacy Act do not state a claim against the Federal Defendants.

The contract is a different matter. It is reasonable—in light of Education's November 7, 2017 email stating that PHEAA was prohibited under federal law from releasing the requested data, ECF No. 34 at ¶ 37, and Education's April 2, 2018 letter stating that "PHEAA is prohibited from releasing [the requested records] under its contract," *id*. at ¶ 52—for PHEAA to believe that the Federal Defendants will terminate its contract or bring suit for breach of contract if it complies with CT DOB's request. But this Court does not have jurisdiction over any cause of action that arises from the contract. Rather, the Court of Federal Claims would have sole jurisdiction of such claims under the Contract Disputes Act ("CDA"). *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) ("The [CDA] impliedly forbids relief other than remedies provided by the Court of Federal Claims for actions that arise out of a contract with the United States.") (internal quotation marks and alterations omitted); 28 U.S.C. § 1346(a)(2) ("[T]he district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States."); 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States.").

PHEAA argues that its cause of action is not subject to the CDA, but is instead a cause of action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702-05, because it has been

adversely affected by a final agency action for which it has no other adequate remedy—namely, Education's November 7, 2017 email and April 2, 2018 letter. ECF No. 48 at 33-34. This argument fails for two reasons. First, PHEAA did not set forth an APA claim in its complaint. PHEAA merely cited 5 U.S.C. § 702 in the "Jurisdiction and Venue" section of its complaint as a basis for waiver of the federal government's sovereign immunity, ECF No. 34 at ¶ 19, and did not actually allege a claim under the APA.

Second, even if the Court permitted PHEAA to amend its complaint to add an APA claim along the lines set forth in its briefing, ECF No. 48 at 33-36, such a claim would still in substance constitute a cause of action arising from the contract and thus one over which the Court of Federal Claims would have sole jurisdiction. The "agency action" alleged in the complaint and directed at PHEAA is Education's implied threat to terminate its contract with PHEAA. Under Second Circuit precedent, a claim based on such an action – no matter how it is labeled – falls under the CDA. In *Up State*, the Second Circuit applied a test developed by the District of Columbia Circuit in *Megapulse, Inc. v. Lewis,* 672 F.2d 959 (D.C.Cir.1982) "for distinguishing contract claims from challenges to agency action." *Id*. at 375. Under this two-pronged test, the "determination of whether an action is at its essence a contract action . . . depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought." *Id*. (internal quotation marks omitted).

In *Up State*, a Credit Union had agreed to furnish services to the troops stationed at Fort Drum and entered into an agreement with the Army that authorized it to construct, own, and operate a building on land at Fort Drum for this purpose. 198 F.3d at 373. After a dispute arose, the Army further agreed that it would (1) enter into a one-year land lease with the Credit Union under which the Credit Union would own the building and lease the land from the Army; (2) take

title to the building at the end of the one-year land lease; and (3) give the Credit Union first choice at that time to continue occupying the building under a facility lease. *Id.* at 373-74. When the term of the land lease expired, the Army did not take title to the building and then lease it to the Credit Union as it had allegedly promised, but rather asked the Credit Union to renew its lease for the land. *Id.* at 374. The Credit Union brought suit seeking a declaratory judgment that the Army was the title owner of the building and an injunction directing the Army to execute the facility lease. *Id.* Although the Credit Union sought to characterize its action as an APA challenge rather than a contract dispute by arguing that an Army regulation granted it a non-contractual right to enter into a facility lease, the Second Circuit applied the two-pronged *Megapulse* test and determined that the Credit Union's claim arose from a contract and the Court of Federal Claims therefore had exclusive jurisdiction over the matter under the CDA. *Id.* at 376-377.

In this case, PHEAA argues that it states a claim under the APA because it "has been adversely affected by a 'final agency action' for which it has no other adequate remedy—namely, Education's November 7, 2017 email and April 2, 2018 letter, both of which directed PHEAA not to comply with state law." ECF No. 48 at 34. It explains that these communications from the Federal Defendants "warn that substantial legal consequences—e.g., potential claims by Education against PHEAA for breach of contract and violations of federal law—will follow if PHEAA complies with the State Defendants' request" and seeks to prevent the Federal Defendants from "fil[ing] a separate action against it alleging that its disclosure of records would violate the Contract and the Privacy Act."[3] *Id.* at 35-36. PHEAA goes on to state that it seeks a

---

[3] The Court notes that, for reasons discussed above, Federal Defendants cannot bring suit against PHEAA for violations of the Privacy Act, although they may enforce the substantive provisions of the Act indirectly to the extent the contract itself requires PHEAA to comply with the Act.

