UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, <br> *Plaintiff,* | : <br> : <br> : <br> : <br> : | |
| VS. | : <br> : | 3:18CV1114 (MPS) |
| JORGE L. PEREZ, COMMISSIONER OF THE CONNECTICUT DEP'T OF BANKING, THE CONNECTICUT DEP'T OF BANKING, BETSY DEVOS, SECRETARY OF THE U.S. DEP'T OF EDUCATION, AND THE U.S. DEP'T OF EDUCATION. <br> *Defendants.* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | NOVEMBER 20, 2019 |

## MEMORANDUM OF LAW IN SUPPORT OF THE STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action for declaratory and injunctive relief brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The plaintiff, Pennsylvania Higher Education Assistance Agency, is a contractor of the U.S. Department of Education responsible for servicing federal student loans held by Connecticut residents, among other things. It has refused to comply with Connecticut law authorizing state agency examinations of its federal loan servicing activities on orders from the U.S. Department of Education which, under the Trump Administration, now views state examination laws as preempted by the Higher Education Act, 20 U.S.C. §§ 1001-1155.

The plaintiff seeks an order declaring whether Connecticut examination laws are preempted by the Higher Education Act and corresponding injunctive relief.

For the reasons hereinafter set forth, the State Defendants, Jorge Perez, Commissioner of the Connecticut Department of Banking, and the Department of Banking ("Connecticut DOB") respectfully request a judgment pursuant to Federal Rule of Civil Procedure 56 (a) declaring that

Connecticut law is not preempted and requiring Pennsylvania Higher Education Assistance Agency to comply with state examination requirements.

## FACTS

### 1. Background

Pursuant to the William D. Ford Direct Loan Program, Title IV, Part D of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. § 1087a et seq., the U.S. Department of Education ("ED") makes loans directly to student borrowers who, in turn, repay the loans directly to ED ("Direct Loans").  Under 34 CFR 685.219, borrowers who work for a qualified employer and make 120 payments on their debt may seek loan forgiveness pursuant to the Public Service Loan Forgiveness Program ("PSLF").

ED does not service Direct Loans and instead contracts with third-party servicers to perform this function.  (Amend. Complaint ¶¶ 1, 22); see also 20 U.S.C. § 1087f.  The services include the administration of borrower benefits such as PSLF.  (Id. ¶ 23).  The plaintiff, Pennsylvania Higher Education Assistance Agency ("PHEAA") is a Pennsylvania corporation and a third-party student loan servicer. (Ex. R ¶ 4; Amend. Compl. ¶¶ 1, 12, 22, 24).  In 2009, PHEAA was selected through a competitive process by ED to service federal loans in accordance with a contract.  (Amend.Compl. ¶ 24).  The contract requires servicers to "maintain a full understanding of all federal and state laws and regulations" and to "ensur[e] that all aspects of the service continue to remain in compliance as changes occur."  (Ex. A, p. 12; Document no. 1-1, p. 24).  The contract also obligates PHEAA to comply with federal records management requirements, among other things, which include safeguarding records covered by the Privacy Act of 1974.  (Document no. 1-1, p. 56).

In 2015, Connecticut was the first state to pass legislation aimed at curbing unfair, deceptive, and abusive student loan debt collection practices and requiring licensure of the loan servicers. (Ex. R¶ 3); P.A. 15-162 (effective July 1, 2016) and codified at Conn. Gen. Stat. §§ 36a-846 to 854.  The statutory scheme seeks to protect consumers by prohibiting a student loan servicer from employing a scheme to defraud or mislead student loan borrowers, engage in deceptive acts or practices in connection with servicing loans, misapply loan payments, or provide inaccurate information to credit bureaus, among other things.  See § 36a-850.  It also requires student loan servicers to comply with all applicable federal laws and regulations relating to student loan servicing, including the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq.  See § 36a-853.

In 2015, ED joined with the Consumer Financial Protection Bureau ("CFPB") and the Department of Treasury in a "Joint Statement of Principles on Student Loan Servicing." (Ex. B). In this joint statement, ED agreed that "[i]f servicers fall short and violate federal or state consumer financial laws . . . federal and state agencies [] and law enforcement officials should have access to appropriate channels for recourse."  (Ex. B, p. 57).

On July 20, 2016, ED released a memorandum entitled "Policy Direction on Federal Student Loan Servicing" (the so-called "Mitchell Memo").  (Ex. C).  In the Mitchell Memo, ED directed that "[s]ervicing contractors should comply with federal and state law, taking any necessary steps to support oversight by federal or state agencies, regulators, or law enforcement officials."  (Id., p. 95).

In October of 2017, the CFPB noted in its annual report that "[c]onsumers benefit when the student loan industry is subject to coordinated oversight by regulators at both the federal and state levels."  (Ex. D, p. 173).

3

### 2.  **Connecticut Examination**

On May 1, 2017, PHEAA applied for a license from Connecticut DOB to act as a student loan servicer in Connecticut in accordance with Conn. Gen. Stat. § 36a-847(b) (Amend. Compl. ¶ 30; Ex. R ¶ 4).  On June 30, 2017, PHEAA's application was approved.  (Id.)  PHEAA is subject to Connecticut DOB examinations and investigations pursuant to Conn. Gen. Stat. §§ 36a-17 and 851. (Ex. R ¶ 4).

In the interest of consumer protection, on November 3, 2017, Connecticut DOB notified PHEAA via email that it would be conducting a limited scope examination and requested records pertaining to its servicing of student loans by way of questionnaire.  (Ex.  R ¶ 5; Ex. E, p. 178; Amend.Compl. ¶¶ 32, 33).  The questionnaire sought PHEAA's address and contact information, a management chart, a summary of how PHEAA administers consumer complaints, and a list of student loan debtor complaints - to include the complainant's name, address, account number, complaint summary and resolution.  (Ex. E, p. 180-184; Amend.Compl. ¶ 34).  The questionnaire also sought a list of litigation filed against consumers, to include the name, address, and account number of the debtor, a brief summary of the complaint, the disposition, the amount of any judgment, as well as copies of any external audits within the past year, and a list of payments collected for the previous year. (Ex. E, p. 185-187).  Finally, with respect to PSLF program, the questionnaire sought (a) the number of student loan borrowers and their respective loan balances as well as (b) the number of borrowers that were in forbearance at the time they were placed in PSLF with $0 payments. (Ex. E, p. 188).  With respect to each of these groups, the request sought the number of new PSLF applications approved and denied as well as the number of PSLF applications deemed incomplete.  (Ex. E, p. 189).  It also sought the number of recertification applications received, approved, and denied.  (Id.)

