IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, | : |
| | : CIVIL ACTION |
| | : |
| Plaintiff, | : NO. 3:18-CV-01114-MPS |
| | : |
| v. | : November 20, 2019 |
| | : |
| JORGE L. PEREZ, COMMISSIONER OF THE CONNECTICUT DEPARTMENT OF BANKING, THE CONNECTICUT DEPARTMENT OF BANKING, BETSY DEVOS, SECRETARY OF THE UNITED STATES DEPARTMENT OF EDUCATION, and THE UNITED STATES DEPARTMENT OF EDUCATION, | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |

---

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**Page**

I.  Introduction ..................................................................................................... 1

II.  Factual Background and Procedural History ................................................... 2

  A.  Education's Administration of Federal Student Loans ........................... 2

  B.  The Connecticut DOB Demands Production of Federal Student  Loan
      Records from PHEAA ............................................................................ 3

  C.  Education's Interpretation of HEA As Preempting State Regulation of
      Federal Student Loan Servicers ............................................................. 7

III.  The Governing Standard ................................................................................ 10

IV.  Argument ...................................................................................................... 10

  A.  Connecticut DOB's Request is Improper Because the Connecticut
      Disclosure Statutes Are Preempted Under Conflict Preemption ......... 11

      1.  "Obstacle" Preemption ............................................................... 15

      2.  "Impossibility" Preemption ........................................................ 20

      3.  The Department of Education's Preemption Notice is Entitled to
          *Skidmore* Deference .................................................................. 23

  B.  Connecticut DOB's Request is Improper Because the Connecticut
      Disclosure Statutes Are Also Preempted Under Field Preemption ..... 25

V.  Conclusion .................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................................10

*Arizona v. United States*,
   567 U.S. 387 (2012)............................................................................................................26

*Auer v. Robbins*,
   519 U.S. 452 (1997)............................................................................................................23

*Bowles v. Seminole Rock & Sand Co.*,
   325 U.S. 410 (1945)............................................................................................................23

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988)..............................................................................................................9

*Brannan v. United Student Aid Funds, Inc.*,
   94 F.3d 1260 (9th Cir. 1996) ............................................................................................22

*Chae v. SLM Corp.*,
   593 F.3d 936 (9th Cir. 2010) ...................................................................................... *passim*

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)....................................................................................................14, 19

*Freightliner Corp. v. Myrick*,
   514 U.S. 280 (1995)............................................................................................................21

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992)..............................................................................................................14

*Gartrell Constr. Inc. v. Aubry*,
   940 F.2d 437 (9th Cir. 1991) ........................................................................15, 16, 17, 18

*Hillsborough County v. Auto. Med. Labs.*,
   471 U.S. 707 (1985)............................................................................................................11

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
   No. 1:17-CV-253-MW/GRJ, 2018 U.S. Dist. LEXIS 199048 (N.D. Fla. Sept.
   20, 2018) ....................................................................................................................23, 24

*Leslie Miller Inc. v. Arkansas*,
   352 U.S. 187 (1956)...........................................................................................8, 16, 17, 18

*Long Island Care at Home, Ltd. v. Coke*,
    551 U.S. 158 (2007)...................................................................................23

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)...................................................................................14

*Oneok, Inc. v. Learjet, Inc.*,
    135 S. Ct. 1591 (2015)...............................................................................25

*Sperry v. Florida*,
    373 U.S. 379 (1963)...........................................................................8, 15, 16

*Student Loan Serv. Alliance v. District of Columbia*,
    351 F. Supp. 3d 26 (D.D.C. 2018) ................................................... *passim*

*Thomas Jefferson Univ. v. Shalala*,
    512 U.S. 504 (1994)...................................................................................23

*United States v. Virginia*,
    139 F.3d 984 (4th Cir. 1998) ......................................................15, 16, 18, 19

*Volt Info. Sciences v. Stanford Univ.*,
    489 U.S. 468 (1989)...................................................................................15

*Wisc. Pub. Intervenor v. Mortier*,
    501 U.S. 597 (1991)..............................................................................11, 25

*Wyeth v. Levine*,
    555 U.S. 555 (2009)...................................................................................23

**Federal Statutes**

5 U.S.C. § 552a, *et seq.* [Privacy Act of 1974]................................... *passim*

5 U.S.C. § 552a...........................................................................................3, 20

20 U.S.C. § 1018.......................................................................................19, 24

20 U.S.C. § 1082.............................................................................................12

20 U.S.C. § 1087a.............................................................................................2

20 U.S.C. § 1087e.........................................................................................2, 24

20 U.S.C. § 1087f .......................................................................2, 14, 17, 19, 24

Health Care and Education Reconciliation Act in 2010,
    Pub. L. 111-152, H.R. 4872, 111th.............................................................25

Higher Education Act,
   Pub. L. No. 89-329, 79 Stat. 1219 (1965)...........................................................1, 2

Student Aid and Fiscal Responsibility Act .........................................................25, 26

**State Statutes**

Conn. Gen. Stat. § 36a-17..................................................................................1, 5

Conn. Gen. Stat. § 36a-847...............................................................................3, 17

Conn. Gen. Stat. § 36a-849........................................................................6, 18, 20

Conn. Gen. Stat. § 36a-851............................................................................6, 20

Conn. Gen. Stat. § 36a-852.................................................................................17

Conn. Gen. Stat. § 36a-853.................................................................................21

**Rules**

Fed. R. Civ. P. 56(a) ..........................................................................................10

**Regulations**

34 C.F.R. § 685.204 and .205...............................................................................2

34 C.F.R. § 685.208..............................................................................................2

34 C.F.R. § 685.209..............................................................................................2

34 C.F.R. § 685.219..............................................................................................2

48 C.F.R. § 9.100 through .108-5........................................................................24

**Other Authorities**

Federal Preemption and State Regulation of the Department of Education's
   Federal Student Loan Programs and Federal Student Loan Servicers,
   83 Fed. Reg. 10619 ....................................................................................... *passim*

139 Cong. Rec. S5628 (daily ed. May 6, 1993)..................................................19

156 Cong. Rec. H1882 (Mar. 21, 2010) .............................................................26

156 Cong. Rec. H1914 (Mar. 21, 2010) .............................................................26

156 Cong. Rec. S2079–80 (Mar. 25, 2010) .......................................................26

156 Cong. Rec. S2087–88 (Mar. 25, 2010) ..................................................................26

H.R. 5715, 110th ...........................................................................................................25

I.     **Introduction**

As set forth in this Court's September 13, 2019 ruling on the Federal Defendants' motion to dismiss (Dkt. No. 59), this case was filed by plaintiff Pennsylvania Higher Education Assistance Agency ('PHEAA') after it "found itself 'between a rock and hard place' due to conflicting demands of the Connecticut Department of Banking ('CT DOB'),[1] its state regulator, and the United States Department of Education ('Education'), its federal regulator and the agency that hired it to service the loans.  The CT DOB demanded that it produce records containing identifying information of Connecticut residents whose federal student loans it services, while Education expressly prohibited it from releasing those records to the CT DOB." (Op. at 1).

