UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PENNSYLVANIA HIGHER EDUCATION :
ASSISTANCE AGENCY, :
    *Plaintiff,* :
 :
VS. : 3:18CV1114 (MPS)
 :
JORGE L. PEREZ, COMMISSIONER OF :
THE CONNECTICUT DEP'T OF :
BANKING, THE CONNECTICUT DEP'T :
OF BANKING, BETSY DEVOS, :
SECRETARY OF THE U.S. DEP'T OF :
EDUCATION, AND THE U.S. DEP'T OF :
EDUCATION. : DECEMBER 19, 2019
    *Defendants*

## THE STATE DEFENDANTS' LOCAL RULE 56 (a) 2 STATEMENT

The State Defendants submit the following Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment:

  I.   <u>As To Plaintiff's Local Rule 56 (a) (1) Statement of Material Facts Not In Dispute:</u>

    1. Admitted.

    2. Admitted.

    3. Admitted.

    4. Admitted to the extent the contract is consistent with law.

    5. Admitted.

    6. Admitted.

    7. Denied to the extent is alleges "Education carefully monitors PHEAA's performance under the Contract." (<u>See</u> State Defendants Ex. A, p. 8, 25).

    8. Admitted.

    9. Admitted.

    10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

II.   Additional Material Facts:

1. In 2015, Connecticut was the first state to pass legislation aimed at curbing unfair, deceptive, and abusive student loan debt collection practices and requiring licensure of the loan servicers. (State Defendants' Ex. R ¶ 3); P.A. 15-162 (effective July 1, 2016) and codified at Conn. Gen. Stat. §§ 36a-846 to 854.

2. The statutory scheme of Conn. Gen. Stat. §§ 36a-846 to 854 - seeks to protect consumers by prohibiting a student loan servicer from employing a scheme to defraud or mislead student loan borrowers, engage in deceptive acts or practices in connection with servicing loans, misapply loan payments, or provide inaccurate information to credit bureaus, among other things. See § 36a-850.

3. The statutory scheme of Conn. Gen. Stat. §§ 36a-846 to 854 - also requires student loan servicers to comply with all applicable federal laws and regulations relating to student loan servicing, including the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. See § 36a-853.

4. In 2015, ED joined with the Consumer Financial Protection Bureau ("CFPB") and the U.S. Department of Treasury in a "Joint Statement of Principles on Student Loan Servicing." (State Defendants' Ex. B). In this joint statement, ED agreed that "[i]f servicers fall short and violate federal or state consumer financial laws . . . federal and state agencies [] and law enforcement officials should have access to appropriate channels for recourse." (State Defendants Ex. B, p. 57).

5. On July 20, 2016, ED released a memorandum entitled "Policy Direction on Federal Student Loan Servicing" (the so-called "Mitchell Memo") (State Defendants Ex. C).

3

6. In the Mitchell Memo, ED directed that "[s]ervicing contractors should comply with federal and state law, taking any necessary steps to support oversight by federal or state agencies, regulators, or law enforcement officials." (State Defendants Ex. C, p. 95).

7. In October of 2017, the CFPB noted in its annual report that "[c]onsumers benefit when the student loan industry is subject to coordinated oversight by regulators at both the federal and state levels." (State Defendants Ex. D, p. 173).

8. PHEAA is subject to Connecticut DOB examinations and investigations pursuant to Conn. Gen. Stat. §§ 36a-17 and 851. (State Defendants Ex. R ¶ 4)

9. In the interest of consumer protection, on November 3, 2017, Connecticut DOB notified PHEAA via email that it would be conducting a limited scope examination and requested records pertaining to its servicing of student loans by way of questionnaire. (State Defendants Ex. R ¶ 5; State Defendants Ex. E, p. 178; Amend.Compl. ¶¶ 32, 33).

10. Connecticut DOB's questionnaire sought PHEAA's address and contact information, a management chart, a summary of how PHEAA administers consumer complaints, and a list of student loan debtor complaints - to include the complainant's name, address, account number, complaint summary and resolution. (State Defendants Ex. E, p. 180-184; Amend.Compl. ¶ 34).

11. Connecticut DOB's questionnaire also sought a list of litigation filed against consumers, to include the name, address, and account number of the debtor, a brief summary of the complaint, the disposition, the amount of any judgment, as well as copies of any external audits within the past year, and a list of payments collected for the previous year. (State Defendants Ex. E, p. 185-187).

