# EXHIBIT C



> On October 17, 2016, a clarification to this policy memorandum was issued and is included as an addendum to this document.

**To:** James Runcie, Chief Operating Officer, Federal Student Aid
**CC:** Sarah Bloom Raskin, Deputy Secretary, U.S. Department of the Treasury
Richard Cordray, Director, Consumer Financial Protection Bureau
**From:** Ted Mitchell, Under Secretary, U.S. Department of Education
**Date:** July 20, 2016
**RE:** Policy Direction on Federal Student Loan Servicing

I.   INTRODUCTION

This memorandum provides policy direction for the servicing of all federal student loans. The direction below is driven by the experiences of federal student loan borrowers and is responsive to the need to establish a transparent and accountable system that allows for continuous improvement. Federal Student Aid should continuously evaluate its servicing contracts to ensure that public resources are used efficiently and effectively to promote borrower success and protect taxpayers' investments. We look forward to working with you in developing a servicing system consistent with the following policy direction. To that end, we will continue our collaboration with our colleagues across the Administration as we work with Congress to ensure the public's commitment to these programs is safeguarded by the investment necessary to create the high-quality student loan servicing system warranted by a trillion dollar portfolio, and that adequate resources are made available to ensure success.

Pursuant to the Health Care and Education Reconciliation Act of 2010 and the Administration's move to 100 percent Direct Lending for federal student loans, adjustments to servicing practices for Direct Loans to reflect the Department of Education's (Education's) policies can be implemented through Education's loan servicing contract(s) and through guidance provided to the vendors that receive awards under these contracts.[1] These directives and policy choices should be applied equally to the servicing of all loans made, insured, or guaranteed under Title IV of the Higher Education Act, to the maximum extent feasible.[2]

The policy direction described in this document is intended to be reflected in the new state-of-the-art loan servicing ecosystem that FSA has begun to procure. As we have previously described, this new ecosystem will consist of a single servicing platform on which all borrower accounts held by the Education will reside, and to which multiple customer service providers will have access in order to provide state of the art borrower engagement. This new ecosystem will function in a manner that will clarify for borrowers that the U.S. Department of Education is the servicer of their loan. During the next phase of the procurement process, those offerors selected to participate will be required to propose a limited number of unaffiliated entities to perform as customer service providers as part of a

---

[1] *See* Pub. L. No. 111-152, 124 Stat. 1029.
[2] *See* 20 U.S.C. § 1070a et. seq. To the extent aspects of this policy guidance are not currently allowable under Education's regulations, they should be considered for future rulemakings.

000058



subcontracting plan, and will be evaluated, in part, on the basis of any proposed scope, methodology and schedule for distributing call volume to such entities. This will help to reduce risk for borrowers, increase the likelihood of a successful transition, and ensure that the new ecosystem is capable of supporting multiple customer service providers. Consequently, when a final contract is awarded under the current procurement process, a substantial part of our new vision for student loan servicing will be realized—a single platform for all borrower accounts, and multiple customer service providers who will receive call volume, all of whom will be subject to routine performance monitoring and oversight. After contract award under the current process, new procurement actions will be undertaken to provide for a direct contracting relationship between Education and customer service providers. These customer service providers will be held accountable for meeting the same servicing standards, whether they begin operations as a result of an award under the current procurement process or enter the new servicing ecosystem through a subsequent procurement action. While in the end, no single vendor will be responsible for every aspect of student loan servicing in our new ecosystem, the new servicing experience will be seamless for borrowers, and reflect the servicing policy direction discussed in this memorandum.

Education expects the following policy direction to guide the development of contract provisions related to the servicing of federal student loans and will continue to work with federal and state law enforcement agencies and regulators to apply this policy direction expeditiously to the servicing of all student loans, to the maximum extent practicable.

Following a discussion of the background of federal student loan servicing and the vision for the future of federal student loan servicing, this memorandum is organized into five parts. Each section reflects the pillars upon which our student loan servicing policy direction is based:

- **Economic Incentives to Provide High-Quality Student Loan Servicing.** This section discusses the critical role that economic incentives and baseline borrower protections play in a servicing system that provides high-quality service and encourages optimal borrower outcomes.

- **Accurate and Actionable.** This section outlines a list of directives federal student loan borrowers can expect their servicer to follow, including specific baseline standards when providing customer service to "at-risk" borrowers.

- **Consistency.** This section describes how borrowers should receive adequate and timely communications and that all common servicing functions should be consistent.

- **Accountability.** This section details how borrowers will be able to expect a high level of accountability in their federal student loan servicing experience, including timely and accurate responses to inquiries and complaints, and transparent resolutions when problems occur. Taxpayers should expect that loan servicing is provided in a cost-effective manner.