"limited declaration that Education may not terminate the Contract based on PHEAA's compliance with any judgment of this Court" if the "Court concludes that PHEAA is obligated to produce the records at issue to the State Defendants." *Id.* at 39.

Applying the two-pronged analysis from *Up State* and *Megapulse*, I find that the APA claim PHEAA attempts to set out in its briefing arises from its contract with Education. Like the plaintiff in *Up State*, the "right" that PHEAA articulates "stems from no independent, non-contractual source." *Up State*, 198 F.3d at 376. Rather, the "right" that PHEAA seeks to protect is a right to continue its contract with Education. Had it not entered into a contract with Education in the first place, it would have no right to continuation of that contract, and therefore no cause of action. *Up State*, 198 F.3d at 377 ("[T]he right that the Credit Union seeks to vindicate is not ultimately based on anything other than the lease with the Army . . . In the absence of a contract with the Army, therefore, it is likely that no cause of action would exist at all.") (internal quotation marks omitted).[4]

The second prong of the test—the type of relief sought—makes even clearer that the APA claim PHEAA seeks to allege is subject to the CDA. A declaration or injunction prohibiting Education from terminating its contract with PHEAA would be akin to a contractual remedy for specific performance; thus, the attempt to characterize this component of PHEAA's claim for declaratory or injunctive relief as an APA challenge instead of a contract dispute fails because "a

---

[4] True, it is possible to characterize the "right" PHEAA seeks to enforce against the Federal Defendants so that it does not sound in contract. For example, one could call it the right to comply with the CT DOB's document request to the extent that request is not preempted. But such a "right" does not run against the federal government. Although, as discussed below, federal courts recognize a cause of action against state officials seeking a declaration that federal law preempts state law, there is no reciprocal "non-preemption" cause of action against a federal official or agency. In addition, such a "right" would not entitle its holder to a declaratory judgment concerning termination of a government contract, which is part of the relief PHEAA is seeking here.

complaint involving a request for specific performance must be resolved by the Claims Court." *Ingersoll-Rand Co. v. U.S.*, 780 F.2d 74, 80 (D.C. Cir. 1985); *see also Up State*, 198 F.3d at 377 ("The Credit Union attempts to characterize this action as an APA challenge rather than a contract dispute by arguing that [a regulation] grants it a non-contractual right to enter into a facility lease. . . . [W]e find that . . . an order directing the Army to enter into a facility lease . . . would be analogous to a contractual remedy for specific performance because it would enforce an alleged agreement between the parties. As a result, we conclude that the CDA . . . provides the sole basis for waiver of sovereign immunity in this case and therefore that the Court of Federal Claims has exclusive jurisdiction over this matter."). Thus, PHEAA fails to allege a cause of action against the Federal Defendants over which this Court has jurisdiction.

It is not contested, however, that PHEAA may seek a declaratory judgment against State Defendants concerning the preemption of state law. "[T]he Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144 (2d Cir. 2016); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) ("[A]s [the Supreme Court has] long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.").[5] Moreover, "[a] party is not required to pursue arguably illegal activity . . . or expose itself to criminal liability before bringing suit to challenge a statute alleged to violate

---

[5] As noted, the law does not recognize a similar cause of action against Federal Defendants; PHEAA has cited no authority recognizing a claim against a federal officer or agency for a declaratory judgment that a state law is *not preempted* by federal law.

federal law." *Friends of the E. Hampton Airport*, 841 F.3d at 144 (internal quotation marks

omitted). Indeed, other student loan servicers have sought declaratory judgments that federal law

preempts state law aiming to regulate student loan servicing. *See Student Loan Servicing All. v.*

*D.C.*, 351 F. Supp. 3d 26 (D.D.C. 2018), *appeal dismissed sub nom. Student Loan Servicing All.*

*v. Taylor*, 2019 WL 2158372 (D.C. Cir. May 15, 2019).

* * *

In sum, PHEAA fails to allege a cause of action falling within this Court's jurisdiction;

however, this Court *does* have jurisdiction over PHEAA's declaratory judgment action against

State Defendants seeking a determination that federal law preempts state law. For the reasons

that follow, I find that PHEAA may join the Federal Defendants as required parties under Rule

19 to its proper action against State Defendants.