On November 7, 2017, PHEAA acknowledged the request and sought clarification of it's

the scope.  (Ex. E, p. 178; Amend. Compl. ¶ 35).  On the same day, Connecticut DOB responded

by limiting the request for borrower complaints to:

> [A] list of CT complaints either filed directly with you, through the
> U.S. Dept of Education, CFPB or any other entity starting 1/17 through
> October 31, 2017 regarding PSLF transfers.  List should contain the
> name, nature of complaint (excessive processing time, denials, etc.), date
> of complaint and date of resolution.  If any of the complaints are coded,
> please provide the codes to us.

(Ex. E, p. 177; Amend.Compl. ¶ 36).

### 3.  **Federal Intervention**

On November 9, 2017, PHEAA notified Connecticut DOB that ED had instructed

PHEAA not to release any data or documentation related to PSLF.  (Ex. F, p. 191; Amend.

Compl. ¶¶ 37, 39; Ex. R ¶ 6).  PHEAA referred Connecticut DOB to Ms. Soo Kang and Ms.

Karen Mahon at ED for "any concerns or comments." (Id.)  In response, Connecticut DOB

repeatedly attempted to contact Ms. Kang and Ms. Mahon via email and voicemail but to no

avail. (Ex. G, p. 193; Ex. R ¶ 6).

On December 18, 2017, Connecticut DOB notified PHEAA of the failure of ED to

respond and asserted that Connecticut DOB "would no longer initiate communications to [ED]

on your behalf."  (Ex. G, p. 193).   Connecticut DOB advised PHEAA that:

> As a licensee with the Department, PHEAA must adhere to Connecticut's
> statutory requirements governing student loan servicers.  Such requirements
> include, but are not limited to, providing unrestricted access to records in
> connection with an examination or investigation pursuant to Section 36a-17
> and 36a-851 of the Connecticut General Statutes.  Unrestricted access to

> servicing records of Connecticut student loan borrowers is of utmost importance
> to the ability of this Department to effectively supervise its student loan servicer
> licensees and perform its statutory mandates.

(Ex. G, p. 193).  Connecticut DOB then gave PHEAA until January 5, 2018 to comply with the

request for records.  (Id.)   On December 22, 2017, PHEAA informed Connecticut DOB that it

would "assist in coordinating communication between [Connecticut DOB] and [ED]."  (Ex. G, p.

192).

### 4.  ED's Privacy Act Memorandum

On December 27, 2017, ED issued a memorandum to PHEAA entitled, "Ownership and

Access to U.S. Department of Education Records and Data."  (Ex. H, p. 199).  In this document,

ED explained that it maintained federal student loan records within a System of Records (SORN)

protected by the Privacy Act, 5 U.S.C. § 552a, that it owned these records, and that "any request

from any third party for [ED] records to which a contractor has access must be made directly to

[ED], where it will be evaluated for compliance with the requirements of the Privacy Act, unless

the contract has specifically provided otherwise."  (Id.)  The memorandum referenced the

procedures for submitting Privacy Act requests to ED and provided a citation for a compilation

of SORNs.  (Ex. H, p. 200).

On December 28, 2017, PHEAA requested from Connecticut DOB an extension to

January 12, 2018 for compliance with its request for records. (Ex.  H, p. 194; Ex. R ¶ 9).  On

January 11, 2018, PHEAA mailed information responsive to part of Connecticut DOB's

questionnaire and withheld "responsive documents [or] data that are specific to [Federal Student

Aid]."  (Ex. I p. 201; Amend. Compl. ¶ 43; Ex. R ¶ 10).   The information withheld included

documents and data concerning consumer debtor complaints and payments.  (Ex. I, p. 207; Ex. R

¶ 10).

6

5. **Connecticut DOB Requests Access Directly From ED**

On January 11, 2018, Connecticut DOB participated in a call with ED. (Ex. R ¶ 11). During the call, Connecticut DOB requested access to the withheld records and ED recommended that Connecticut DOB employ a procedure similar to that used to review federal student loan records during examinations of consumer collection agencies by submitting a written request directly to ED. (Ex. R ¶ 11; Ex. I, p. 201). ED indicated that the written request would be reviewed promptly. (Ex. R ¶ 11).

On January 12, 2018, Connecticut DOB sent a letter directly to ED requesting access to records pertaining to student loans and, in particular, all records maintained by PHEAA in its servicing of student loans to include correspondence, agreements, notes, payment ledgers, audio, magnetic and electronic recordings, and computer printouts and software. (Ex. J, p. 216-217; Amend. Compl. ¶¶ 41, 44; Ex. R ¶ 12). In the request, Connecticut DOB informed ED that it was "conducting this examination to verify PHEAA's compliance with applicable statutory and regulatory requirements pertaining to its student loan servicing activities in Connecticut" and consequently, access appeared to be "a routine use contemplated by [ED] pursuant to paragraph 1(r) of its System of Records Notice [SORN] Number 18-11-16, entitled 'Common Services for Borrowers [81 Fed. Reg. 171 (Sep. 2, 2016)]." (Ex. J, p. 216-217) In addition, Connecticut DOB noted that information obtained during the course of the examination "is considered confidential and protected from disclosure pursuant to Section 36a-21 of the Connecticut General Statutes." (Ex. J, p. 216-217; Ex. R ¶ 12).

In accordance with the SORN, ED expressly authorizes the disclosure of Privacy Act information to government entities at the federal, state, local or tribal levels regarding the practices of ED contractors who have been provided with access to the Common Services for

Borrowers ("CSB") system so long as the receiving entity maintains Privacy Act safeguards to protect the security and confidentiality of the disclosed records.  (See SORN 18-11-16, Routine use no. (1) (r), 81 Fed. Reg. 60683, 60687 (Sept. 2, 2016) (Ex. K, p. 222)).  ED contractors include federal loan servicers, with disclosure authorized to permit state and local entities to verify a contractor's compliance with debt collection, financial, and other applicable statutory, regulatory, or local requirements. (Id.)

### 6.  ED Refuses Authorization

ED refused to authorize access even though it had granted access in the past and instead asked Connecticut DOB to identify how its request for access comports with the purposes enumerated in SORN 18-11-16.  (Ex. J, p. 214; Ex. R ¶ 13).  In a January 24, 2018 email, Connecticut DOB explained to ED that access was necessary for the examination of PHEAA and consistent with several different purposes identified in the SORN, to wit:

> (5) To make, service, collect, assign, adjust, transfer, refer, or discharge a loan or collect a grant obligation;
>
> (7)  To investigate possible fraud or abuse or verify compliance with program regulations;
>
> (11) To ensure that program requirements are met by educational and financial institutions, Federal Loan Servicers, the Federal Perkins Loan Servicer, PCAs, and guaranty agencies; and
>
> (14) To investigate complaints, update information, or correct errors contained in Department records.