PHEAA now moves for summary judgment on its claims for declaratory relief and a permanent injunction against the State Defendants to prevent enforcement of their request for federal student loan servicing records, on the basis that federal law preempts the Connecticut Disclosure Statutes that the State Defendants have relied upon to seek such records.[2]  These statutes are preempted under the doctrines of both conflict and field preemption.  They directly conflict with federal law by standing as an obstacle to the administration and purposes of the Higher Education Act ('HEA') and Education's choice to contract with PHEAA.  The Disclosure Statutes also conflict with federal law because it is impossible for PHEAA to comply with federal law and its contract with Education, particularly its obligation to maintain the confidentiality of the federal student loan documents at issue, while at the same time also

---

[1]     The CT DOB and its Commissioner, Jorge L. Perez, are collectively referred to herein as the "State Defendants."

[2]     The Connecticut Disclosure Statutes at issue herein include Conn. Gen. Stat. §§ 36a-17; 36a-849; and 36a-851.

complying with the Disclosure Statutes and the document request made by the CT DOB. Finally, the Disclosure Statutes are preempted because federal law and the federal policies at issue are so dominant that they completely occupy the field of federal student loan servicing, prohibiting Connecticut from legislating in the same field, which it has attempted to do through its Disclosure Statutes.  Therefore, PHEAA's motion for summary judgment should be granted.

## II.     Factual Background and Procedural History

### A.     Education's Administration of Federal Student Loans

Under the HEA, Pub. L. No. 89-329, 79 Stat. 1219 (1965), and related statutes and regulations, Education has the authority to issue a variety of federal loans and grants to student borrowers.  Specifically relevant here are loans made under the William D. Ford Federal Direct Loan Program, 20 U.S.C. §§ 1087a *et seq.* ('Direct Loans,' or the 'Direct Loan Program'), which are issued by the federal government directly to eligible student borrowers, and benefits awarded to Direct Loan borrowers under the Public Service Loan Forgiveness ('PSLF') Program, 20 U.S.C. § 1087e(m).  Local Rule 56(a)1 Statement of Undisputed Material Facts (hereinafter, 'Statement of Facts') ¶ 1.  Education, rather than self-service the Direct Loans it issues, contracts with third-party servicers such as PHEAA to perform that function.  *Id.* ¶ 2; 20 U.S.C. § 1087f(a).  Every aspect of the servicing of such loans is highly regulated by Education, including administration of loan repayment generally (34 C.F.R. § 685.208), income-based or income-contingent repayment plans (*id.* § 685.209), deferments and forbearances (*id.* §§ 685.204–05), and borrower benefits such as the PSLF Program (*id.* § 685.219).

In 2009, PHEAA was selected by Education to service federal loans on a national basis. Statement of Facts ¶ 3.  PHEAA's Contract with Education (the 'Contract') governs PHEAA's servicing of loans owned by Education.  *Id.* ¶ 4.  In addition to requiring that PHEAA "meet all statutory and legislative requirements," *id.* ¶ 5, the Contract specifies 124 enumerated obligations

for the servicer, many with dozens of sub-requirements.  *Id.* ¶ 6.  Education carefully monitors PHEAA's performance under the Contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices.  *Id.* ¶ 7.

The Contract also requires PHEAA to comply with strict records management requirements.  The Contract provides that Education exclusively owns all information PHEAA stores as part of its servicing activities, and that no other party may copy or transfer such information without Education's express written consent.  *Id.* ¶ 8.  Additionally, and of particular significance here is the requirement to "comply with Federal and [Education] records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974."  *Id.* ¶ 9.  The Privacy Act of 1974 ('Privacy Act') provides, among other things, that federal contractors who operate a federal system of records, such as PHEAA, are considered employees of a federal agency for purposes of applicability of the Privacy Act's criminal penalties for prohibited disclosure of protected records.  *See* 5 U.S.C. § 552a(i), (m).

### B.    The Connecticut DOB Demands Production of Federal Student Loan Records from PHEAA

PHEAA currently services federal and private student loans for approximately 85,000 borrowers residing in the State of Connecticut.  Statement of Facts ¶ 10.  Approximately 78,000 of those borrowers have federal student loans owned by Education.  *Id.*  On May 1, 2017, PHEAA applied for a license from the CT DOB to act as a student loan servicer in Connecticut, pursuant to Conn. Gen. Stat. § 36a-847(b).  *Id.* ¶ 11.  PHEAA's application was approved on June 30, 2017.  *Id.*

Six months later, on November 3, 2017, PHEAA received, via email, a letter from the CT DOB informing PHEAA that it proposed to conduct a limited scope examination of PHEAA in

order to "review[] all accounts transferred to [PHEAA] for the months of August, September and October, 2017 as a result of the [PSLF] [P]rogram." *Id.* ¶ 12. The CT DOB's November 3, 2017 letter included a Student Loan Servicer Management Questionnaire and Information Request (the 'Request') directed to PHEAA. *Id.* ¶ 13. The Request sought, *inter alia*, PHEAA's policies and procedures related to administering the PSLF Program, and also borrower-specific information, including certain borrower complaints. *Id.* ¶ 14.

PHEAA exchanged email correspondence with the CT DOB regarding the scope of the Request on November 7, 2017. *Id.* ¶¶ 15-16. That same day, PHEAA received an email from Education containing an express directive from Education's Office of Federal Student Aid admonishing PHEAA that it was prohibited under federal law from releasing any data or documentation related to PSLF to the CT DOB. *Id.* ¶ 17.