12. Connecticut DOB's questionnaire further sought, with respect to PSLF program: (a) the number of student loan borrowers and their respective loan balances as well as (b) the number of borrowers that were in forbearance at the time they were placed in PSLF with $0 payments. (State Defendants Ex. E, p. 188). With respect to each of these groups, the request sought the number of new PSLF applications approved and denied as well as the number of PSLF applications deemed incomplete. (State Defendants Ex. E, p. 189). It also sought the number of recertification applications received, approved, and denied. (Id.)

13. On November 9, 2017, PHEAA notified Connecticut DOB that ED had instructed PHEAA not to release any data or documentation related to PSLF. (State Defendants Ex. F, p. 191; Amend. Compl. ¶¶ 37, 39; State Defendants Ex. R ¶ 6). PHEAA referred Connecticut DOB to Ms. Soo Kang and Ms. Karen Mahon at ED for "any concerns or comments." (Id.)

14. In response, Connecticut DOB repeatedly attempted to contact Ms. Kang and Ms. Mahon via email and voicemail but to no avail. (State Defendants Ex. G, p. 193; State Defendants Ex. R ¶ 6).

15. On December 18, 2017, Connecticut DOB notified PHEAA of the failure of ED to respond and asserted that Connecticut DOB "would no longer initiate communications to [ED] on your behalf." (State Defendants Ex. G, p. 193; State Defendants Ex. R ¶ 7). Connecticut DOB also advised PHEAA that:

> As a licensee with the Department, PHEAA must adhere to Connecticut's statutory requirements governing student loan servicers. Such requirements include, but are not limited to, providing unrestricted access to records in connection with an examination or investigation pursuant to Section 36a-17 and 36a-851 of the Connecticut General Statutes. Unrestricted access to

> servicing records of Connecticut student loan borrowers is of utmost importance to the ability of this Department to effectively supervise its student loan servicer licensees and perform its statutory mandates.

(State Defendants Ex. G, p. 193; State Defendants Ex. R ¶ 7). Connecticut DOB then gave PHEAA until January 5, 2018 to comply with the request for records. (Id.)

16. On December 22, 2017, PHEAA informed Connecticut DOB that it would "assist in coordinating communication between [Connecticut DOB] and [ED]." (State Defendants Ex. G, p. 192; State Defendants Ex. R ¶ 8).

17. On December 27, 2017, ED issued a memorandum to PHEAA entitled, "Ownership and Access to U.S. Department of Education Records and Data." (ED's Privacy Act Memorandum) (State Defendants Ex. H, p. 199). In this document, ED explained that it maintained federal student loan records within a System of Records (SORN) protected by the Privacy Act, 5 U.S.C. § 552a, that it owned these records, and that "any request from any third party for [ED] records to which a contractor has access must be made directly to [ED], where it will be evaluated for compliance with the requirements of the Privacy Act, unless the contract has specifically provided otherwise." (Id.) The memorandum referenced the procedures for submitting Privacy Act requests to ED and provided a citation for a compilation of SORNs. (Ex. H, p. 200).

18. On December 28, 2017, PHEAA requested from Connecticut DOB an extension to January 12, 2018 for compliance with its request for records. (State Defendants Ex. H, p. 194; State Defendants Ex. R ¶ 9).

19. On January 11, 2018, PHEAA mailed information responsive to part of Connecticut DOB's questionnaire and withheld "responsive documents [or] data that are specific to [Federal Student Aid]." (State Defendants Ex. I p. 201; Amend. Compl. ¶ 43; Ex. R ¶ 10).

20. The information PHEAA withheld included documents and data concerning consumer debtor complaints and payments. (State Defendants Ex. I, p. 207; State Defendants Ex. R ¶ 10).

21. On January 11, 2018, Connecticut DOB participated in a call with ED. (State Defendants Ex. R ¶ 11). During the call, Connecticut DOB requested access to the withheld records and ED recommended that Connecticut DOB employ a procedure similar to that used to review federal student loan records during examinations of consumer collection agencies and send a letter directly to ED. (State Defendants Ex. R ¶ 11; State Defendants Ex. I, p. 201). ED indicated that the written request would be reviewed promptly. (State Defendants Ex. R ¶ 11).