- **Transparency.** This section details the expectation for a higher level of federal student loan data transparency on the performance of the portfolio, the performance of individual service providers,



and publically available information on the tracking and reporting of requests for assistance, including income-driven repayment plan enrollment, escalations, and appeals.

## II.   BACKGROUND

### A Unified Approach to Student Loan Servicing

Throughout this Administration, we have engaged with consumer advocates and stakeholders across the country to develop policies that better protect federal student loan borrowers as they navigate repayment of their loans. More recently, we have sought public input on standards for entities servicing student loans. In late 2014, FSA released a Request for Information (RFI) regarding Title IV Student Loan Servicing.[3] The RFI noted that, at the time, FSA's portfolio of federal student loans was serviced by eleven separate loan servicers. Today, the federal portfolio is serviced under ten separate contracts.[4]

The 2014 RFI sought information on how FSA could efficiently and effectively manage a growing portfolio in a manner that improves borrower satisfaction and outcomes, provides common borrower experiences, and allows for consolidated reporting of financial information and borrower data.[5] Given the extensive experience with the current multi-servicer, multi-system contract model, FSA asked for information on alternative approaches to servicing, such as the use of a single servicing platform and the use of specialized vendors to provide discrete services like call center operations.

In 2014, Education hosted a Servicing Summit seeking input on needed reforms to servicing and appropriate methods of implementation. The purpose of the one-day session on servicing was to explore various topics of interest to student borrowers, consumer advocates, financial aid administrators, and policymakers.

### Establishing a Student Aid Bill of Rights

---

[3] *See* U.S. Department of Education, *Title IV Student Loan Servicing*, Solicitation Number: FinancialAidLoan Servicing (Nov. 25, 2014), *available at* https://www.fbo.gov/?s=opportunity&mode=form&id=c5f6d78eae627127d09fdebc2de6eb05&tab=core&_cview=0.

[4] The current contracts were awarded through the *Title IV Additional Servicer* and *Not-for-Profit Loan Servicer* solicitations. While there are inherent advantages to a multi-servicer market, including using competition to try to drive higher customer satisfaction and lower borrower delinquencies, there are also several disadvantages, such as lack of consistency across platforms and servicers, operational complexity and inefficiency, and additional costs.

[5] *See* U.S. Department of Education, *Servicing Summit* (Dec. 1, 2014), *available at* http://fsaconferences.ed.gov/servicingsummit.html. The summit was held in advance of the 2014 FSA Training Conference for Financial Aid Professionals in Atlanta, Georgia.

000060



- **Servicing contractors should comply with federal and state law, taking any necessary steps to support oversight by federal or state agencies, regulators, or law enforcement officials.** Student loan servicers and other service providers, including sub-servicers, subcontractors, and other providers of specialty student loan servicing functions should meet all applicable requirements set forth by federal law. FSA shall codify the importance of cooperation with federal and state authorities in any agreement to provide services on behalf of borrowers.

- **Borrowers can expect to be provided meaningful resolution of servicing-related complaints about their federal student loans in a timely manner.** With a limited set of streamlined, consistent systems and processes, Education will be able to more effectively manage and oversee vendors' performance. The new FSA Feedback System, in particular, should be leveraged to ensure accuracy and excellence in federal student loan borrower customer service. Servicing entities should demonstrate that they can effectively receive and quickly address complaints, both those forwarded from Education's complaint system or sent directly from a borrower or borrower representative.

- **Borrowers can expect that servicers will develop a comprehensive complaint resolution plan that is consistent and compatible with Education's feedback system.** The newly-launched FSA Feedback System greatly enhances the ability of FSA to effectively monitor its servicer partners. Servicers are currently provided with direct access to the Feedback System through a Partner Portal through which they are expected to resolve complaints. Complaints may be routed to servicers automatically (*e.g.*, based on the complaint categorization type selected by the borrower, or manually by an FSA employee). During the case resolution process, servicers are generally expected to communicate with the borrower by using the Feedback System's own email functionality, including initial response to the borrower, interim communications, and final case resolution. The system captures every email sent or received in this manner between the borrower and the servicer, and this information is viewable by FSA staff. Servicers should manually log information created in the course of the case resolution process that is not automatically captured by the system, such as summary logs of telephone conversations made to and from the borrower, documentation related to the case, and the nature, responsible party, and completion of specific tasks required to resolve the case. As with email correspondence, all of this information should be viewable by FSA staff. This unprecedented level of insight into the case resolution communications between borrower and servicer will allow FSA to clearly identify and resolve situations in which the highest level of customer service is not provided.

- **Borrowers can expect that the complaint resolution process used by servicers ensures that the timelines established by Education for response and resolution will be met.** Education's complaint resolution plan should provide a response to the borrower within 15 calendar days of a complaint and to have a resolution within 60 calendar days for most cases. FSA staff members should perform general quality assurance on case resolution by servicers, and regularly review complaint resolutions, both completed and in progress, for timeliness and quality.

000095