   2. *Rule 19*

Federal Rule of Civil Procedure 19 governs compulsory party joinder in federal district

courts. It provides, in relevant part, as follows:

(a) Persons Required to Be Joined if Feasible.

   (1) *Required Party.* A person who is subject to service of process and whose joinder
   will not deprive the court of subject-matter jurisdiction must be joined as a party if:

      (A) in that person's absence, the court cannot accord complete relief among
      existing parties; or

      (B) that person claims an interest relating to the subject of the action and is so
      situated that disposing of the action in the person's absence may:

         (i) as a practical matter impair or impede the person's ability to protect the
         interest; or

         (ii) leave an existing party subject to a substantial risk of incurring double,
         multiple, or otherwise inconsistent obligations because of the interest.

   . . .

22

> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible
> cannot be joined, the court must determine whether, in equity and good conscience, the
> action should proceed among the existing parties or should be dismissed. . . .

Fed. R. Civ. P. 19(a). Even though PHEAA has not alleged a cause of action against the Federal

Defendants, it may nonetheless join them as required parties under Rule 19. *E.E.O.C. v. Peabody*

*W. Coal Co.*, 610 F.3d 1070, 1076 (9th Cir. 2010) ("Although [plaintiff] lacked statutory

authority to state a cause of action against the [party to be joined], joinder . . . for the purposes of

res judicata was still possible.") (internal quotation marks omitted); *see also Sierra Club v.*

*Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988) (although it was not clear that environmental group

suing Bureau of Land Management under APA also had cause of action against county seeking

to develop its right of way over federal land, court allowed joinder of county under Rule 19

because the environmental group "cannot hope for complete relief if the County is not enjoined

from construction during the pendency of the APA action against the federal defendants," "[t]he

County claims an interest in the subject of the action, the Burr Trail," and the "BLM would face

a substantial risk of inconsistent obligations if the County, unbound by the outcome in this case,

sought declaratory or other relief against BLM at variance with the orders in this case"), *partially*

*overruled on other grounds*, *Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970

(10th Cir. 1992).[6]

  This reading of Rule 19 is consistent with Supreme Court precedent. In *Teamsters*, the

Supreme Court vacated an injunction against a union because it was not liable for any

---

[6] The Court notes that a few courts have disagreed that a court may join a party under Rule 19 in the absence of a cognizable cause of action against the party. *See, e.g.*, *John Doe, et al. v. Meyers et al*, 2019 WL 4060068 (D.N.H. Aug. 28, 2019); *Gonzalez-Aviles v. Perez*, 2016 WL 3440581 (D. Md. June 17, 2016). I have been unable to find a Second Circuit decision addressing the issue, and the parties have not cited one.

discrimination; nevertheless, the Court explained that the "union will properly remain in this litigation as a defendant [under Rule 19(a)] so that full relief may be awarded the victims of the employer's . . . discrimination." *Intl. Broth. of Teamsters v. U.S.*, 431 U.S. 324, 356 n.43 (1977). The Supreme Court reaffirmed this principle a few years later in *General Building Contractors*, explaining that while the imposition of "injunctive relief against a party found not to have violated any substantive right" is not permitted, "[that was] not to say that [such a party] . . . might not, upon an appropriate evidentiary showing, be retained in the lawsuit and even subjected to such minor and ancillary provisions of an injunctive order as the District Court might find necessary to grant complete relief to [plaintiffs] from the discrimination they suffered at the hands of the [remaining defendant]." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982). In her concurrence, Justice O'Connor emphasized this point, observing that "it is entirely possible that full relief cannot be granted without subjecting the [employers, who were found not to have engaged in illegal discrimination] to some incidental or ancillary provisions of the court's injunctive order [against the union defendants]" and "the Court in *Teamsters* cited Rule 19(a)(1) of the Federal Rules of Civil Procedure, which requires a district court to join a person as a party if 'in his absence complete relief cannot be accorded among those already parties.'" *Id*. at 405 & n.3 (O'Connor, J., concurring).

In this case, the Federal Defendants are required parties under Rule 19(a)(1)(B)(ii). A person is a required party under Rule 19(a)(1)(B)(ii) if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Such a person must be joined if it is

"subject to service of process" and if its "joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1).