(Ex. J, p. 214; Ex. R ¶ 13).  Connecticut DOB further stated that the examination of PHEAA was integral to PHEAA's continued ability to service such loans in Connecticut and was part of a process to investigate consumer complaints and ensure that PHEAA complied with applicable requirements and regulations. (Ex. J, p.214; Ex. R ¶ 13).

**7.  ED's Preemption Notice 83 Fed. Reg. 10619**

On March 12, 2018, ED published informal guidance in the Federal Register entitled,

Federal Preemption and State Regulation of the Department of Education's Federal Student Loan

Programs and Federal Loan Servicers, 83 Fed. Reg. 10619 (Mar. 12, 2018) ("ED's Preemption

Notice") (Ex. M, p. 243).  In this notice, ED proclaimed that state statutes purporting to regulate

federal student loan servicing are preempted by the HEA and its implementing regulations.  (Id.)

Specifically, ED opined that state laws covering the Direct Loan Program are preempted to the

extent they require state licensing of federal loan servicers.  (Id.)  ED also surmised that there are

"[s]ome state servicing laws . . . that create additional conflicts with Federal law, to include those

that impose deadlines for responding to borrower inquiries and require specific procedures to

resolve borrower disputes."  (Id.)  In ED's view, the "interposition of State-law requirements may

conflict with legal, regulatory, and contractual requirements, and may skew the balance the

Department has sought in calibrating its enforcement decisions to the objectives of the program."

(Id.)

ED also claimed that state servicing laws "may undermine Congress's goal of saving

taxpayer dollars in the administration of the Direct Loan Program [through the imposition of data

disclosure requirements, among others] that will increase the cost of student loan servicing,

perhaps exceeding the amount a servicer receives on a per loan basis under its contract with the

Department, and certainly distorting the balance the Department has sought to achieve between

costs to servicers and taxpayers, and the benefits of services delivered to borrowers."  (Ex. M, p.

244-45).  Finally, ED speculated that state laws which go beyond federal law in restricting the

collection activities of servicers may impede loan repayment, and varying requirements from 50

different states, to include licensing fees and other costs, benefit the states at the expense of the

federal taxpayer, and would significantly undermine the purpose of the Direct Loan Program in establishing a uniform lending program at the federal level. (Ex. M, p. 245).

This view is novel. In the past, the United States has explicitly rejected the notion that the HEA preempts state laws. Specifically, in 2015, the United States filed a Statement of Interest in the matter, Sanchez v. ASA College, Inc., No. 14-5006, 2015 WL 3540836 (S.D.N.Y. June 5, 2015), stating:

> Nothing in the HEA or its legislative history even suggests that the HEA should be read to preempt or displace state or federal laws. Nor is there anything in the HEA or the regulations promulgated thereunder to evince any intent of Congress or [the DOED] that the HEA or its regulations establish an exclusive administrative review process of student claims brought under state or federal law, even if the conduct alleged may separately constitute an HEA violation.

(Ex. S, CMECF pp. 8-9); see also Student Loan Servicing Alliance, 351 F. Supp.3d 26, 50 (D.D.C. 2018) (quoting Sanchez v. ASA College, Inc., No. 14-5006, 2015 WL 3540836, U.S. SOI (S.D.N.Y. June 5, 2015)).

## 8. **Connecticut DOB Presses For Compliance**

Connecticut DOB abandoned further dealings with ED and, on March 21, 2018, reached out to PHEAA to convey its "concerns related to [its planned] examination and provide PHEAA with an opportunity to show compliance with all lawful requirements for the retention of its student loan service license in Connecticut . . ." (Ex. L, p. 237; Amend. Compl. ¶ 46; Ex. R ¶ 14). Connecticut DOB asked PHEAA to respond no later than April 4, 2018. (Ex. L, p. 240). Connecticut DOB advised PHEAA that if "no written response is received by that date or if the Commissioner finds any such response to be insufficient, the Commissioner may issue administrative action against [PHEAA's] license." (Id.)

**9.  ED Denies Connecticut DOB Access**

On March 26, 2018, ED formally denied Connecticut DOB's January 12, 2018 request for records.  (Ex. M).  ED first explained without legal basis that PHEAA could not provide access to the records because the records belonged to ED and not PHEAA.  (Ex. M, p. 241) (citing ED's Privacy Act Memorandum)).  ED then asserted that the records were not disclosable under the Privacy Act because Connecticut DOB failed to come forward with an acceptable "routine use" for disclosure under the SORN, Common Services for Borrowers (CSB) (18-11-16).  (Id.)  While Connecticut DOB maintained disclosure was authorized under CSB routine use section (1) (r) — which allows for disclosure to states regarding the practice of ED contractors — ED rejected this position, maintaining that "State laws regulating Direct Loan servicing are preempted by Federal Law."  (Ex. M, p. 241).  In support of this position, ED cited to its own March 12, 2018 Preemption Notice. (Id.)  ED further stated even if it "determined that [state law] was an 'applicable statutory requirement'" — Connecticut DOB nevertheless failed to indicate how the request was compatible with the purposes identified in the SORN.  (Ex. M, p. 242).  In making this assertion, ED ignored Connecticut DOB's January 24, 2018 email explaining how its request was compatible with the purposes identified in the SORN.  (Ex. J, p. 214).

**10. ED Counsels PHEAA**

On April 2, 2018, ED sent a letter to PHEAA in reference to Connecticut DOB's March 21, 2018 records request.  (Ex. N).  ED advised PHEAA that in accordance with their contract, ED owned the requested records and instructed PHEAA that it was prohibited from releasing them.  (Id.)  In addition, ED advised PHEAA that with respect to Connecticut's warning about revoking PHEAA's license to service federal loans for failure to disclose records,

a state agency does not have the authority to prohibit PHEAA from servicing federal student loans when the federal government has specifically authorized it to do so.  (Id.)

**11. ED's Inspector General's Report**

On February 12, 2019, ED's Inspector General published a report on loan servicer compliance with federal law assessed as of September 2017. See U.S. Department of Education Office of Inspector General, ED-OIG/A05Q0008, Federal Student Aid:  Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans, (Feb. 12, 2019, Reissued with Corrections, March 5, 2019) (Ex. A).  In the report, the Inspector General noted that "oversight activities regularly identified instances of servicers not servicing federally held student loans in accordance with Federal requirements." (Id. at p. 8).  It also noted the Department "rarely used available contract accountability provisions to hold servicers accountable for instances of noncompliance" and "did not provide servicers with an incentive to take actions to mitigate the risk of continued servicer noncompliance that could harm students." Id.  The Inspector General found that these failures can result in "increased interest or repayment costs incurred by borrowers, the missed opportunity for more borrowers to take advantage of certain repayment programs, negative effects on borrowers' credit ratings, and an increased likelihood of delinquency or even default." (Id. at 25).