Two days later, on November 9, 2017, PHEAA sought additional clarification from the CT DOB and requested information regarding the logistics of producing the documents and information requested. *Id.* ¶ 18. PHEAA also informed the CT DOB of the position taken by Education in its November 7th email and provided contact information for Education officials to whom the CT DOB could send direct requests for production of federal student loan documents. *Id.* ¶ 19.

On January 11, 2018, the CT DOB informed PHEAA that it would issue a direct request to Education for access to the records that the CT DOB had previously sought from PHEAA. *Id.* ¶ 20. In a letter to the CT DOB that same day, PHEAA memorialized this conversation and stated that PHEAA would "not be providing any responsive documents [or] data that are specific to [Education's Office of Federal Student Aid]." *Id.* ¶ 21.

PHEAA received no response from the CT DOB to its January 11, 2018 letter or its accompanying production of information and documents until more than two months later, on March 21, 2018. *Id.* ¶ 23. On that date, PHEAA received a letter from the CT DOB "formally convey[ing] [its] concerns related to [the proposed] examination [of PHEAA] and provid[ing] PHEAA with an opportunity to show compliance with all lawful requirements for the retention of its student loan servicer license in Connecticut pursuant to Section 4-182(c) of the Connecticut General Statutes." *Id.* ¶ 24. The letter also asserted that PHEAA had failed to produce "numerous" records sought in the Request in violation of the Disclosure Statutes. *Id.* ¶ 25.

The Connecticut Disclosure Statutes at issue here provide, in pertinent part, as follows:

> (c) For the purpose of any . . . examination . . . under this title the commissioner may . . . direct, order or subpoena [production of] records the commissioner deems relevant or material. . . .

> (e) Any person who is the subject of any . . . examination . . . pursuant to this section shall (1) make its records available to the commissioner in readable form; (2) provide personnel and equipment necessary, including, but not limited to, assistance in the analysis of computer-generated records; (3) provide copies or computer printouts of records when so requested; (4) make or compile reports or prepare other information as directed by the commissioner in order to carry out the purposes of this section, including accounting compilations, information lists and dates of transactions in a format prescribed by the commissioner or such other information as the commissioner deems necessary to carry out the purposes of this section; (5) furnish unrestricted access to all areas of its principal place of business or wherever records may be located; and (6) otherwise cooperate with the commissioner.

Conn. Gen. Stat. § 36a-17.

> (a) Each student loan servicer licensee shall maintain adequate records of each student education loan transaction for not less than two years following the final payment on such student education loan or the assignment of such student education loan, whichever occurs first, or such longer period as may be required by any other provision of law.

(b) If requested by the commissioner, each student loan servicer licensee shall make such records available or send such records to the commissioner by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt, not later than five business days after requested by the commissioner to do so.  Upon request, the commissioner may grant a licensee additional time to make such records available or send the records to the commissioner.

Conn. Gen. Stat. § 36a-849.

(a) In addition to any authority provided under this title, the Banking Commissioner shall have the authority to conduct investigations and examinations as follows:

(1) For purposes of . . . general or specific inquiry or investigation to determine compliance with sections 36a-846 to 36a-854, inclusive, the commissioner may access, receive and use any books, accounts, records, files, documents, information or evidence including, but not limited to, . . .

(C) any other documents, information or evidence the commissioner deems relevant to the inquiry or investigation regardless of the location, possession, control or custody of such documents, information or evidence.

Conn. Gen. Stat. § 36a-851.

The CT DOB's March 21, 2018 letter stated that PHEAA's failure to produce the federally owned documents "*constitute[s] grounds to revoke PHEAA's student loan servicer license in Connecticut* pursuant to Sections 36a-852 and 36a-[8]51 of the Connecticut General Statutes and *forms a basis to take other administrative action* as the Commissioner deems appropriate, including, but not limited to, initiation of proceedings to order PHEAA to cease and desist and impose a civil penalty on PHEAA of up to $100,000 per violation."  Statement of Facts ¶ 26 (emphasis added).  The letter concluded by stating that "[p]ursuant to Sections 4-182(c) and 36a-52a [of the Connecticut General Statutes], you are being given an opportunity to show compliance with all lawful requirements for the retention of your student loan servicer license.  You must respond . . . in writing no later than April 4, 2018.  If no written response is

received by that date or if the [State Defendants] find[] any such response to be insufficient, *the [State Defendants] may issue an administrative action against your license*." *Id.* ¶ 27 (emphasis omitted and added).

On January 12, 2018, the CT DOB made a direct request to Education for access to certain records pertaining to federal student loans that PHEAA services for Education. *Id.* ¶ 22. On March 26, 2018, Education's Office of the General Counsel denied that request. *Id.* ¶ 28. A week later, on April 2, 2018, Education sent a letter to Linda J. Randby, Esq., PHEAA's Interim Senior Vice President of Legal and Compliance Services. *Id.* ¶ 29. That letter referenced the CT DOB's March 21, 2018 letter to PHEAA requesting records, and stated that the records requested by the CT DOB "*belong to the federal government and PHEAA is prohibited from releasing them under its contract with [Education].*" *Id.* ¶ 30 (emphasis added). The April 2, 2018 Education letter further stated that "[a] state agency does not have the authority to prohibit PHEAA from servicing federal student loans when the federal government has specifically authorized it to do so." *Id.* On April 2, 2018, representatives from PHEAA participated in a telephone conference with representatives from the CT DOB. *Id.* ¶ 32. During the call, the CT DOB informed PHEAA that it would not rescind its demand that PHEAA provide an explanation for its non-compliance with the Connecticut Disclosure Statutes. *Id.*

Finding itself caught between the conflicting demands of Education and the CT DOB, PHEAA filed this lawsuit to obtain judicial relief.

**C.    Education's Interpretation of HEA As Preempting State Regulation of Federal Student Loan Servicers**

Education's refusal to permit PHEAA to produce federally owned documents and information to the CT DOB, and Education's own refusal to provide such documents and information to the CT DOB, are consistent with the position staked out by Education in various

public documents it has issued over the past few years concerning preemption of state licensing statutes relating to servicers of federal student loans.