22. On January 12, 2018, Connecticut DOB sent a letter directly to ED requesting access to records pertaining to student loans and, in particular, all records maintained by PHEAA in its servicing of student loans to include correspondence, agreements, notes, payment ledgers, audio, magnetic and electronic recordings, and computer printouts and software. (State Defendants Ex. J, p. 216-217; Amend. Compl. ¶¶ 41, 44; State Defendants Ex. R ¶ 12).

23. In the January 12, 2018 letter, Connecticut DOB informed ED that it was "conducting this examination to verify PHEAA's compliance with applicable statutory and regulatory requirements pertaining to its student loan servicing activities in Connecticut" and consequently, access appeared to be "a routine use contemplated by [ED] pursuant to paragraph 1(r) of its System of Records Notice [SORN] Number 18-11-16, entitled 'Common Services for Borrowers [81 Fed. Reg. 171 (Sep. 2, 2016)]." (State Defendants Ex. J, p. 216-217; Amend. Compl. ¶¶ 41, 44; State Defendants Ex. R ¶ 12). In addition, Connecticut DOB noted that information obtained during the course of the examination "is considered confidential and

protected from disclosure pursuant to Section 36a-21 of the Connecticut General Statutes." (State Defendants Ex. J, p. 216-217; State Defendants Ex. R ¶ 12).

24. In accordance with the SORN, ED expressly authorizes the disclosure of Privacy Act information to government entities at the federal, state, local or tribal levels regarding the practices of ED contractors who have been provided with access to the Common Services for Borrowers ("CSB") system so long as the receiving entity maintains Privacy Act safeguards to protect the security and confidentiality of the disclosed records. See SORN 18-11-16, Routine use no. (1) (r). 81 Fed. Reg. 60683, 60687 (Sept. 2, 2016) (State Defendants Ex. K, p. 222). ED contractors include federal loan servicers, with disclosure authorized to permit state and local entities to verify a contractor's compliance with debt collection, financial, and other applicable statutory, regulatory, or local requirements. (Id.)

25. ED refused to authorize access even though it had granted access in the past and instead asked Connecticut DOB to identify how its request for access comports with the purposes enumerated in SORN 18-11-16. (State Defendants Ex. J, p. 214; State Defendants Ex. R ¶ 13).

26. In a January 24, 2018 email, Connecticut DOB explained to ED that access was necessary for the examination of PHEAA and consistent with several different purposes identified in the SORN, to wit:

> (5) To make, service, collect, assign, adjust, transfer, refer, or discharge a loan or collect a grant obligation;
>
> (7) To investigate possible fraud or abuse or verify compliance with program regulations;
>
> (11) To ensure that program requirements are met by educational and financial institutions, Federal Loan Servicers, the Federal Perkins Loan Servicer, PCAs, and guaranty agencies; and

> (14) To investigate complaints, update information, or correct errors contained in department records.

(State Defendants Ex. J, p. 214; State Defendants Ex. R ¶ 13; State Defendants Ex. K, p. 220 (listing of purposes)).

27. Connecticut DOB further stated that the examination of PHEAA was integral to PHEAA's continued ability to service such loans in Connecticut and was part of a process to investigate consumer complaints and ensure that PHEAA complied with applicable requirements and regulations. (State Defendants Ex. J, p.214; State Defendants Ex. R ¶ 13).

28. On March 12, 2018, ED published informal guidance in the Federal Register entitled, <u>Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Loan Servicers</u>, 83 Fed. Reg. 10619 (Mar. 12, 2018) ("ED's Preemption Notice") (State Defendants Ex. M, p. 243).

29. Prior to ED's Preemption Notice, in 2015, the United States filed a Statement of Interest in the matter, <u>Sanchez v. ASA College, Inc.</u>, No. 14-5006, 2015 WL 3540836 (S.D.N.Y. June 5, 2015), stating:

> Nothing in the HEA or its legislative history even suggests that the HEA should be read to preempt or displace state or federal laws. Nor is there anything in the HEA or the regulations promulgated thereunder to evince any intent of Congress or [the DOED] that the HEA or its regulations establish an exclusive administrative review process of student claims brought under state or federal law, even if the conduct alleged may separately constitute an HEA violation.