The first inquiry under this provision is whether the person to be joined claims an interest relating to the subject of the action. Although the Federal Defendants seek to be released from this case as defendants, they have clearly claimed an interest in the subject of the action— namely, whether or not PHEAA is obligated to disclose certain records to the CT DOB. In fact, they explain that they may file a "statement of interest" under 28 U.S.C. § 517, which provides that "any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States." They go on to explain that "the United States recently filed a Statement of Interest in a similar case involving analogous provisions of D.C. law," and that "[a]s it did there, the government would likely argue here that Connecticut's regulation of federal student loan servicing violates the Supremacy Clause." ECF No. 43-1 at 16-17. The Federal Defendants also expressed interest in the subject of the action by sending various communications about it directly to PHEAA. ECF No. 34 at ¶ 37 ("PHEAA also received an email from [Education] on November 7, 2017 containing an express directive from [Education]'s Office of Federal Student Aid advising that PHEAA was prohibited under federal law from releasing any data or documentation related to PSLF to the Connecticut DOB."); *id.* at ¶ 52 (alleging that Education sent a letter to PHEAA stating that the records requested by CT DOB "belong to the federal government and PHEAA is prohibited from releasing them under its contract with [Education]"). There is no doubt that the Federal Defendants claim an interest in the subject of this action.

The next inquiry is whether disposing of the action in the absence of the Federal Defendants would leave PHEAA subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations because of the Federal Defendants' interest in the subject of

this action. The Ninth Circuit's analysis of Rule 19 in the *Peabody* cases illustrates the risk to

existing parties of leaving an interested person out of a case. *See Peabody W. Coal Co.*, 400 F.3d

774, 781 (9th Cir. 2005) ("*Peabody 2005*"); *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070,

1076 (9th Cir. 2010) ("*Peabody 2010*"). In these cases, the Equal Employment Opportunity

Commission ("EEOC") brought suit against Peabody Western Coal Company for Title VII

violations, alleging that it discriminated against non-Navajo Native Americans in hiring workers

at the coal mines it had leased from the Navajo Nation. Peabody's leases with the Nation

included provisions requiring that preference in employment be given to members of the Nation.

The Department of the Interior approved the leases and both the Nation and the Secretary of the

Interior retained the power to cancel them. Although the EEOC asserted a cause of action only

against Peabody, and could assert no cause of action against the Nation, the Ninth Circuit held in

*Peabody 2005* that the Nation could be joined under Rule 19 as a required party; in *Peabody

2010*, it reaffirmed this holding and further held that the Secretary was also a required party

under Rule 19.

The Ninth Circuit explained why the Nation and the Secretary were required parties

under Rule 19 as follows:

> If the EEOC is victorious in its suit against Peabody . . . declaratory and injunctive relief
> could be incomplete unless the Nation is bound by res judicata. The judgment will not
> bind the Navajo Nation in the sense that it will directly order the Nation to perform, or
> refrain from performing, certain acts. But it will preclude the Nation from bringing a
> collateral challenge to the judgment. If the EEOC is victorious in this suit but the Nation
> has not been joined, the Nation could possibly initiate further action to enforce the
> employment preference against Peabody, even though that preference would have been
> held illegal in this litigation. Peabody would then be . . . between the proverbial rock and
> a hard place—comply with the injunction prohibiting the hiring preference policy or
> comply with the lease requiring it.

*Peabody 2005*, 400 F.3d at 780 (internal quotation marks omitted).

> If the Secretary is not made a party and if EEOC prevails, the Secretary may choose to cancel the leases or to modify them to eliminate the Navajo employment preference. Alternatively, the Secretary may choose to continue the leases in their current form, ignoring the judgment in the case to which he has not been made a party. If the Secretary chooses to do this, he will put both Peabody and the Nation between the proverbial rock and a hard place, forcing them to choose between complying with the injunction or risking cancellation of the leases for violating terms mandated by the Secretary. The Secretary therefore qualifies as a person to be joined under Rule 19(a)(1)(B)(ii).

*Peabody 2010*, 610 F.3d at 1082 (internal quotation marks and citations omitted).

Similar reasoning applies here. If the state laws under which the CT DOB is seeking documents from PHEAA are found not to be preempted and the Federal Defendants are not made parties, then they may choose to ignore this Court's judgment on the preemption issue. There would be no obstacle to their bringing a breach-of-contract claim against PHEAA or terminating their contract with PHEAA on the ground that PHEAA had violated federal law by complying with the CT DOB's document request. If they took these steps, they would put PHEAA "between the proverbial rock and a hard place," forcing PHEAA to choose between complying with state law in accordance with a non-preemption determination made by this Court and complying with the inconsistent obligation set out in its contract with Education (and possibly an inconsistent judgment in litigation initiated by Education). If they are joined as defendants under Rule 19, then, while a judgment by this Court of non-preemption could not order them to perform, or refrain from performing, any acts, it would bind them for purposes of res judicata, preclude them from bringing a collateral challenge to the judgment, and furnish a preclusion defense to PHEAA in any lawsuit by Education to terminate the contract. Disposing of the action in the Federal Defendants' absence may thus leave PHEAA subject to a substantial risk of incurring inconsistent obligations.[7]