## STANDARD

The requirements for declaratory judgment are set forth in 28 U.S.C. § 2201 (a):  "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations by any interested party seeking such declaration, whether no relief is or could be sought." Id.  Issuance of a declaratory

12

judgment is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to a proceeding." Continental Cas. Co. v. Coastal Savings Bank, 977 F.2d 734, 737 (2d Cir. 1992).

"In determining a motion for summary judgment that is filed in the context of a declaratory judgment action, the same standard is applied as in any other action." United States v. State of New York, 3 F. Supp. 2d 298, 307 (E.D.N.Y. 1998). Rule 56 (a) provides that a motion for summary judgment may be granted when "there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). All ambiguities must be resolved, and all inferences drawn, in favor of the non-moving party. Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2005).

## ARGUMENT

Caught between Connecticut DOB's demand for records and ED's order prohibiting their release— PHEAA seeks a judgment declaring which competing order it must follow. Resolution of this question requires the Court to declare whether Connecticut examination laws are implicitly preempted by the HEA. As set forth below, federal law does not preempt Connecticut DOB's examination authority.

### I.    FEDERAL LAW DOES NOT PREEMPT STATE EXAMINATION AUTHORITY OF STUDENT LOAN SERVICERS.

The Supremacy Clause of the United States Constitution provides that federal law "shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. Under the doctrine of federal preemption, "state laws that conflict with federal law are without effect." Altria Group, Inc. v. Good, 555 U.S. 70, 76, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008).

13

"'The key to the preemption inquiry is the intent of Congress', and 'Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law.'" Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 95 (2d Cir. 2012) (quoting N.Y. SMSA Ltd. Partnership v. Town of Clarkstown, 612 F.3d 97, 103 (2d Cir. 2010)). "Thus, preemption 'may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Id. (quoting Shaw v. Delta Air Line, Inc., 463 U.S. 85, 95, 103 S. Ct. 2890, 77 L.Ed.2d 490 (1983)).  In the instant case, there is no claim of express preemption.  The Court need only decide whether federal law implicitly preempts state examination laws.

"Courts have recognized two types of implied preemption: (1) field preemption, where Congress has manifested [its] intent to 'occupy the field' in a certain area. . . . and (2) conflict preemption, where state law 'actually conflicts with federal law, including where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Niagara Mohawk Power Corp., 673 F.3d at 95 (emphasis added) (quoting English v. Gen. Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed. 2d 65 (1990)).

"Consideration of issues arising under the Supremacy Clause 'starts with the assumption that historic police powers of the States [are] not to be superseded . . . by Federal Act 'unless that [is] the clear and manifest purpose of Congress.'" Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).  "This assumption is particularly strong where, as here, a state or locality seeks to exercise its police powers to protect the health and

safety of its citizens." U.S. Smokeless Tobacco Manufacturing Co. LLC v. City of New York, 708 F.3d 428, 432 (2d Cir. 2013); see also CSX Trans., Inc. v. Easterwood, 507 U.S. 658, 663-64, 113 S. Ct. 1732, 123 L.Ed.2d 387 (1993) ("In the interest of avoiding unintended encroachment on the authority of the States . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption."). This is known as the "presumption against preemption." New York SMSA Ltd. Partnership v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010).

"The presumption against preemption is heightened 'where federal law is said to bar state action in fields of traditional state regulation.'" N.Y. State Restaurant Ass'n v. N.Y. City Bd. of Health, 556 F.3d 114, 123 (2d Cir. 2009). "Consumer protection is one such area that traditionally has been regulated by the States." Student Loan Servicing Alliance, 351 F. Supp.3d 26 at 47 (quoting California v. ARC Am. Corp., 490 U.S. 93, 101, 109 S. Ct. 1661, 104 L.Ed.2d 86 (1989)); see also In re Nortel Networks, Inc., 669 F.3d 128, 137-38 (3d Cir. 2011) (consumer protection is part of government police powers); Pennsylvania v. Navient Corp., 354 F. Supp. 3d 529, 548 (M.D. Pa. 2018) (recognizing that consumer protection is within the traditional police power of the state and applying presumption against preemption in analyzing state claims against student loan servicer)). "[W]hatever deference would be owed to an agency's view in contexts where a presumption against federal preemption does apply, it is arguable that an agency cannot supply, on Congress's behalf, the clear legislative statement of intent required to overcome the presumption against preemption." Desiano v. Warner-Lambert & Co., 467 F.3d 85, 97 n.9 (2d Cir. 2007); see also Kellogg v. Wyeth, 612 F. Supp.2d 421, 433 (D. Vt. 2008).

In Counts Two and Three of the Amended Complaint, PHEAA seeks a judgment resolving whether Connecticut DOB's student loan examination authority under state law is preempted by federal law in accordance with the implied preemption doctrines of field preemption and conflict preemption.  As set forth below, federal law does not preempt Connecticut DOB's examination authority.

## A.  The HEA Does Not Preempt State Examination Authority Under Theory of Field Preemption

In Count Two of the Amended Complaint, PHEAA seeks a declaration as to whether the Connecticut examination statutes are preempted by the HEA under theory of field preemption. (Amend. Compl. ¶ 86).  In ED's Preemption Notice, ED proclaimed that state statutes regulating federal student loan servicing are subject to field preemption, stating the federal interest in the Direct Loan Program is so dominant as to "preclude State regulation, either of borrowers and servicers." (Ex. M, p. 245 (83 Fed. Reg. at 10621)).  In ED's view, the federal interest includes Congress's goals of uniformity and ease of administration of the Direct Loan Program, and ED's interest in regulating "liability of contractors performing their obligations under contracts with the Federal government." (Amend. Compl. ¶ 85; Ex. M, p. 245 (83 Fed.Reg. at 10621)). ED's Preemption Notice, however, is not entitled to deference and any claim of field preemption is without merit.

### 1.  ED's Preemption Notice Is Not Entitled To Any Deference By This Court

In its Preemption Notice, ED proclaimed that state statutes purporting to regulate federal student loan servicing are preempted by the HEA and its implementing regulations.  (Ex. M, p. 245 (83 Fed. Reg. at 10621)).  As set forth below, this notice merely reflects an administrative agency's changed view on the issue and is not entitled to any deference by this Court.