First, Education, through Patrick A. Bradfield, the Director of Federal Student Aid Acquisitions, released a public memorandum on December 27, 2017, regarding ownership of and access to Education records and data (the 'Education Memorandum'). *Id.* ¶ 34 and *id.* at Ex. B. During the first week of January 2018, PHEAA shared the Education Memorandum with the CT DOB. *Id.* ¶ 34. The Education Memorandum states, *inter alia*, that "[a]ll records maintained in any [Education] systems of records to which [Education] provides its contractors access remain at all times records of [Education], not records of a contractor." Education Memorandum at 1. The Education Memorandum also states that "[a]ny request from any third party for [Education] records to which a contractor has access must be made directly to [Education], where it will be evaluated for compliance with the requirements of the Privacy Act . . . ." *Id.*

Next, Education published a notice entitled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers" (the 'Preemption Notice'). Statement of Facts ¶ 35; 83 Fed. Reg. 10619 (dated Mar. 12, 2018). In the Preemption Notice, Education explains that certain state requirements imposed on student loan servicers, including state regulations requiring licensure of servicers performing work for Education, conflict with Education's federally derived power to select contractors and to determine whether contractors are in compliance with federal law. *Id.* at 10620 ("A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give the State's licensing board a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by

Congress.") (quoting *Sperry v. Florida*, 373 U.S. 379, 385 (1963) (quoting *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 190 (1956))).

Education further explained in the Preemption Notice that such state law requirements undermine the "clear command for uniformity" in the HEA with respect to the Direct Loan Program, and that "where the Federal interest requires a uniform rule, the entire body of State law applicable to the area conflicts and is replaced by Federal rules." 83 Fed. Reg. at 10621 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 508 (1988)).  The Preemption Notice further stated as follows:

> A requirement that Federal student loan servicers comply with 50 different State-level regulatory regimes would significantly undermine the purpose of the Direct Loan Program to establish a uniform, streamlined, and simplified lending program managed at the Federal level.
>
> \*          \*          \*
>
> Indeed, "Congress's instructions to the [Department] on how to implement the student-loan statutes carry this unmistakable command: Establish a set of rules that will apply across the board." ([*Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010)]).  State regulatory regimes conflict with this congressional objective . . . State-level regulation subjects borrowers to different loan servicing deadlines and processes depending on where the borrower happens to live, and at what point in time.
>
> These conflicts with statutes, regulations, Federal contracts, and congressional objectives suggest that State regulation of loan servicers would be preempted by Federal law.  That result is even more evident where, as in the Direct Loan Program, State regulation implicates uniquely Federal interests.  As the Supreme Court has recognized, "obligations to and rights of the United States under its contracts are governed exclusively by Federal law," and this area of Federal concern extends to "liability to third persons" that "arises out of performance of the contract."  (*Boyle v. United Technologies Corp.*, 487 U.S. 500, 504-05 (1988).)

83 Fed. Reg. at 10621.

Third, Education has continually pressed the same or similar positions as those expressed in its communications with PHEAA and the State Defendants, as well as in the Education Memorandum and the Preemption Notice, leading to disputes similar to this litigation in multiple state and federal courts around the country.  In at least two of those cases, the Department of Justice filed a "Statement of Interest of the United States" reiterating the same position on preemption previously set forth in the Preemption Notice.  *See Cmwlth. of Mass. v. PHEAA*, No. 1784-CV-02682 (Mass. Super. Ct.) (Ex. A); *Student Loan Serv. Alliance* ["*SLSA*"] *v. District of Columbia*, No. 18-cv-640 (D.D.C.) (Ex. B).

## III.   The Governing Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The parties in this case have stipulated to material facts and elected to forego discovery.  *See* ECF No. 62 (Revised Form 26(f) Report of Parties' Planning Meeting). There is no dispute over the facts that might affect the outcome of the suit, which is ripe for resolution now as a matter of law.

## IV.   Argument

Federal law and federal regulations impose detailed and comprehensive requirements on servicers of federal student loans.  As correctly recognized by Education in the Preemption Notice, requiring federal student loan servicers to "comply with 50 different State-level regulatory regimes would significantly undermine the purpose of the Direct Loan Program to establish a uniform, streamlined, and simplified lending program managed at the Federal level." 83 Fed. Reg. at 10621.

The Connecticut Disclosure Statutes conflict with the HEA and federal regulations enacted by Education. They also conflict with the purposes of the HEA, as well as Education's contract with PHEAA. Thus, conflict preemption, in the form of both "obstacle" preemption and "impossibility" preemption, should be found here.

In addition, the Disclosure Statutes are preempted because the federal government has occupied the field of federal student loan servicing. Simply put, "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991).

### A.      Connecticut DOB's Request is Improper Because the Connecticut Disclosure Statutes Are Preempted Under Conflict Preemption

The Connecticut Disclosure Statutes, as applied to PHEAA in this case, create an irreconcilable conflict with the HEA and its administration, and are therefore preempted. Conflict preemption occurs when either (1) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or (2) "compliance with both federal and state regulations is a physical impossibility." *Hillsborough County v. Auto. Med. Labs.*, 471 U.S. 707, 713 (1985) (citations omitted). The Connecticut Disclosure Statutes are preempted under each of these forms of conflict preemption.

Through the HEA, Congress provided "a clear command for uniformity." *Chae*, 593 F.3d at 945. In *Chae*, which dealt with the Federal Family Education Loan Program ('FFELP'), the Ninth Circuit held that the HEA preempted claims under California law related to a loan servicer's allegedly fraudulent misrepresentations in its billing statements. The Court of Appeals stated that "we agree with the DOE that Congress intended uniformity within the program. The statutory design, its detailed provisions for FFELP's operation, and its focus on the relationship

11

between borrowers and lenders persuade us that Congress intended to subject FFELP participants to uniform federal law and regulations." *Id*. at 947.

The Court's reasoning with respect to conflict preemption as to the FFELP Program applies equally to the Direct Loan Program:

> Congress has granted the DOE broad authority to implement the FFELP.  *See* 20 U.S.C. § 1082(a)-(p).  Congress granted the DOE the power to prescribe regulations, access lender records, audit participants, impose civil penalties, suspend or terminate lenders from the program, and sue regulatory violators.  *Id.*  A grant of "ample authority" to regulate a detailed legislative scheme, such as the one administered by the DOE here, is evidence that Congress intended the agency to have the authority to preempt state law.  *See* [*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159 (1982)].