(State Defendants Ex. S, CMECF pp. 8-9).

30. After January 24, 2018, Connecticut DOB abandoned further dealings with ED. (State Defendants Ex. L, p. 237; Amend. Compl. ¶ 46; State Defendants Ex. R ¶ 14).

31. On March 26, 2018, ED formally denied Connecticut DOB's January 12, 2018 request for records. (State Defendants Ex. M).

32. In a March 26, 2018 letter, ED first explained without legal basis that PHEAA could not provide access to the records because the records belonged to ED and not PHEAA. (State Defendants Ex. M, p. 241) (citing ED's Privacy Act Memorandum)). ED then asserted that the records were not disclosable under the Privacy Act because Connecticut DOB failed to come forward with an acceptable "routine use" for disclosure under the SORN, Common Services for Borrowers (CSB) (18-11-16). (Id.) While Connecticut DOB maintained disclosure was authorized under CSB routine use section (1) (r) — which allows for disclosure to states regarding the practice of ED contractors — ED rejected this position, maintaining that "State laws regulating Direct Loan servicing are preempted by Federal Law." (State Defendants Ex. M, p. 241). In support of this position, ED cited to its own March 12, 2018 Preemption Notice. (Id.) ED further stated even if it "determined that [state law] was an 'applicable statutory requirement'" — Connecticut DOB nevertheless failed to indicate how the request was compatible with the purposes identified in the SORN. (State Defendants Ex. M, p. 242).

33. In stating that Connecticut DOB failed to indicate how the request was compatible with the purposes outlined in the SORN, ED ignored Connecticut DOB's January 24, 2018 email explaining how its request was compatible with the purposes identified in the SORN. (State Defendants Ex. J, p. 214; see also State Defendants Ex. K, p. 220 (listing of purposes)).

34. On April 2, 2018, ED sent a letter to PHEAA in reference to Connecticut DOB's March 21, 2018 records request. (State Defendants Ex. N). ED advised PHEAA that in accordance with their contract, ED owned the requested records and instructed PHEAA that it was prohibited from releasing them. (Id.) In addition, ED advised PHEAA that with respect to Connecticut's warning about revoking PHEAA's license to service federal loans for failure to

disclose records, a state agency does not have the authority to prohibit PHEAA from servicing federal student loans when the federal government has specifically authorized it to do so. (Id.)

35. On February 12, 2019, ED's Inspector General published a report on loan servicer compliance with federal law assessed as of September 2017. See U.S. Department of Education Office of Inspector General, ED-OIG/A05Q0008, Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Student Loans, (Feb. 12, 2019, Reissued with Corrections, March 5, 2019) (State Defendants Ex. A).

36. In ED's report, the Inspector General noted that "oversight activities regularly identified instances of servicers not servicing federally held student loans in accordance with Federal requirements." (State Defendants Ex. A, p. 8). It also noted the Department "rarely used available contract accountability provisions to hold servicers accountable for instances of noncompliance" and "did not provide servicers with an incentive to take actions to mitigate the risk of continued servicer noncompliance that could harm students." Id. The Inspector General found that these failures can result in "increased interest or repayment costs incurred by borrowers, the missed opportunity for more borrowers to take advantage of certain repayment programs, negative effects on borrowers' credit ratings, and an increased likelihood of delinquency or even default." (Id. at 25).

        Respectfully submitted,

        DEFENDANTS,

        JORGE L. PEREZ,
        COMMISSIONER OF
        THE CONNECTICUT DEP'T
        OF BANKING, AND THE
        CONNECTICUT DEP'T OF BANKING

        WILLIAM TONG
        ATTORNEY GENERAL

        Joseph Chambers (ct26948)
        Assistant Attorney General
        Finance Dep't Head

BY:   /s/ James W. Caley
       James W. Caley (ct16768)
       Assistant Attorney General
       John Langmaid (ct29770)
       Assistant Attorney General
       165 Capitol Avenue
       Hartford, CT  06106
       Federal Bar No. ct16768
       james.caley@ct.gov
       Tel: (860) 808-5461
       Fax: (860) 772-1709

## **CERTIFICATION**

I hereby certify that on December 19, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

        /s/ James W. Caley
        James W. Caley
        Assistant Attorney General