---

[7] Education's repeated assurances in its reply brief that it "has no plans to file . . . suit against PHEAA or otherwise penalize PHEAA for complying with an order of this Court," ECF No. 49

Finally, the Court must determine whether the Federal Defendants are "subject to service of process" and whether joinder will "deprive the court of subject-matter jurisdiction." Rule 19(a)(1). The Federal Defendants do not contest that they are subject to service of process; in fact, they were served and have appeared in this case. *See* ECF Nos. 19, 20, 30. As to subject-matter jurisdiction, the Federal Defendants suggest in a footnote that federal sovereign immunity bars the claims against them. *See* ECF No. 43-1 at 22 n.2. I disagree. "Section 702 of the APA waives the federal government's sovereign immunity in actions for non-monetary relief against an agency or officer thereof brought under the general federal question jurisdictional statute." *Sharkey v. Quarantillo*, 541 F.3d 75, 91 (2d Cir. 2008) (internal quotation marks and alterations omitted); *see also Gupta v. S.E.C.*, 796 F. Supp. 2d 503, 509 (S.D.N.Y. 2011) ("[This] waiver of sovereign immunity applies to any suit whether under the APA or not."). Claims against state officials seeking prospective relief based on federal preemption arise under the general federal question statute. *Armstrong*, 135 S. Ct. at 1384 ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity."); *MCI Telecomm. Corp. v. Frisby*, 998 F. Supp. 625, 629 (D. Md. 1998) ("The Supreme Court, in *Ex parte Young*, permitted federal-question jurisdiction over suits against state officials . . . when the suit seeks only prospective, injunctive relief to end a continuing violation of federal law.") (internal quotation marks omitted).

---

at 11, do not mitigate this risk.  At a September 4, 2019 telephonic status conference, counsel for Education advised that her client refused to elaborate on this assurance other than to say that Education has no <u>current </u>plans to penalize PHEAA for complying with an order of this Court. Such a lawyerly "assurance," of course, provides no comfort to PHEAA that Education will not formulate such plans in the future and thus leaves it exposed to the same risk of inconsistent obligations it faced when it filed this lawsuit.

To be sure, further analysis is necessary because "nothing in the APA confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Up State*, 198 F.3d at 375 (internal quotation marks omitted). But I find that the only two statutes suggested in the parties' briefs—20 U.S.C. § 1082 and the Contract Disputes Act—either do not apply or do not "forbid[] the relief . . . sought."

I turn first to 20 U.S.C. § 1082. The parties discuss this statute briefly and only in footnotes. It provides, in relevant part, as follows:

(a) General powers

In the performance of, and with respect to, the functions, powers, and duties, *vested in him by this part*, the Secretary may—

. . .

(2) sue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States, and such district courts shall have jurisdiction of civil actions arising under this part without regard to the amount in controversy, and action instituted under this subsection by or against the Secretary shall survive notwithstanding any change in the person occupying the office of Secretary or any vacancy in that office; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control . . .

20 U.S.C. § 1082 (emphasis added). Section 1082 is in Part B of the Higher Education Act. 20 U.S.C. §§ 1071–1087-4, which relates to the Federal Family Education Loan Program. So, when it provides that "[i]n the performance of, and with respect to, the functions, powers, and duties, vested in him by this *part*, the Secretary may . . . sue and be sued" (emphasis added), it indicates that the consent to suit applies only to actions related to the Secretary's functions, powers, and duties under Part B. According to the complaint, however, PHEAA and Education entered into a contract under Section 1087f. 20 U.S.C. § 1087f (a)(1); ECF No. 34 at ¶ 22. Section 1087f is found in Part D, which relates to the William D. Ford Direct Loan Program—not Part B—of the

Higher Education Act. And while there are provisions making clear that *loans* issued under Part D are subject to the same terms, conditions, and benefits as loans issued under Part B, 20 U.S.C. § 1087e; 20 U.S.C. § 1087a(b)(2), and that contractors with Section 1087f contracts must comply with certain requirements set out under Part B, 20 U.S.C. § 1087e(p), I have not found, and the parties have not cited, language incorporating into Part D the Secretary's "general powers," including the consent-to-suit language of Section 1082, from Part B. Plainly, if Section 1082 does not apply to this suit, the general waiver of sovereign immunity under Section 702 of the APA applies and the suit may proceed.