16

### a. __Chevron__ and __Auer__ Deference

Generally speaking, when a statute which an agency administers is silent on a particular issue, the agency's interpretation is entitled to deference.  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984).  This is so-called Chevron deference and is appropriate when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."  United States v. Mead Corp., 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L.Ed.2d 292 (2001).  Deference is appropriate because "[w]hen Congress authorizes an agency to proceed through notice-and-comment rulemaking, that 'relatively formal administrative procedure' is a 'very good indicator' that Congress intended the regulation to carry the force of law, so Chevron should apply." Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2125, 195 L.Ed.2d 382 (2016) (quoting Mead Corp, 533 U.S. at 227).  In addition, an agency's statements clarifying ambiguities in its own regulations are also typically entitled to deference.  Auer v. Robbins, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L.Ed.2d 79 (1997).  This is so-called Auer deference.  Kisor v. Wilkie, 139 S. Ct. 2400, 2408 (2019); Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 154, 132 S. Ct. 2156, 183 L.Ed.2d 153 (2012).

In this case, ED's Preemption Notice was not promulgated by notice and comment rulemaking authority and ED is not seeking to clarify ambiguities in any regulation. Consequently, neither Chevron nor Auer deference is appropriate. See Hyland v. Navient Corp., No. 18cv9031 (DLC), 2019 WL 2918238, *7 (S.D.N.Y. July 8, 2019) (ED's Preemption Notice not entitled to deference).

   b. __Skidmore__ Deference

Without a Congressional delegation of authority, an administrative agency has no

authority to determine the preemptive effect of a statute, even one that it administers.  American

Tort Reform Ass'n v. Occupational Safety & Health Admin., 738 F.3d 387, 393 (D.C. Cir. 2013)

(OSHA has no authority to determine preemptive effect of the OSH Act because the statute only

authorizes it to "promulgate national workplace health and safety standards, not to dictate by

regulation the scope of preemption.").  "While agencies have no special authority to pronounce

on preemption absent delegation by Congress, they do have a unique understanding of the

statutes they administer and an attendant ability to make informed determinations about how

state requirements may pose an 'obstacle to the accomplishment and execution of the full

purposes and objectives of Congress.'"  Wyeth v. Levine, 555 U.S. 555, 577, 129 S. Ct. 1187,

173 L.Ed.2d 51 (2009) (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

An agency may issue informal guidance on the issue – such as through "an interpretive bulletin,

informal ruling, or advisory opinion." Student Loan Servicing Alliance, 351 F. Supp.3d at 49.

This "interpretation [] does not qualify for Chevron deference [but] is still entitled to 'respect

according to its persuasiveness' as evidenced by 'the thoroughness evident in the agency's

consideration, the validity of its reasoning, it consistency with earlier and later pronouncements,

and all those factors which give it power to persuade." Estate of Landers v. Leavitt, 98, 107

(2008) quoting Mead Corp., 533 U.S. at 228 and Skidmore v. Swift & Co., 323 U.S. 134, 140, 65

S. Ct. 161, 89 L.Ed. 124 (1944).  See also Student Loan Servicing Alliance, 351 F. Supp.3d at

49.  This is known as Skidmore deference.  Estate of Landers v. Leavitt, 545 F.3d 98, 107 (2d

Cir. 2008).

In this case, ED has no authority to determine the preemptive effect of the HEA and did not undergo the proper rulemaking procedures when it published its Preemption Notice.  See Student Loan Servicing Alliance, 351 F. Supp.3d at 49.  Consequently, the issue of whether any respect should be accorded the interpretation turns on whether it passes the Skidmore test.  When applied, no deference is appropriate because the Notice is not sufficiently thorough, consistent or persuasive.  Rather, it is "a retroactive, ex-post rationalization for [ED's] policy changes, and therefore does not merit Skidmore deference."  Student Loan Servicing Alliance, 351 F. Supp.3d at 50.  "It does not analyze in any real way the regulations it cites."  Id.

In addition, ED's "Preemption Notice fails the Skidmore test most notably because the agency's view represents a stark, unexplained change in [ED's] position."  Student Loan Servicing Alliance, 351 F. Supp. 3d at 50.  In this regard, just a few years ago, ED agreed in a joint statement with other federal agencies that state regulators should have recourse against loan servicers for violations of state consumer financial laws.  (Ex. B, p. 57).  Further, by way of the Mitchell Memo, ED directed that student loan servicing contractors should comply with state law— "taking any necessary steps to support oversight by . . . state agencies, regulators, or law enforcement officials." (Ex. C, p. 95).  ED also explicitly rejected the preemptive effect of the HEA when, in 2015, the United States filed a Statement of Interest in the matter, Sanchez v. ASA College, Inc., No. 14-5006, 2015 WL 3540836 (S.D.N.Y. June 5, 2015), stating:

> Nothing in the HEA or its legislative history even suggests that the HEA should be read to preempt or displace state or federal laws.  Nor is there anything in the HEA or the regulations promulgated thereunder to evince any intent of Congress or [the DOED] that the HEA or its regulations establish an exclusive

19

administrative review process of student claims brought under state or federal law, even if the conduct alleged may separately constitute an HEA violation.

(Ex. S, CMECF pp. 8-9); see also Student Loan Servicing Alliance, 351 F. Supp.3d at 50 (quoting Sanchez v. ASA College, Inc., No. 14-5006, 2015 WL 3540836, U.S. SOI (S.D.N.Y. June 5, 2015)).

Accordingly, this Court should accord no deference whatsoever to ED's Preemption Notice. See In re Vioxx Products Liability Litig., 501 F. Supp.2d 776, 786 (E.D. La. 2007) (agency position not entitled to Skidmore deference because it was not promulgated pursuant to agency rulemaking authority in accordance with Chevron and agency did not seek to clarify any ambiguity in its regulations in accordance with Auer, and position conflicted with statements made in agency's original notice of rulemaking stating proposed rule does not preempt state law); Nelson v. Great Lakes Educ. Loan Services, Inc., 928 F.3d 639, 651 n.2 (7th Cir. 2019) (concurring with Student Loan Servicing Alliance that no deference should be accorded ED's Preemption Notice). Pennsylvania v. Navient Corp., 354 F. Supp.3d 529, 552 (M.D. Pa. 2018) (ED's Preemption Notice is not persuasive to the extent that it suggests that all state consumer protection laws are preempted); Hyland v. Navient Corp., No. 18cv9031 (DLC), 2019 WL 2918238, *7 (S.D.N.Y. July 8, 2019) (ED's Preemption Notice not entitled to Skidmore deference).

### 2. ED's Claim of Field Preemption Is Without Merit

The proposition that Congress intended the HEA or its Direct Loan Program to have field preemptive effect is without merit. Field preemption occurs "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law." New York SMSA Ltd. Partnership v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010). "Where Congress occupies an entire field . . . even complementary state regulation is

impermissible.  Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards."  Student Loan Servicing Alliance, 351 F. Supp.3d at 55 (quoting Arizona v. United States, 567 U.S. 387, 401, 132 S. Ct. 2492, 183 L.Ed.2d 351 (2012)).