*Chae*, 593 F.3d at 948.

The Court held that "subjecting the federal regulatory standards to the potentially conflicting standards of fifty states on contract and consumer protection principles would stand as a severe obstacle to the effective promotion of the funding of student loans." *Id*. at 950.  It stated that "[s]uch an obstacle, which we consider hostile to the purposes of Congress in this program, must bow to the overriding principles of conflict preemption and federal law supremacy." *Id*.  Indeed, "Congress's instructions to [Education] on how to implement the student-loan statutes carry this unmistakable command: Establish a set of rules that will apply across the board." *Id*. at 945 (internal citation and quotations omitted).  As a result, the Ninth Circuit determined that because "Congress intended the FFELP to operate uniformly," *id*. at 947, California state law claims for alleged fraudulent and deceptive practices stood as an obstacle to FFELP's uniform operation and were preempted.

In its Preemption Notice, Education emphasized that the same Congressional goal of uniformity that the *Chae* Court found with respect to the FFELP Program also exists with the

Direct Loan Program.  *See* 83 Fed. Reg. at 10621 ("[T]he purpose of the Direct Loan Program [was] to establish a uniform, streamlined, and simplified lending program managed at the Federal level.").   Education also endorsed the *Chae* holding on conflict preemption in its Preemption Notice: "These conflicts with statutes, regulations, Federal contracts, and congressional objectives suggest that State regulation of loan servicers would be preempted by Federal law."  *Id.*  And it noted that this result is evident as it applies to the Direct Loan Program, explaining that "there is no question that the imposition of liability on Government contractors will directly affect the terms of Government contracts, at the very least by raising the price of such contracts and the interests of the United States will be directly affected." *Id.*  (citation and quotation marks omitted)).

Here, as recognized in *Chae* and by Education in its Preemption Notice, requiring PHEAA to comply with CT DOB's Request under the Connecticut Disclosure Statutes would undermine and conflict with Congress's objective of uniformity.   Under the HEA, Congress intended nationwide uniformity, and certainly did not envision that the legislatures of all 50 states could adopt a patchwork quilt of varying federal student loan servicer licensing regimes. Nor did Congress intend that federal student loan servicers could become a back-door means of access to federal student loan records owned by Education.   Rather, it envisioned that such questions would be resolved solely by federal law—embodied by Education's regulation over and contracts with loan servicers.

In *SLSA*, the court held that conflict preemption (specifically, obstacle preemption) applied to a District of Columbia statute and rules promulgated thereunder that purported to regulate student loan servicers who manage federally-owned and federally-guaranteed student

loans, insofar as such regulation applied to the servicing of Direct Loans and Government-owned FFELP loans.[3]  The court expressly agreed with the plaintiff's arguments that:

> Congress' purpose in enacting the HEA was to delegate authority to the federal government to select and contract directly with servicers for its FDLP [Direct] loans… [B]y creating duplicative and additional requirements for loan servicers, the D.C. licensing scheme impermissibly second-guesses the federal government's decisions to contract with those servicers.
>
> *          *          *
>
> Here, Congress has deliberately delegated the authority to [Education] to contract with servicers to service [Direct] loans. *See* 20 U.S.C. § 1087f.  Congress' purpose is clear, and allowing a state to impose separate, and potentially conflicting, contracting requirements would nullify that provision.

351 F. Supp. 3d 26, 62, 65 (D.D.C. 2018).

In deciding whether conflict preemption applies, the courts must consider both the statute's text and its purpose and objectives.  *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) ("For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must, of course, be considered, and that which needs must be implied is of no less force than that which is expressed."); *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 103 (1992) ("In determining whether state law stands as an obstacle to the full implementation of a federal law it is not enough to say that the ultimate goal of both federal and state law is the same.  A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach that goal." (internal quotation marks and citations omitted)).

---

[3]     However, the court did not find conflict preemption with respect to the District of Columbia's regulation of student loan servicers insofar as it related to Commercial FFELP loans.  Nor did the SLSA court find express, impossibility, or field preemption.

### 1.      "Obstacle" Preemption

Obstacle preemption occurs where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Crosby*, 530 U.S. at 372–73 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." (quotation omitted)).  An obstacle occurs when a state law would directly conflict with federal law or would "undermine [its] goals and policies." *See Volt Info. Sciences v. Stanford Univ.*, 489 U.S. 468, 477–78 (1989).

As noted above, the court in *SLSA* found obstacle preemption with respect to the District of Columbia's regulation of student loans servicers insofar as Direct Loans and Government-owned FFELP loans are concerned.  The court emphasized that "[c]ourts have consistently held that any state law that impedes the federal government's ability to contract—including state licensing regimes that effectively second guess United States' contracting decisions—are preempted."  *SLSA*, 351 F. Supp. 3d at 62 (citing *United States v. Virginia*, 139 F.3d 984, 987-89 (4th Cir. 1998); *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 439-41 (9th Cir. 1991)).  The *SLSA* court went on to stress that "[a] '[s]tate may not enforce licensing requirements which, though valid in the absence of federal regulation, . . . impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.'"  351 F. Supp. 3d at 62 (quoting *Sperry*, 373 U.S. at 385).

In words equally applicable here, the court in *SLSA* explained the basis for its finding of obstacle preemption with respect to state regulation of the servicing of Direct Loans as follows:

> Here, there is a risk that the federal government will contract with a servicer after evaluating its qualifications under federal law and regulations, and that servicer nevertheless will be determined to be unqualified by the Commissioner and barred from operating in the District of Columbia under the D.C. Law and Final Rules.  The

threat of District of Columbia officials' second-guessing the federal government's contracting decisions is sufficient under *Leslie Miller* to invalidate the state licensing scheme as applied to servicers when servicing their FDLP loans.