Even if Section 1082 does apply, a suit for declaratory relief may proceed against the Federal Defendants. Section 1082 expressly prohibits the issuance of "attachment, injunction, garnishment, or other similar process, mesne or final, . . . against the Secretary or property under the Secretary's control," but says nothing about a declaratory judgment.[8] Some courts have concluded "that the limited waiver of sovereign immunity [in Section 1082] does not allow declaratory relief that functions as injunctive relief by another name," *Carr v. DeVos*, 369 F. Supp. 3d 554, 560 (S.D.N.Y. 2019), but this would not prevent the Court from issuing a declaratory judgment as to the only issue in this case, i.e., whether CT DOB's demand for documents is preempted by federal law. And although PHEAA requests some declaratory relief that would function as injunctive relief, *see* ECF No. 34 at 23 (seeking a declaratory judgment "that the Federal Defendants' prohibition on PHEAA's production of the Documents is not

---

[8] The Court notes that, in addition to seeking a declaratory judgment as to preemption, PHEAA is also seeking "injunctive relief against the State Defendants or Federal Defendants insofar as such relief is necessary and proper to ensure compliance with the Court's declaration as to the applicability of state and federal law," ECF No. 34 at 23 ¶ (b). The imposition of "injunctive relief against a party found not to have violated any substantive right" is not permitted, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982), so injunctive relief against Federal Defendants is barred whether or not it is prohibited by Section 1082.

proper and that PHEAA is permitted to respond to the State Defendants' request for the Documents *without any penalty or adverse action by the Federal Defendants*) (emphasis added), this Court will not issue such declaratory relief. As discussed above, the only cause of action over which this Court has jurisdiction is a claim against State Defendants that state law is preempted, and any declaratory judgment this Court issues will be confined to that issue. Such declaratory relief would not function as an injunction as it would not require the Federal Defendants to do, or not do, anything. It would simply bind them for purposes of res judicata.

The Contract Disputes Act does not prohibit binding the Federal Defendants to such a declaration either. The Act "forbids relief other than remedies provided by the Court of Federal Claims for actions that arise out of a contract with the United States." *Up State*, 198 F.3d at 375 (internal quotation marks and alterations omitted). PHEAA's preemption claim against the State Defendants does not arise from its contract with Education, but from the Court's equitable power to enjoin unconstitutional actions by state officers. *See Armstrong*, 135 S. Ct. at 1384. And the Court will not be awarding any relief with respect to the contract; it will not be interpreting or enforcing the contract or barring the Federal Defendants from terminating or seeking relief under it. The Court's ruling will simply bind the Federal Defendants to the preemption determination. Thus, the CDA does not forbid the relief sought in this case, and does not prevent the joinder of the Federal Defendants.

In sum, the Federal Defendants are required parties under Rule 19(a)(1)(B)(ii), and are not protected from joinder by sovereign immunity.

* * *

Before concluding, I address a final concern raised by the Federal Defendants. In the portion of their brief attacking the interpleader claim, the Federal Defendants argue that

permitting PHEAA's interpleader action could draw the United States into litigation whenever a private plaintiff raises a preemption defense. I address this "slippery slope" argument here as the same concern might be raised as an objection to joining the Federal Defendants under Rule 19. I find that the facts of this case do not implicate this concern because this is not a garden-variety preemption case between a private party and a state agency. The federal government has thrust itself into this dispute, going so far as to implicitly threatening to terminate its contract with PHEAA if it bows to the State's demands. This unusual circumstance satisfies two prerequisites to joinder that standard preemption cases would not. The first is that the person to be joined claim an interest in the subject of the action; as discussed above, the Federal Defendants have expressed a keen interest in the subject of this action. The second is that disposing of the action in the absence of the person to be joined would leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the absent person's interest in the subject of this action; as discussed above, the risk of inconsistent obligations is real and substantial in this case because of the Federal Defendants' implied threat to terminate the contract and refusal to disavow imposing penalties on PHEAA if it discloses documents to State Defendants in accordance with a preemption determination by this Court. In a garden-variety preemption case, by contrast, the party asserting preemption against state officials does not have a federal agency breathing down its neck.

## IV.   CONCLUSION

For the reasons discussed above, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

/s/_____
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             September 13, 2019

32