"The key to the preemption inquiry is the intent of Congress."  New York SMSA Ltd., 612 F.3d at 104 (citing Atria Group, Inc. v. Good, 555 U.S. 70, 76, 129 S. Ct. 538, 543, 172 L.Ed.2d 398 (2008)).  "Congress' intent to occupy a field can be inferred from (1) 'a framework of regulation' . . . 'so pervasive' that it leaves no space for state supplementation, or [2] where the federal interest is 'so dominant' that the existence of a federal scheme can 'be assumed to preclude enforcement of state laws on the same subject.'" Student Loan Servicing Alliance, 351 F. Supp.3d at 55 (quoting Sickle v. Torres Advanced Enterprise Solutions, LLC, 884 F.3d 338, 347 (D.C. Cir. 2018)).

Courts which have considered whether the HEA has field preemptive effect have concluded that it does not.  The statute's regulatory scheme is not so pervasive as to evince Congressional intent to exclude state supplementation and the federal interest is not so dominant to prelude state law.  Nelson v. Great Lakes Educ. Loan Services, Inc., 928 F.3d 639, 652 (7th Cir. 2019) ("Congress chose to displace state law [in the HEA] only in certain specified, express preemption provisions [which] indicate [] Congress has not sought to displace all state regulation of student loans."); Pennsylvania v. Navient Corp., 354 F. Supp.3d 529, 552-553 (M.D. Pa. 2018) (rejecting proposition that the HEA has field preemption effect); Student Loan Servicing Alliance, 351 F. Supp.3d at 57 (evidence is lacking the federal government occupies the field of regulating student loan servicers); Genna v. Sallie Mae, Inc., No. 11 Civ. 7371 (LBS), 2012 WL 1339482, *7 (S.D.N.Y. Apr. 17, 2012) ("[N]o court in any circuit that has considered the matter .

. . has found that field preemption applies to HEA") (citing <u>Chae v. SLM Corp.</u>, 593 F.3d 936, 941-42 (9th Cir. 2010) and <u>Armstrong v. Accrediting Council for Continuing Educ. and Training, Inc.</u>, 168 F.3d 1362, 1369 (D.C. Cir. 1999) ("federal education policy regarding [private lending to students] is not so extensive as to occupy the field.")).  Accordingly, field preemption does not apply to the Connecticut examination laws at issue here.

**B.** **The HEA Does Not Preempt State Examination Authority Under Theory of Conflict Preemption**

In Count Three of the Amended Complaint, PHEAA seeks a declaration as to whether Connecticut examination statutes, Conn. Gen. Stat. § 36a-17, Conn. Gen. § 36a-849, and Conn. Gen. § 36a-851, are preempted by the HEA under theory of conflict preemption. (Amend. Compl. ¶¶ 47, 90).  PHEAA once again points to ED's Preemption Notice – a notice containing examples of state laws and regulations covering the Direct Loan Program which ED now believes conflict with the HEA.  (Amend. Compl. ¶ 93; Ex. M, p. 244).  This includes "state laws requiring licensees, among other things, to submit to investigations and audits by state authorities, as well as state laws that [according to ED] undermine Congress's goal of saving taxpayer dollars in administering the Direct Loan Program, such as through disclosure and annual reporting requirements." (Amend. Compl. at ¶ 93) (citing ED's Preemption Notice, 83 Fed. Reg. at 10620-21 (Ex. M, p. 244-45)).  Further, PHEAA maintains that state laws requiring servicers to promptly make records available to Connecticut DOB presents a potential conflict as set forth in ED's Privacy Act Memorandum. (Amend. Compl. at ¶ 94).  Conflict preemption, however, does not defeat Connecticut examination laws.

Conflict preemption of state law occurs: (1) "when compliance with both federal and state regulations is a physical impossibility, or [2] when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>Student Loan</u>

Servicing Alliance, 351 F. Supp.3d at 59 (quoting Hillsborough County, Fla. v. Automated Med. Labs Inc., 471 U.S. 707, 713, 105 S. Ct. 2371, 85 L.Ed.2d 714 (1985), Arizona v. United States, 567 U.S. at 399-400, 132 S. Ct. 2492); see also Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73, 120 S. Ct. 2288, 147 L.Ed.2d 352 (2000).  This analysis must be informed by the well-established principle that because the state statutes here concern consumer protection— they squarely fall within Connecticut's police power where the presumption against preemption applies.  California v. ARC America Corp., 490 U.S. 93, 101, 109 S. Ct. 1661, 104 L.Ed.2d 86 (1989); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 518, 112 S. Ct. 2608, 120 L.Ed.2d 407 (1992).  PHEAA points to two federal documents which purport to show conflict between state and federal requirements so profound as to compel a conclusion of preemption, i.e., ED's Preemption Notice and the ED's Privacy Act Memorandum.  Each fails to present any such conflict.

### 1.  ED's  Preemption Notice

ED's Preemption Notice opines that state laws covering the Direct Loan Program are preempted by the HEA to the extent they require state licensing of loan servicers.  (83 Fed. Reg. at 10620) (Ex. M, p. 244)).  The Notice also claims that state servicing laws may undermine Congress's goal of saving taxpayer dollars in administering the Direct Loan Program and undermine its purpose of establishing a uniform lending program at the federal level.  (Id.) These claims, however, do not invalidate state examination authority.

In Student Loan Servicing Alliance v. Taylor, 351 F. Supp.3d 26 (D.D.C. 2018) appeal dismissed, 2019 WL 2158372 (D.C. Cir. May 15, 2019), a group of loan servicers known as the Student Loan Servicing Alliance challenged the promulgation of a new law in the District of Columbia governing student loan servicing.  Id.   The law, enacted in 2016, required student loan

servicers to be locally licensed and regulated in an effort to protect consumers, with servicers

under obligation to apply for a license, post a bond, and pay a variety of fees before they could

operate. Id. at 40-41. The Student Loan Servicing Alliance claimed the law was invalid under

theories of express, field and conflict preemption as set forth in ED's Preemption Notice. Id. at

47. In ruling on cross-motions for summary judgment, the court declined to give any deference

to ED's Preemption Notice and held that principles of express and field preemption did not

invalidate the law. Id. at 50-59. Nevertheless, because the law gave discretion to the District of

Columbia to decide who may be licensed to service federal student loans, the court concluded the

licensing scheme impermissibly second-guessed the federal government's decision to contract

with servicers. Id. at 62. Consequently, in accordance with Leslie Miller, Inc. v. Arkansas, 352

U.S. 187, 190 (1956), the court held the scheme stood as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress and was invalid under theory of

conflict preemption. Id. at 61-62.