351 F. Supp. 3d at 63.

The Connecticut Disclosure Statutes create an undeniable obstacle to the federal government's administration of Direct Loans. This aspect of the licensing scheme, whereby the State Defendants decide who can service federal student loans within Connecticut's borders, conflicts with Education's exclusive statutory prerogative to choose PHEAA to service Direct Loans and the PLSF and to maintain the confidentiality of its records in accordance with its contract and the Privacy Act. Because Connecticut's regulation of PHEAA is based on its own licensing scheme—Connecticut does not obtain oversight over PHEAA or require it to produce anything unless it is licensed—none of the Connecticut Disclosure Statutes can apply as to the servicing of Direct Loans.

State licensing requirements are preempted and cannot be enforced when they "give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress." *Sperry*, 373 U.S. at 385 (quoting *Leslie Miller v. Arkansas*, 352 U.S. 187, 190 (1956)). This principle has been applied in a number of contexts. *See, e.g.*, *Leslie Miller*, 352 U.S. at 189–90 (holding that Arkansas cannot require a construction company to obtain an Arkansas contractor's license to perform work at an air force base for the United States); *Sperry*, 373 U.S. at 385 (holding that Florida cannot enjoin a non-lawyer registered to practice before the U.S. Patent Office from preparing and prosecuting patent applications in Florida when non-lawyers are authorized to practice before the office under federal statute and regulations);

16

*Gartrell*, 940 F.2d at 439–41 (holding that California cannot require a construction contractor to obtain a California contractor's license to perform work for a Department of the Navy air station); *Virginia*, 139 F.3d at 987 (holding in favor of a contractor for the FBI's background investigation contract services program and granting declaratory and injunctive relief to prevent Virginia from requiring these types of contractors to comply with its licensing and registration requirements for private security services).

If a comparison of the federal contractor requirements in federal statutes and regulations with the state requirements shows that the state licensing scheme requires the federal contractor to "desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on," then the state licensing scheme is preempted. *Leslie Miller*, 352 U.S. at 190 (quoting *Johnson v. Maryland*, 254 U.S. 51, 57 (1920)); *see also Gartrell*, 940 F.2d at 439-40 (reasoning that the *Leslie Miller* rule applies regardless of whether the state licensing scheme presents a condition precedent to obtaining a federal contract or does not require compliance until after the federal contract has been awarded).

Here, the Connecticut Disclosure Statutes, as applied to PHEAA, improperly arrogate to the State Defendants the power to second-guess the federal government's determination of who will service Direct Loans, and how.  However, the HEA delegates to the Secretary of Education the sole authority to select and contract with loan servicers to service Direct Loans. *See* 20 U.S.C. § 1087f.  The Secretary of Education is instructed to contract "at competitive prices" with those servicers "which the Secretary determines are qualified," specifically those "that have extensive and relevant experience," and have "demonstrated effectiveness." *See id.*

§ 1087f(a)(1)-(2).   Pursuant to this authority, Education has selected and contracted with PHEAA to service Direct Loans.  Statement of Facts ¶ 3.

Connecticut requires the same servicer—PHEAA—to obtain a license to operate within that state.  Conn. Gen. Stat. § 36a-847.  The Commissioner has the ability to grant, deny, or revoke PHEAA's license.  *Id.* §§ 36a-847, 852.  The Connecticut Disclosure Statutes purport to require servicers to make federal student loan records—including Education's records— available to the State Defendants, in some circumstances within five business days after the Commissioner's official request.  *See id.* § 36a-849(b).  And here, the CT DOB has in fact threatened "to revoke PHEAA's student loan servicer license in Connecticut pursuant to Sections 36a-852 and 36a-[8]51 of the Connecticut General Statutes and . . . take other administrative action as the Commissioner deems appropriate" if PHEAA does not comply with the Request at issue.  *See* Statement of Facts ¶ 26.

As a result, the Connecticut Disclosure Statutes "frustrate[] the objectives" of the Direct Loan Program by allowing the State Defendants to impermissibly "second-guess the [federal government's] responsibility determination and by giving [the State Defendants] 'a virtual power of review over the federal determination of "responsibility."'"  *Virginia*, 139 F.3d at 989 (quoting *Leslie Miller*, 352 U.S. at 190).  The CT DOB, "through its licensing requirements, is effectively attempting to review the federal government's responsibility determination," which is "prohibited by *Leslie Miller*."  *Gartrell*, 940 F.2d at 439.  Connecticut's licensing regime poses a direct obstacle to the administration of Education's Direct Loan program through its duly chosen contractual partner, PHEAA.

To the extent that the Connecticut Disclosure Statutes represent the State Defendants' intent to determine PHEAA's continued competence, they are no different than Virginia's in

*United States v. Virginia*, where the court reasoned that the state's rationale of ensuring investigators' "continued competence" shows that it "believes that the FBI's assessment of its investigators' competence is inadequate because it does not ensure their continuing competence" and "that the state intends to substitute its competency judgment for the FBI's." 139 F.3d at 989–90. As stated by the court, "[t]his rationale clearly runs afoul of the Supreme Court's holding that federal contractors cannot be required to satisfy state "'qualifications in addition to those that the [Federal] Government has pronounced sufficient.'" *Id.* at 990 (quoting *Leslie Miller*, 352 U.S. at 190). These additional state law requirements would increase costs to PHEAA that would be passed on to Education, threatening the federal goals of obtaining "competitive prices," 20 U.S.C. § 1087f(a)(1), and generating "costs savings" to the federal government, 20 U.S.C. § 1018(c)(1).[4]

Because "[PHEAA] does not have the choice to refrain from operating in a particular State to avoid licensing fees and other costs imposed by the State," Connecticut is "using [PHEAA's] compliance with Federal law and contracts to extract payments that benefit the State at the expense of the Federal taxpayer." 83 Fed. Reg. at 10621 (stating that "[a] requirement that Federal student loan servicers comply with 50 different State-level regulatory regimes would significantly undermine the purpose of [FDLP] to establish a uniform, streamlined, and simplified lending program managed at the Federal level").

Therefore, as correctly held by the court in *SLSA*, the Connecticut Disclosure Statutes are preempted as applied to the servicing of Direct Loans under the doctrine of obstacle preemption.

---

[4]     In replacing FFELP with the Direct Loan Program, Congress intended to, among other things, "avoid the unnecessary cost to taxpayers and borrowers and the administrative complexity associated with [FFELP] through the use of a direct student loan program," and "create a more streamlined student loan program that can be managed more effectively at the Federal level." 139 Cong. Rec. S5628 (daily ed. May 6, 1993).