In this case, regardless of whether PHEAA maintains a license in Connecticut,

Connecticut DOB has the authority to investigate or examine "any student loan servicer licensee

or person subject to [the provisions of Conn. Gen. Stat. §§ 36a-846 to 36a-854] as often as

necessary in order to carry out the purposes of said sections . . . and may direct, subpoena or

order such person to produce books, accounts, records, files and any other documents the

commissioner deems relevant to the inquiry." Conn. Gen. Stat. § 36a-851 (a) (2) (emphasis

added). A "person" within the meaning of the statute is "an individual, company . . . or any other

legal entity, including a federal, state or municipal government or agency or any political

subdivision thereof." Conn. Gen. Stat. § 36a-2 (48). The authority of § 36a-851 remains in

effect "whether such student servicer licensee or person subject to sections 36a-846 to 36a-854,

inclusive, acts or claims to act under any licensing or registration law of this state, or claims to act without such authority." Conn. Gen. Stat. § 36a-851 (d) (emphasis added).  Further, under Conn. Gen. Stat. § 36a-17 (a) (2), Connecticut DOB has the authority to "require or permit any person to testify, produce a record or file a statement in writing, under oath, or otherwise as the commissioner determines, as to all facts and circumstances concerning the matter to be investigated. . ." Id. (emphasis added).

In the fall of 2017, Connecticut DOB lawfully initiated a limited scope examination of PHEAA relating to PSLF transfers (Ex. E, p. 178) pursuant to Conn. Gen. Stat. § 36a-17 and Conn. Gen. Stat. § 36a-851.  (Ex. G, p. 193).  PHEAA – as a Pennsylvania corporation -- is a person within the meaning of Conn. Gen. Stat. § 36a-2 (48) (Amend. Compl. ¶ 12; Ex. R ¶ 4) and is also a student loan servicer within the meaning of Conn. Gen. Stat. § 36a-846 (6) (Id.)  Nevertheless, PHEAA refused to comply and release records relating to PSLF or Federal Student Aid on orders from ED (Ex. F, p. 191; Ex. I, p. 201), all in violation of § 36a-17 and § 36a-851.  Neither PHEAA nor ED has pointed to any physical impossibility in complying with both Connecticut examination authority and federal law and any assertion that state examination law stands as an obstacle to congressional purposes or objectives of the HEA is speculative and does not carry the weight of law.  See e.g., Wyeth v. Levine, 555 U.S. 555, 576-77 (2009) (an agency's broad pronouncement that state laws are preempted as a class regardless of their individual features is not entitled to any weight).  To be sure, there is no evidence of any conflicting regulatory provisions and, while the HEA may reflect a congressional purpose of establishing certain uniform procedures in the mechanics of loan servicing as well as administrative cost efficiency under the Federal Family Education Loan Program ("FFELP"), 20

U.S.C. § 1082 (l) (1)(A)-(F) and (l) (2)[1]—the present case concerns the Direct Loan Program

and, in any event, nothing in the HEA presumes to limit how loan servicing contractors can be

examined and investigated in the interest of consumer protection.

     Other courts which have examined the preemptive reach of the HEA have concluded it

falls well short. See e.g. Nelson, 928 F.3d at 651 (rejecting implied conflict preemption, noting

the HEA contains several express preemption provisions – and stating the courts should not add

to them on theory that "more sweeping preemption seems like a better policy"); Pennsylvania v.

Navient Corp., 354 F. Supp.3d 529, 552-553 (M.D. Pa. 2018) ("The uniformity of the HEA in

setting its requirements for the standard parameters of the federal student loan programs is not

harmed by [state] prohibit[ions on] unfair and deceptive conduct in the operation of those

programs. . . .") (citing College Loan Corp. v. SLM Corp., 396 F.3d 588, 597 (4th Cir. 2005)

("We are unable to confirm that the creation of 'uniformity', a goal relied upon by the district

court in its Preemption Ruling, was actually an important goal of the HEA"); Daniel v. Navient

Solutions, LLC, 328 F. Supp. 3d 1319, 1324 (M.D. Fla. 2018) ("Uniformity, however, is not one

of Congress's express goals in enacting the HEA, and broadening the scope of the preemption

statute would not rest upon a fair understanding of congressional purpose'"); Cf. Cliff v. Payco

Gen. Am. Credits, Inc., 363 F.3d 1113, 1127, 1129 (11th Cir. 2004) (finding that state consumer

causes of action can coexist with the HEA and noting "an entire state statute is not preempted

---

[1] See also Nelson, 928 F.3d at 651; CFPB, Student Loan Servicing:  Analysis of Public Input and Recommendations for Reform, at p. 11 (Sept. 2015) (Ex. O, p. 264) ("[T]here is no existing, comprehensive federal statutory or regulatory framework providing consistent standards for the servicing of all student loans."); see also 80 Fed. Reg. 98, 29302, 29305 (May 21, 2015) (same); Student Loan Servicing Alliance, 351 F. Supp.3d at 69 (the requirements under 20 U.S.C. § 1082 (l) "do not support an inference that Congress broadly intended that all aspects of the FFELP program be identical nationwide; that would be field preemption by another name" and "many regulatory schemes that involve standardized procedures are not grounded in the congressional goal of uniformity as to the entire scheme."))

because some of its provisions may actually conflict with federal law")); <u>Mississippi v. Navient</u> <u>Corp.</u>, No. G2108-98203, Order, Mississippi First Judicial District (Aug. 15, 2019) (state consumer protection laws not preempted by the HEA) (Ex. P); <u>California v. Navient</u>, No. CGC-18-567732, Order, Superior Court of California, County of San Francisco (Dec. 20, 2018) (enforcement action based on unfair business practices not preempted by the HEA) (Ex. Q)

In any event, because Connecticut DOB examinations of student loan servicers are conducted in the interest of consumer protection (Ex. R ¶ 5), the presumption against federal preemption applies.  Where the presumption applies, an agency such as ED arguably can never supply, on Congress's behalf, the clear legislative statement of intent required to overcome the presumption against preemption.  <u>Desiano v. Warner-Lambert & Co.</u>, 467 F.3d 85, 97 n.9 (2d Cir. 2007); <u>see also</u> <u>Kellogg v. Wyeth</u>, 612 F. Supp.2d 421, 433 (D. Vt. 2008).   Consequently, ED's Preemption Notice does not bar PHEAA from complying with Connecticut DOB examinations.

### 2. ED's Privacy Act Memorandum

ED's Privacy Act Memorandum entitled: "<u>Ownership and Access to U.S. Department of</u> <u>Education Records and Data</u>" (December 27, 2017) (Ex. H, p. 199) — also fails as a legitimate basis to interfere with Connecticut DOB's examination authority or withhold federal student loan records, and does not present a conflict for purposes of preemption.