## 2.  "Impossibility" Preemption

Additionally, the Connecticut Disclosure Statutes are preempted because "it is impossible for [PHEAA] to comply with both state and federal law." *Crosby*, 530 U.S. at 372.

Education has made clear that PHEAA must comply with the requirements of the Privacy Act.  *See* Aff. of James J. Jarecki, Esq., Ex. A (PHEAA Contract with Education; hereinafter 'Contract') at Att. A-2, ¶ 80(h) (requiring PHEAA "to comply with Federal and [Education] records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974").  PHEAA possesses Privacy Act-protected records—borrower records containing names, identification numbers, contact information, and other personally-identifiable information—that are the records of Education and not PHEAA. *See* Statement of Facts ¶ 8.  The Privacy Act expressly prohibits Education from disclosing these records without permission from the borrower.  5 U.S.C. § 552a(b).  PHEAA cannot provide these records to third parties.  *See* Contract at Att. A-2 ¶ 80(d) (prohibiting PHEAA from disseminating information covered by the Privacy Act).  If PHEAA violates the Privacy Act, it is subject to criminal liability and the potential cancellation of its contract with Education.  5 U.S.C. § 552a(i) and (m)(1); Contract at Att. A-2, at 11-12.

The Connecticut Disclosure Statutes require PHEAA to "maintain . . . records of each student education loan transaction" and, "[i]f requested by the commissioner, [PHEAA] shall make such records available or send such records to the commissioner . . . not later than five business days after requested by the commissioner to do so."  Conn. Gen. Stat. § 36a-849.  They also provide that, in an inquiry or investigation (such as the CT DOB's "limited scope examination of PHEAA" in this case, Statement of Facts ¶ 12), "the commissioner may access, receive and use *any* . . . documents, information or evidence the commissioner deems relevant to the inquiry or investigation *regardless of the location, possession, control or custody of such*

*documents*." Conn. Gen. Stat. § 36a-851 (emphasis added). This broad discretion includes access to Education's records in PHEAA's custody.

The Connecticut Disclosure Statutes, as demonstrated through the State Defendants' Request, place PHEAA's compliance with the Privacy Act in the Commissioner's hands, exposing PHEAA to liability and making it impossible for PHEAA to comply with both federal and Connecticut law. On the one hand, under federal law and PHEAA's contract with Education, it is prohibited from violating the Privacy Act or otherwise granting access to documents or information solely owned by Education. On the other, the State Defendants claim that PHEAA must comply with the Request in order to be able to continue to do business in Connecticut.[5]

No matter what PHEAA does, it cannot obey both state and federal law. As this Court aptly put it at the outset of its September 13, 2019 Opinion, PHEAA finds itself caught "between a rock and a hard place," which is the epitome of impossibility preemption.

The Connecticut licensure statutes are silent regarding the Commissioner's discretion to waive or reduce the requirements on record keeping—but they certainly do not permit the federal government to do so. Furthermore, the State Defendants undoubtedly have the discretion to abandon their Request to PHEAA and deal directly with Education, as they attempted to do once until frustrated by the result. *See* Statement of Facts ¶¶ 20-22. Unless the Commissioner

---

[5]     Moreover, another section of the Connecticut loan servicing law requires PHEAA to "comply with all applicable *federal laws and regulations relating to student loan servicing*[,]" Conn. Gen. Stat. § 36a-853 (emphasis added), and provides that "a violation of any such federal law or regulation shall be deemed a violation of this section and a basis upon which the commissioner may take enforcement action[.]" *Id.* Strictly speaking, this provision would empower the Commissioner to take action against PHEAA's license even if it complies with the Request, because such compliance would be a violation of federal law.

abandons the Request or otherwise waives application of the Connecticut Disclosure Statutes to PHEAA, PHEAA faces a situation where it is impossible for it to comply with federal law and its contractual obligations to Education, on the one hand, and the Connecticut Disclosure Statutes, on the other. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (explaining that under conflict preemption, "a federal statute implicitly overrides state law . . . when state law is in actual conflict with federal law," which is when it is "impossible for a private party to comply with both state and federal requirements").

The Commissioner's apparent power to unilaterally determine which record requests would be preempted does not save these provisions from preemption. Education's interpretation regarding this important issue of the privacy of student records—that the Privacy Act and a servicer's contract with the Department preempts these state law disclosure requirements—is entitled to deference. S*ee* ECF No. 43-1 (Education's Mot. to Dismiss), at 17 (noting that "the Connecticut Disclosure Statutes purport to require servicers to release information that federal law and Education's contracts require be kept confidential absent authorization from Education"). At the very least, the Commissioner's discretion undermines Congress' goal of "ensuring uniformity and stability within the [federal student loan programs]." *Chae*, 593 F.3d at 949.

The State Defendants' insistence on PHEAA's compliance with their Request has presented an imminent and real impossibility for PHEAA, as the competing demands of state and federal regulators simply cannot be reconciled. In such a case, state law must yield to federal law; the Connecticut Disclosure Statutes are preempted.

### 3.    The Department of Education's Preemption Notice is Entitled to *Skidmore* Deference

In determining whether preemption exists, the Court should give weight to an agency's determination of the statutory objectives.  *See Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996) ("Because Congress has delegated to the Secretary its authority to implement the provisions of the HEA, the Secretary 'is uniquely qualified to determine whether a particular form of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, . . . and therefore, whether it should be preempted.'" (quoting *Medtronic*, 518 U.S. at 496).

"[A]n agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted."  *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (internal quotations omitted); *see also Auer v. Robbins*, 519 U.S. 452, 461-63 (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). A court should defer to the agency's interpretation "unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation."  *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)).

Courts also defer to a federal agency's interpretation of the preemptive effect of its laws and regulations, with the weight of that deference depending upon the interpretation's "thoroughness, consistency, and persuasiveness."  *Wyeth v. Levine*, 555 U.S. 555, 576-77 (2009) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  Significantly, in the specific context of federal student loans, the Ninth Circuit in *Chae* deferred to the Department's interpretation regarding preemption because "[the agency's] position about the FFELP's [(Federal Family

23

Education Loan Program)] purpose of uniformity is in harmony with the evidence of congressional intent." 593 F.3d at 949–50.