The Privacy Act governs the disclosure of an individual's personal information by federal government departments and agencies.  <u>See</u> 5 U.S.C. § 552.  Through the Privacy Act Memorandum, ED explained that it maintained federal student loan records within a SORN protected by the Privacy Act, 5 U.S.C. § 552a, that it owned these records, and that "any request from any third party for [ED] records to which a contractor has access must be made directly to

the [ED], where it will be evaluated for compliance with the requirements of the Privacy Act, unless the contract has specifically provided otherwise." (Ex. H, p. 199). The memorandum references the procedures for submitting Privacy Act requests to ED and provided a citation for a compilation of SORNs. (Ex. H, p. 200).

### a. ED Has No Authority To Prevent PHEAA from Complying With Records Requests By Connecticut DOB

On orders from ED, PHEAA refused to provide Connecticut DOB with any data and documentation relating to PSLF or Federal Student Aid (Ex. F, p. 191; Ex. I, p. 201) and claimed the Privacy Act prohibits the release. (Ex. M, p. 241). Connecticut DOB properly requested and should have received access to these records because, in this first instance, ED cannot through its contract with PHEAA prevent PHEAA from complying with a statutory records request from Connecticut DOB. Cf. Consumer Financial Protection Bureau v. Navient Corp., 3:17cv101, 2018 WL 3824367 (M.D. Pa. Aug. 10, 2018) (ED cannot assert records belong to ED or use the Privacy Act to shield the requested borrower documents from discovery/production); In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) (federal agency could not prescribe by regulation that documents in custody of bank are agency property and that bank could not produce them in response to a Rule 34 request, or that such documents must be requested directly from agency); Bank of America, N.A. v. BDO Seidman, LLP, 23 Mass. L.Rptr 360, *8-9 (Mass. Sup. Ct. Nov. 26, 2007) (federal agency must appear and explain why state discovery rules do not prevail over federal agency regulations).

### b. ED Ordered A Withholding of Too Broad A Swath

The Privacy Act bars agencies from disclosing records which are contained in a system of records unless an exception is met. See 5 U.S.C. § 552a(b). A record within the meaning of the Privacy Act is, generally speaking, any personal information about an individual that is linked to

that individual through an identifying particular.  See 5 U.S.C. § 552a(a)(4); see also Bechhoefer

v. U.S. Dep't of Justice D.E.A., 209 F.3d 57, 62 (2d Cir. 2000), cert. denied, 539 U.S. 944

(2003).  Even though the Privacy Act applies only to the disclosure of an individual's identifying

information, ED nevertheless refused to authorize PHEAA to disclose any data and

documentation relating to PSLF or Federal Student Aid.  (Ex. F, p. 191; Ex. I, p. 201; Ex. M, p.

241).  Even if ED had the authority to bar disclosure, it withheld far too broad a swath.  ED

could have easily authorized a release of records subject to redactions of borrower information or

other individual, personal information consistent with the Privacy Act.  See e.g., Student Loan

Servicing Alliance, 351 F. Supp.3d at 60-61 (citing In Re Subpoena to Nat'l Sci. Found., Office

of Inspector Gen., No. 18-0006, 2018 WL 5017612 at *3 (E.D. Va. Oct. 16, 2018)).  The fact

that ED chose not to do so indicates the withholding had nothing to do with the Privacy Act and

was done to interfere with Connecticut DOB's examination.

### c.   The Privacy Act Memorandum Does Not Present A Conflict for Purposes of Preemption

ED's Privacy Act Memorandum fails to present any conflict whatsoever for purposes of

preemption because Connecticut DOB complied with it and ED still refused to authorize the

release of the requested records.  Specifically, in accordance with ED's memorandum, on January

12, 2018, Connecticut DOB requested directly from ED access to records pertaining to federal

student loans and, in particular, all records maintained by PHEAA in its servicing of student

loans to include correspondence, agreements, notes, payment ledgers, audio, magnetic and

electronic recordings, and computer printouts and software.  (Ex. J, p. 216-17; Amend. Compl. ¶

44; Ex. R ¶ 12). Connecticut DOB informed ED that it was "conducting this examination to

verify PHEAA's compliance with applicable statutory and regulatory requirements pertaining to

its student loan servicing activities in Connecticut" and consequently, access appeared to be "a

routine use contemplated by [ED] pursuant to paragraph 1(r) of its System of Records Notice [SORN] Number 18-11-16, entitled 'Common Services for Borrowers." (Id.)  In addition, Connecticut DOB noted that information obtained during the course of the examination "is considered confidential and protected from disclosure pursuant to Section 36a-21 of the Connecticut General Statutes." (Id.)

Nevertheless, ED refused to authorize PHEAA to disclose (Ex. M, p. 241), even though SORN Notice Number 18-11-16 expressly authorizes ED to disclose Privacy Act information to state governments regarding the practices of ED contractors engaged in federal loan servicing for purposes of verifying the contractor's compliance with debt collection, financial, and other applicable statutory, regulatory, or local requirements. See SORN 18-11-16 (Ex. K, p. 222). Instead of disclosing, ED asked Connecticut DOB to identify how its request for access comports with the purposes enumerated in SORN 18-11-16 (Ex. M, p. 241) even though Connecticut DOB had previously provided this information. (Ex. J, p. 214).  Hence, ED's refusal to allow PHEAA to comply with Connecticut law was both inexplicable and illegal. [2]

In sum, notions of implied conflict preemption do not bar PHEAA from complying with Connecticut DOB examinations.

---

[2] It is simply astonishing that ED would openly confess to failing to take action to mitigate student loan servicer non-compliance at the expense of students (Ex. A, p. 8, 25) and at the same time actively interfere with a state's efforts to protect students.

## CONCLUSION

For the foregoing reasons, Connecticut DOB respectfully requests an order declaring that Connecticut law is not preempted and requiring Pennsylvania Higher Education Assistance Agency to comply with Connecticut examination requirements.

    DEFENDANTS,

    JORGE L. PEREZ,
    COMMISSIONER OF
    THE CONNECTICUT DEP'T
    OF BANKING, AND THE
    CONNECTICUT DEP'T OF BANKING

    WILLIAM TONG
    ATTORNEY GENERAL

    Joseph Chambers (ct26948)
    Assistant Attorney General
    Finance Dep't Head

BY:    /s/ James W. Caley
        James W. Caley (ct16768)
        Assistant Attorney General
        John Langmaid (ct29770)
        Assistant Attorney General
        55 Elm Street
        P.O. Box 120
        Hartford, CT  06141-0120
        Federal Bar No. ct16768
        james.caley@ct.gov
        Tel: (860) 808-5461
        Fax: (860) 772-1709

## <u>CERTIFICATION</u>

I hereby certify that on November 20, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ James W. Caley
James W. Caley
Assistant Attorney General