In *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, No. 1:17-CV-253-MW/GRJ, 2018 U.S. Dist. LEXIS 199048, at *8 (N.D. Fla. Sept. 20, 2018), the court found that the Preemption Notice "is persuasive and due deference under *Skidmore*…"  It stated:

> [T]he interpretation is well-reasoned and sensible.  It articulates unique federal interests in controlling student loan servicers through government contracts that advance the comprehensive disclosure requirements detailed in federal regulations.

*Id.*[6]

The Department's Preemption Notice is consistent with its prior pronouncements, and is also consistent with positions taken by Education in its Statements of Interest in *SLSA* and *Massachusetts v. Pennsylvania Higher Education Assistance Authority*, and as an intervenor in *Chae*, where it asserted that certain borrower claims against federal student loan servicers are preempted.  *See Chae v. SLM Corp.*, No. 08-56154 (9th Cir.) at Dkt. No. 22 (Feb. 26, 2009).

Furthermore, the Preemption Notice is thorough and persuasive, as the court in *Lawson-Ross* correctly found.  2018 U.S. Dist. LEXIS 199048, at *7-9.  The Preemption Notice does not purport to tackle every variant of state licensing law that could conceivably interfere with administration of the HEA.  However, the Preemption Notice relies upon a detailed examination of the purpose and intent of the federal student loan programs and extensively cites case law.  *See* 83 Fed. Reg. at 10619–21.  The Preemption Notice also repeatedly cites the statutes and regulations governing the Direct Loan Program with which state licensing requirements—such as the Connecticut Disclosure Statutes at issue here—conflict and interfere.  *See id.* at 10620

---

[6]     However, PHEAA acknowledges that the court in *SLSA* refused to accord deference to the Preemption Notice.  *SLSA*, 351 F. Supp. 3d at 49-51.

(citing 20 U.S.C. §§ 1018a; 1087e; 1087f(a), (a)(2) and (b)(4); 48 C.F.R. §§ 9.100 through 9.108-5). Furthermore, as explained above, Education correctly analyzed the preemption issues relevant to this case.

Therefore, Education's Preemption Notice should be accorded substantial deference and, as a result, the Connecticut Disclosure Statutes should be found to be preempted.

### B. Connecticut DOB's Request is Improper Because the Connecticut Disclosure Statutes Are Also Preempted Under Field Preemption

The Connecticut Disclosure Statutes are also preempted because the federal government, through its actions, has occupied the field of federal student loan servicing. Field preemption occurs where, even without a conflict between federal and state law, "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority." *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991). Here, the Connecticut Disclosure Statutes target the servicing of federal student loans by requiring that PHEAA be licensed and, as a requirement to keep its license, disclose student records owned by Education. *See Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1599 (2015) (holding that whether the Natural Gas Act preempts a particular state law under field preemption turns on "the *target* at which the state law *aims*") (emphasis in original).

The federal government's actions over the last decade have completed its occupation of the field of the servicing of federal student loans. This process began with Congress's purchase of FFELP loans in response to the disruptions in financial markets in 2008. *See* H.R. 5715, 110th Cong. (2008) (enacted). Congress then passed the Health Care and Education Reconciliation Act in 2010, Pub. L. 111-152. *See* H.R. 4872, 111th Cong. (2010) (enacted). The legislation included the Student Aid and Fiscal Responsibility Act ('SAFRA'), which effectively

ended FFELP by mandating that no new FFELP Loans be made after June 30, 2010.  By passing SAFRA, Congress removed banks as the intermediary lender between the federal government's guarantees and Borrowers and required all future federal student loans be made directly to students through the federal government pursuant to the Direct Loan Program.

Congress enacted SAFRA because it determined that Direct Loans are more cost effective and therefore best served the interests of students and taxpayers.  It specifically determined that Direct Loans would save the government billions of dollars because FFELP causes taxpayers to absorb the risk to private lenders of student loan defaults.  *See* 156 Cong. Rec. H1914 (Mar. 21, 2010) (statement of Rep. Petri); 156 Cong. Rec. H1882 (Mar. 21, 2010) (statement of Rep. Miller); 156 Cong. Rec. S2079–80 (Mar. 25, 2010) (statement of Sen. Leahy); 156 Cong. Rec. S2087–88 (Mar. 25, 2010) (statement of Sen. Durbin).  Because FFELP loans are no longer available to borrowers, nearly 90 percent of new student loans today are made through the Direct Loan Program.  Trends in Student Aid 2018, College Board, at 15, *available at* https://research.collegeboard.org/trends/student-aid.  Therefore, as a result of its commanding share of the market, its regulatory oversight, and the termination of FFELP in favor of the Direct Loan Program, the federal government has a unique and essentially unilateral ability to determine who services federal student loans, how those loans are serviced, and how much servicers like PHEAA are compensated.

Therefore, the growth of the federal student loan programs has rendered federal interests completely dominant, and thus has resulted in the federal government occupying the field of regulating the servicing of federal student loans.  *See Arizona v. United States*, 567 U.S. 387, 399 (2012) (federal interest is "so dominant that the existence of a federal scheme can be assumed to preclude enforcement of state laws on the same subject." (quotation omitted).  The Connecticut

Disclosure Statutes are preempted as to the servicing of federal student loans under field preemption.[7]

## V.      Conclusion

For the reasons set forth above, PHEAA respectfully submits that the Connecticut Disclosure Statutes are preempted under conflict and field preemption, and summary judgment should be entered in its favor and against the State Defendants.

Dated:  November 20, 2019                Respectfully submitted,


/s/ John C. Grugan
John C. Grugan (admitted *pro hac vice*)
  gruganj@ballardspahr.com
Burt M. Rublin (*admitted pro hac vice*)
  rublin@ballardspahr.com
Thomas F. Burke (*admitted pro hac vice*)
  burket@ballardspahr.com
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999


David A. Schulz (CT #439467)
schulzd@ballardspahr.com
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6103
Facsimile: (212) 223-1942

*Attorneys for Plaintiff Pennsylvania Higher Education Assistance Agency*

---

[7]      PHEAA acknowledges that the court in *SLSA* refused to find field preemption.  351 F. Supp. 3d at 55-59.

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of November, 2019 I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ John C. Grugan*
John C. Grugan
